# **Exhibit 1**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING, LLC, *et al.,*[1] | Case No. 23-10699 (CTG) |
| Debtors. | Jointly Administered |

## DEBTORS' MOTION TO RETAIN AND EMPLOY MERU, LLC TO PROVIDE A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (the "Debtors") file this motion (the "Motion") for entry of an order (the "Order") substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to (a) retain and employ MERU, LLC ("MERU") to provide the Debtors with a Chief Restructuring Officer ("CRO"), and certain additional MERU personnel (the "Additional Staff"), effective as of the Petition Date (defined below), on the terms set forth in that certain engagement letter, dated as of May 25, 2023 and annexed as **Exhibit 1** to **Exhibit A** attached hereto (the "Engagement Letter"), and (b) designate Kyle Sturgeon as the Debtors' CRO effective as of the Petition Date, and (ii) granting related relief.  In support of this Motion, the Debtors submit the *Declaration of Kyle Sturgeon* (the "Sturgeon Declaration") attached hereto as **Exhibit B**, and respectfully state as follows:

### Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

DOCS_DE:243537.2 01213/002

February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory bases for the relief sought herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), as well as Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2016-1 and 2016-2.

## Background

4.       On May 31, 2023 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee, examiner or statutory committee in these chapter 11 cases.

5.       Factual background regarding the Debtors, including the events precipitating their chapter 11 filings, is set forth in the *Declaration of Kyle Sturgeon in Support of Chapter 11 Petitions* [Docket No. 3], filed on the Petition Date and incorporated herein by reference.

### Relief Requested and Qualifications of MERU and Mr. Sturgeon

6.      The Debtors have determined that the ongoing services of MERU, Mr. Sturgeon, and the Additional Staff will substantially enhance their attempts to maximize the value of their estates.  MERU, Mr. Sturgeon, and the Additional Staff are well-qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.  As such, the Debtors request authorization to utilize MERU, Mr. Sturgeon, and the Additional Staff as appropriate, and specifically, have Mr. Sturgeon appointed to the position of CRO.

7.      MERU is well-qualified to represent the Debtors in connection with the types of services requested herein.  MERU is an advisory firm that specializes in financial and operational corporate restructuring, operational turnaround advisory, operational and commercial due diligence, and computations involved in-and-out of court proceedings.  MERU has a wealth of experience in providing chief restructuring and financial advisory services and enjoys an excellent reputation for services it has rendered in complex chapter 11 cases on behalf of debtors and creditors.

8.      MERU has extensive experience in assisting distressed businesses.  The experience of its personnel spans a multitude of bankruptcy cases, including: *In re Athenex*, No. 23-90295 (DRJ) (Bankr. S.D. TX); *In re Agspring Mississippi Region, LLC*, No. 21-11238 (CTG) (Bankr. D. Del. Oct. 12, 2021); *In re SD-Charlotte, LLC*, No. 20-30149 (LTB) (Bankr. W.D.N.C. Feb. 7, 2020); *In re Achaogen, Inc.*, No. 19-10844 (BLS) (Bankr. D. Del. Apr. 15, 2019); *In re Eastern Outfitters, LLC*, No. 17-10243 (LSS) (Bankr. D. Del. Feb. 9, 2017); *In re Appvion Paper, Inc.*, No. 17-12082 (KJC) (Bankr. D. Del. Oct. 1, 2017); *In re Verso Corporation*, No. 16-10163 (KG) (Bankr. D. Del. Jan. 26, 2016); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y. Oct. 8, 2014); *In re Allens, Inc.*, No. 13-73597 (BTB) (Bankr. W.D. Ark. Oct. 28, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 13, 2012); *In*

3

*re Arcapita Bank B.S.C.(c)*, No. 12-11076 (SHL) (Bankr. S.D.N.Y. Mar. 19, 2012); *In re AMR Corporation, et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Nov. 29, 2011); *In re Maronda Homes, Inc.*, No. 11-22418 (JKF) (Bankr. W.D. Pa. Apr. 18, 2011); *In re Vitro America, LLC*, No. 10-47473 (ML) (Bankr. N.D. Tex. Nov. 17, 2010); *In re Qimonda North America Corp., et al.*, No. 09-10589 (MFW) (Bankr. D. Del. Feb. 20, 2009); and *In re Mercedes Homes, Inc.*, No. 09-11191 (PGH) (Bankr. S.D. Fla. Jan. 26, 2009).

9.      MERU was previously engaged by Agspring Holdco LLC ("Holdco"), an affiliate of the Debtors, and in connection with the bankruptcy cases of certain of the Debtors' affiliates in 2021.  As a result, MERU has acquired significant knowledge of the Debtors and their businesses and familiarity with the Debtors' financial affairs, debt structure, operations, and related matters.  Mr. Sturgeon has served as the Debtors' CRO since May 25, 2023.  In providing prepetition services to the Debtors, MERU has worked closely with the Debtors' boards, management, and their other advisors and counsel.  Accordingly, MERU has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.

10.     The Debtors also propose to designate Mr. Sturgeon as their CRO in these chapter 11 cases, effective as of the Petition Date.  Mr. Sturgeon is a co-founder and Managing Partner of MERU and is based in Atlanta, Georgia.  Mr. Sturgeon is a certified insolvency and restructuring advisor.  Mr. Sturgeon has extensive experience as a financial restructuring advisor and has provided advisory services to management for companies across multiple industries with typical annualized revenues between $50 million and $4 billion.  He has had great success optimizing stakeholder value by providing advisory services to management, owners, boards of directors, senior secured lenders, bondholders, and private equity firms across a broad spectrum of industries.  Prior to co-founding MERU, he was a Senior Vice President in the Recovery &

4

Transformation Services group at McKinsey & Company from 2013 to 2017. Prior to that, he was a Director in the North American Corporate Restructuring Practice at Alvarez & Marsal from 2006 to 2013.

11.     The Debtors believe that MERU is able to advise them in a cost-effective, efficient, and timely manner. The Debtors submit that the retention of MERU and the designation of Mr. Sturgeon as CRO on the terms and conditions set forth herein are necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

### Services to be Provided

12.     The Debtors seek to retain MERU to provide the Debtors with a CRO and Additional Staff as necessary on the terms and conditions set forth in the Engagement Letter[2] and any order granting the relief requested herein.

13.     MERU will provide CRO services to the Debtors as directed by the Debtors' Board of Managers (the "Board") and will report to the Board. Generally, the CRO shall perform activities and services customarily performed by a chief restructuring officer, including having control over: (a) the financial and operational functions of the Debtors and (b) all elements of the restructuring process with respect to the Debtors. These services may include, but are not limited to:

   a)    Leading the Debtors' assessment of restructuring options and strategic alternatives and providing  advice and recommendations to the Board in its evaluation and

---

[2] The summaries of the Engagement Letter (and indemnification provisions set forth therein) contained in this Motion are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

decision regarding restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various businesses and assets;

b)   Working with the Debtors' counsel to identify and evaluate the risks and mitigants associated with potential restructuring plans and strategic alternatives and providing advice and recommendations regarding the same;

c)   Assisting the Debtors' counsel in assembling due diligence materials and preparing necessary court filings;

d)   Advising, assisting, and/or managing, as appropriate, communications and/or negotiations with outside stakeholders; and

e)   Providing other services as requested or directed by the Debtors as authorized and agreed to by MERU.

14.    These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their chapter 11 cases.

### No Duplication of Services

15.    The services provided by MERU will complement, and not duplicate, the services to be rendered by other professionals retained in the chapter 11 cases.

### MERU's Disinterestedness

16.    To the best of the Debtors' knowledge, information, and belief, no fact or situation exists that would represent a conflict of interest for MERU with regard to the Debtors.

17.    Although the Debtors believe that neither MERU nor the Additional Staff is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code, the Sturgeon Declaration discloses certain connections with parties in interest in these chapter 11 cases.  As disclosed above, MERU had previously been engaged by Holdco, a non-Debtor affiliate of the Debtors.

6

18.     To the best of the Debtors' knowledge, information, and belief, other than as set forth above and in the Sturgeon Declaration, MERU: (a) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), or any person employed in the office of the U.S. Trustee, this Court, or any person employed in this Court; and (b) does not hold any interest adverse to the Debtors' estates.   As set forth in the Sturgeon Declaration, if any new material facts or relationships are discovered or arise, MERU will provide the Court with a supplemental declaration disclosing, among other things, any new material facts and relationships between the Debtors, the Additional Staff, or other significant parties in interest.

### Terms of Retention

19.     As set forth in the Engagement Letter, the Debtors have agreed to, among other things: (a) compensate and reimburse MERU for services provided and expenses incurred by the CRO and Additional Staff; and (b) indemnify MERU and its personnel, including the CRO, in accordance with the terms of the Engagement Letter as modified by the form of Order attached hereto.

## A.     Compensation and Expenses

20.     MERU's decision to accept this engagement is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for out-of-pocket expenses it incurs in accordance with its customary billing practices (the "Fee and Expense Structure").

21.     The Debtors propose to compensate MERU on an hourly basis, plus reimbursement of actual, necessary expenses and other charges.   The current standard hourly rates of MERU's professionals are:

7

| Partners/Managing Partners | $700-$850 |
|---|---|
| Senior Directors/Principals | $575-700 |
| Vice Presidents/Directors | $450-$575 |
| Analysts/Associates | $300-$450 |
| Senior Advisors | $400-$850 |

22.     For this engagement, Mr. Sturgeon's hourly rate will begin at $850.

23.     The hourly rates set forth above are set at a level designed to fairly compensate MERU, to cover fixed and routine overhead expenses, and are subject to periodic adjustments[3] necessitated by market and other conditions.

24.     Beyond the rates listed above, the Debtors shall reimburse MERU for its reasonable out-of-pocket documented expenses incurred in connection with this assignment, such as travel, lodging, duplicating, research, messenger, and telephone charges.

25.     The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by MERU and other comparable firms that render similar services under similar circumstances.   The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate MERU fairly for its work and to cover fixed and routine overhead expenses.

**B.     Indemnification**

26.     As a material part of the consideration for which MERU has agreed to provide the services described herein, and pursuant to the Engagement Letter, including the indemnification provisions attached thereto and incorporated by reference therein (the "Indemnification Provisions"), the Debtors have agreed to indemnify and hold harmless MERU (including its affiliates and its and their partners, director, officers, employees, and agents) and the CRO, (collectively, the "Indemnified Parties") under certain circumstances;[4] *provided, however*, that

---

[3] The Engagement Letter provides that these "rates shall be subject to adjustment annually at such time as MERU adjusts its rates generally."

[4] In summary, the Debtors agreed to indemnify MERU from liability incurred by MERU in connection with MERU's

8

MERU, which in the Engagement Letter "acknowledge[d] that, during the pendency of any Bankruptcy Court approved retention, [the Indemnification Provisions] are subject to modification as may be stated within the Bankruptcy Court's retention order," and which also excepted indemnification " in the event of MERU's gross negligence, willful misconduct or bad faith," and the other Indemnified Parties shall not be entitled to indemnification of any costs, fees, expenses, damages, and liabilities for any claim which arises out of gross negligence, bad faith or willful misconduct, as finally adjudicated by a finder of fact; *and, provided further*, that such indemnification shall be permitted only in accordance with the Court's order approving MERU's retention in this matter.[5]

## Fees and Reporting

27.     Upon Court approval of the relief requested herein, MERU will be retained to provide the Debtors with the CRO and Additional Staff as necessary, pursuant to section 363 of the Bankruptcy Code.  Because MERU is not being employed as a professional under section 327 of the Bankruptcy Code, MERU will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

28.     Instead, MERU shall file with the Court with copies to the United States Trustee ("U.S. Trustee") a report of staffing on the engagement for the previous month.  Such report shall include the names and functions filled of the individuals assigned.  All staffing shall be subject to review by the Court in the event an objection is filed.  MERU shall file with the Court, and provide notice to the U.S. Trustee, reports of compensation earned and expenses incurred on a monthly basis.  Such reports shall contain summary charts which describe the services provided, identify

---

engagement pursuant to the Engagement Letter, including paying damages and reasonable expenses.

[5] The form of proposed order attached hereto would permit the Debtors to indemnify those persons serving as executive officers (including the CRO) on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' director and officer liability insurance policies; but not permit any other indemnification.

the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in quarter-hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in half-hourly increments. Parties in interest shall have 14 days after the date each report is served to object to such report. In the event an objection is raised and not consensually resolved, the portion of the staffing report objected to shall be subject to review by the Court. No payments shall be made to MERU until the objection period has passed, and in the event an objection is raised, no payment shall be made to MERU on account of the portion of such staffing report objected to until such objection is resolved.

29.    Subject to interested parties' rights to object as set forth above, the Debtors seek authority to pay, in the ordinary course of business, all amounts invoiced by MERU for fees and expenses incurred in connection with MERU's retention. The Debtors do not, at this time, seek pre-approval of any success fees, transaction fees, or other back-end fees in connection with MERU's retention; however, they reserve the right to seek approval of payments of that nature by the Court at the conclusion of the cases on a reasonable standard basis.

30.    As set forth in the Engagement Letter, MERU received $125,000 as a retainer from the Debtors (the "Retainer"). The purpose of the Retainer was to secure the payment of professional fees to MERU. MERU is current as of the Petition Date but has not yet completed a final reconciliation as of the Petition Date. In the 90 days prior to the Petition Date, other than the Retainer, MERU received no other payments from the Debtors. The Debtors are not aware of any

asserted or threatened disputes against MERU or the Additional Staff on account of their services provided before the Petition Date.

31.     Given the numerous issues which the Additional Staff may be required to address in the performance of their services, MERU's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services in an in-court and out-of-court context, the Debtors submit that the fee arrangements set forth in this Motion and in the Engagement Letter are reasonable.

**Basis for Relief**

32.     The Debtors seek to employ and retain MERU, and designate Mr. Sturgeon as CRO pursuant to section 363 of the Bankruptcy Code, effective as of the Petition Date.  Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

33.     Under applicable case law in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See, e.g.*, *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-*

11

*Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

34.     The relief requested herein is appropriate and warranted under each of the above standards.  The decision to retain MERU, designate Mr. Sturgeon as CRO, and utilize the Additional Staff should be authorized because it is based on a sound exercise of the Debtors' business judgment.  First*, as described above, Mr. Sturgeon has extensive experience as a chief restructuring officer and financial advisor for many troubled companies.  The Debtors believe that Mr. Sturgeon and the Additional Staff will provide services that substantially benefit the Debtors' estates and creditors.   MERU has extensive experience in providing turnaround and crisis management services in chapter 11 proceedings and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

35.     Second, Mr. Sturgeon and the Additional Staff, working in conjunction with the Board and senior management, have already proven to be of invaluable assistance to the Debtors in analyzing their businesses, negotiating debtor in possession financing, developing debtor in possession financing budgets, developing cash flow projections, assisting in short-term cash management activities, evaluating strategic alternatives, developing due diligence materials, interfacing with the multiple secured lenders and their advisors, and preparing the Debtors for their chapter 11 cases.

36.     Finally, through negotiations, the Debtors have been able to retain MERU and secure the services of Mr. Sturgeon and the Additional Staff during these chapter 11 cases on economic terms that are fair, reasonable, and beneficial to the Debtors' estates.  Moreover, the compensation arrangement provided for in this Motion and the Engagement Letter is consistent

12

with and typical of arrangements entered into by MERU and other restructuring consulting firms

with respect to rendering similar services for clients such as the Debtors.

37.     Courts in this district have approved relief similar to the relief requested in this

Motion.  *See, e.g.*, *In re Agspring Mississippi Region, LLC*, Case No. 21-11238 (CTG) (Bankr. D.

Del. Oct. 12, 2021); *In re CarbonLite Holdings LLC*, Case No. 21-10527 (JTD) (Bankr. D. Del.

Apr. 7, 2021) (Docket No. 221); *In re 24 Hour Fitness Worldwide, Inc.*, Case No. 20-11558 (KBO)

(Bankr. D. Del. July 13, 2020) (Docket No. 546); *In re TZEW Holdco LLC, et al.,* Case No. 20-

10910 (CSS) (Bankr. D. Del. May 7, 2020) (Docket No. 200); *In re AH Liquidation, Inc.*, Case

No. 21-10883 (CTG) (Docket No. 145).

38.     The retention of MERU and the employment of Mr. Sturgeon and the Additional

Staff is a sound exercise of the Debtors' business judgment and is in the best interests of all parties

in interest in these chapter 11 cases.  The Debtors additionally believe that MERU is well-

qualified and able to represent the Debtors in a cost effective, efficient, and timely manner.

MERU has indicated a willingness to act on behalf of the Debtors and to subject itself to the

jurisdiction and supervision of the Court.  The retention of MERU and the designation of Mr.

Sturgeon as CRO, on the terms set forth herein and in the Engagement Letter, is essential,

appropriate, and in the best interests of the Debtors' estates, creditors, and other parties in interest,

and should be granted in these chapter 11 cases.

### Request for Approval of Retention Effective as of the Petition Date

39.     The Debtors request that MERU's retention be made effective as of the Petition

Date in order to allow MERU to be compensated for the work performed for the Debtors prior to

the Court's consideration and approval of this Motion.  The Debtors submit that under the

circumstances, and to avoid irreparable harm to the Debtors' estates that may occur if MERU is

13

not immediately retained, retroactive approval to the Petition Date is warranted.[6] *See e.g., FIS Airlease II, Inc. v. Simon (In re FIS Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), cert. denied, 488 U.S. 852 (1988); *In re Garden Ridge Corp.*, 326 B.R. 278, 281 (Bankr. D. Del. 2005); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

### Notice

40.     Notice of this Motion shall be given to the following parties: (a) the Office of the U.S. Trustee; (b) the Debtors' largest unsecured creditors on a consolidated basis; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

41.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

  WHEREFORE, the Debtors respectfully request the entry of an Order in the form annexed hereto as **Exhibit A**, (i) granting this Motion, (ii) authorizing the Debtors to engage Mr. Sturgeon to act as the Debtors' CRO, and MERU and the Additional Staff to support Mr. Sturgeon during the pendency of these chapter 11 cases upon the terms and conditions contained in the Engagement Letter effective as of the Petition Date, and (iii) granting such other and further relief as may be just and proper.

---

[6] Local Rule 2014-1(b) provides, in relevant part: "If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise."

Dated: June 30, 2023                    **PACHULSKI STANG ZIEHL & JONES LLP**

                                        */s/ Laura Davis Jones*
                                        Laura Davis Jones (DE Bar No. 2436)
                                        919 North Market Street, 17th Floor
                                        P.O. Box 8705
                                        Wilmington, Delaware 19899 (Courier 19801)
                                        Telephone: (302) 652-4100
                                        Facsimile: (302) 652-4400
                                        Email: ljones@pszjlaw.com

                                        -and –

                                        **DENTONS US LLP**

                                        Samuel R. Maizel (Admitted *Pro Hac Vice*)
                                        Tania M. Moyron (Admitted *Pro Hac Vice*)
                                        601 S. Figueroa Street #2500
                                        Los Angeles, CA 90017
                                        Telephone:  (213) 623-9300
                                        Email:   samuel.maizel@dentons.com
                                                 tania.moyron@dentons.com


                                        *Proposed Counsel for Debtors and Debtors in Possession*

15

# EXHIBIT A

DOCS_DE:243537.2 01213/002

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|                                         |                                       |
| --------------------------------------- | ------------------------------------- |
| In re:                                  | Chapter 11                            |
| AGSPRING, LLC, *et al.*,[1]             | Case No. 23-10699 (CTG)               |
|                          Debtors.       | Jointly Administered                  |
|                                         | **Ref. Docket No. __**                |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING THE DEBTORS TO (A) RETAIN MERU, LLC TO PROVIDE THE**
**DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL STAFF**
**AND (B) DESIGNATING KYLE STURGEON AS CHIEF RESTRUCTURING OFFICER**
**FOR THE DEBTORS, IN EACH CASE EFFECTIVE AS OF THE PETITION DATE,**
**AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession

(the "Debtors") or entry of an order (this "Order") (i) authorizing the Debtors to (a) retain and

employ MERU, LLC ("MERU") to provide the Debtors with a CRO and certain Additional Staff

to assist the CRO effective as of the Petition Date, on the terms set forth in the Engagement Letter

attached hereto as **Exhibit 1**, and (b) designate Kyle Sturgeon as the Debtors' CRO, in each case

effective as of the Petition Date, and (b) granting related relief, all as more fully set forth in the

Motion; and upon the Sturgeon Declaration; and this Court having found that it has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

*Reference* from the United States District Court for the District of Delaware, dated February 29,

2012; and this Court having found that the Motion is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and that this Court may enter a final order consistent with Article III of the United

States Constitution; and this Court having found that venue of this proceeding and the Motion in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing on the Motion were appropriate and no other notice need be provided;

and this Court having reviewed the Motion; and this Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all

of the proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are

authorized to (i) retain and employ MERU and (ii) designate Kyle Sturgeon as Chief Restructuring

Officer, in each case effective as of the Petition Date.

3.      The terms of the Engagement Letter, including without limitation the

compensation provisions and the indemnification provisions, as modified by the Motion and this

Order, are reasonable terms and conditions of employment and are hereby approved.

4.      The Debtors are hereby authorized to retain MERU to provide the Debtors with a

CRO, and certain Additional Staff to assist the CRO, and to designate Kyle Sturgeon as the

Debtors' CRO, effective as of the Petition Date, on the terms and conditions set forth in the Motion

and the Engagement Letter, as modified by this Order, subject to the following terms, which apply

notwithstanding anything in the Engagement Letter or the Motion or any exhibits related thereto

to the contrary:

a)      MERU and its affiliates shall not act in any other capacity (for example, and

without limitation, as a financial advisor, claims agent/claims administrator, or

investor/acquirer) in connection with the above-captioned chapter 11 cases;

3

b)   In the event the Debtors seek to have the Additional Staff assume executive officer positions that are different than the positions disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of the Additional Staff, (ii) adding new executive officers, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed;

c)   MERU shall file with the Court with copies to the United States Trustee ("U.S. Trustee") a report of staffing on the engagement for the previous month.  Such report shall include the names and functions filled of the individuals assigned.  All staffing shall be subject to review by the Court in the event an objection is filed. MERU shall file with the Court, and provide notice to the U.S. Trustee, reports of compensation earned and expenses incurred on a monthly basis.  Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred.  Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category.  Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in quarter-hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in half-hourly increments.  Parties in interest shall have 14 days after the date each report is served to object to such report.  In the event an objection is raised and not consensually resolved, the portion of the staffing report objected to shall be subject to review by the Court.  No payments shall be made to MERU until

4

the objection period has passed, and in the event an objection is raised, no payment shall be made to MERU on account of the portion of such staffing report objected to until such objection is resolved.

d) No principal, employee, or independent contractor of MERU and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned chapter 11 cases;

e) Success fees, transaction fees, or other back-end fees, if any, shall be approved by the Court at the conclusion of the cases on a reasonable standard basis and shall not be pre-approved under section 328(a) of the Bankruptcy Code.  No success fee or back-end fee shall be sought upon conversion of the chapter 11 cases, dismissal of the chapter 11 cases for cause, or the appointment of a trustee;

f) For a period of three years after the conclusion of the engagement, neither MERU nor any of its affiliates shall make any investments in the Debtors or the reorganized Debtors;

g) MERU shall disclose any and all facts that may have a bearing on whether MERU, its affiliates, and/or any individuals working on the engagement have any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.  The obligation to disclose identified in this subparagraph is a continuing obligation;

h) The Debtors are permitted to indemnify those persons serving as executive officers (including the CRO) on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with

5

insurance coverage under the Debtors' director and officer liability insurance policies;

i)    There shall be no other indemnification of MERU or its affiliates;

j)    Notwithstanding the Engagement Letter:

    i.    any controversy or claim with respect to, in connection with, arising out of, or in any way related to the Motion or the services provided by the CRO or Additional Staff to the Debtors as outlined in the Motion, including any matter involving a successor in interest or agent of any of the Debtors or of MERU, shall be brought in this Court;

    ii.    MERU, the Debtors, and any and all of their successors and assigns, consent to the jurisdiction and venue of the Court as the exclusive forum for the resolution of MERU's and the Debtors' claims, causes of actions, or lawsuits described above (unless the Court does not have or retain jurisdiction over such claims or controversies);

    iii.    MERU and the Debtors, and any and all successors and assigns, waive trial by jury, such waiver being informed and freely made; and

    iv.    MERU and the Debtors will not raise or assert any defense based upon jurisdiction, venue, abstention, or otherwise to the jurisdiction and venue of this Court to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to the Motion or the services provided thereunder.

5.    The limitation of liability set forth in paragraph 11 of the General Terms and Conditions of the Engagement Letter shall not apply.

6

6.      Notice of the Motion as provided therein is deemed to be good and sufficient notice of such Motion, and the requirements of the Local Rules are satisfied by the contents of the Motion.

7.      Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, or 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      MERU shall use its reasonable efforts to avoid unnecessary duplication of services provided by any other professionals retained by the Debtors.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

10.      To the extent that there may be any inconsistency between the terms of the Motion, the Engagement Letter, and this Order, the terms of this Order shall govern.

11.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

**Exhibit 1 to Order - Engagement Letter**

DOCS_DE:243537.2 01213/002

# MERU

May 25, 2023

Agspring, LLC, *et al*
5101 College Boulevard
Leawood, Kansas 66211
Attn: Eric Knight and Gerry Tywoniuk, Board of Managers,
Bruce Chapin, Manager

Dear Sirs:

This letter, together with the attached Schedule(s) and General Terms and Conditions, confirms and sets forth the terms and conditions of the engagement between Meru, LLC ("MERU") and Agspring, LLC, and representation of its directly or indirectly owned affiliates, Agspring Idaho 1 LLC; Agspring Idaho LLC; FO-ND LLC, dba Firebrand Artisan Mills; Agspring Logistics LLC, dba Agforce and Agspring Idaho 2 LLC. (each, individually and collectively, the "Company"), including the scope of the services to be performed and the nature and basis of compensation for those services. Upon execution of this letter by each of the parties below, this letter will constitute a binding agreement between the Company and MERU (the "Agreement").

## Description of Services

(a)   Officers. In connection with this engagement, MERU shall make available to the Company:

   (i)      Kyle Sturgeon as the Chief Restructuring Officer (the "CRO"); and

   (ii)     Upon the mutual agreement of MERU and the Company, MERU will provide additional employees of MERU and/or its affiliates ("Additional Staff") as required (collectively, with the CRO, the "Engagement Staff"), to assist the CRO in the execution of the duties set forth more fully herein.

(b)   Duties. The Engagement Staff will provide the services listed below to the Company.

   (i)      The Engagement Staff shall lead the Company's assessment of restructuring options and strategic alternatives and provide advice and recommendations, as appropriate, to the Company in the evaluation and decisions regarding restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's assets;

   (ii)     Work with the Company's counsel to identify and evaluate the risks and mitigants associated with potential restructuring plans and strategic alternatives and provide advice and recommendations regarding the same;

US.131691335.02

# MERU

(iii)    Assist the Company in preparing contingency plans, as requested;

(iv)    If the Company elects to pursue a bankruptcy:

    (1)    Provide support to the Company, as needed, in its bankruptcy proceedings;

    (2)    Assist the Company's counsel in assembling due diligence materials and preparing necessary court filings;

    (3)    As appropriate, serve as declarants for factual information to which the Engagement Staff can adequately testify;

    (4)    Advise, assist, and/or manage, as appropriate, communications and/or negotiations with outside stakeholders, including lenders (and their advisors), customers, regulatory agencies, suppliers and employees; and

(v)    Provide other services as requested or directed by the Manager or the Board of Managers or other Company personnel as authorized and agreed to by MERU.

(c)    The Engagement Staff shall report to and operate at the request of the CRO and any officers as directed by the Company and, at the request of the Company, will make recommendations to and consult with the Company.

(d)    The Engagement Staff will be employed by MERU and, while rendering services to the Company, will continue to work with other personnel at MERU in connection with unrelated matters that will not unduly interfere with the services rendered by the Engagement Staff pursuant to this Agreement. Except in the event of the Engagement Staff's gross negligence, willful misconduct or bad faith, MERU shall have no liability to the Company for any acts or omissions of the Engagement Staff related to the performance or non-performance of services at the direction of the Board of Managers or Manager and consistent with the requirements of the Engagement and this Agreement.

(e)    In connection with the services to be provided hereunder, from time to time MERU may utilize the services of independent contractors as Engagement Staff subject to the below "Staffing & Compensation" provisions.

**Staffing & Compensation**

MERU fees are based on the hours spent by MERU staff at MERU's hourly rates, which are:

| | |
|---|---|
| Partners / Managing Partners | $700 – 850 |
| Sr. Directors / Principals | $575 – 700 |

# MERU

| | |
|---|---|
| Vice Presidents / Directors | $450 – 575 |
| Analysts / Associates | $300 – 450 |
| Senior Advisors | $400 – 850 |

Such rates shall be subject to adjustment annually at such time as MERU adjusts its rates generally. The Company agrees that staffing (other than the CRO) may be amended from time to time to add or delete staff. The above rates reflect MERU's hourly rates as of January 1, 2023.

In addition to payment of hourly rates, the Company shall reimburse MERU for its reasonable out-of-pocket documented expenses incurred in connection with this assignment, such as travel, lodging, duplicating, research, messenger and telephone charges.

All fees and expenses will be billed by written invoice on a weekly basis.  Invoices are due upon receipt and payable within 10 business days of receipt.

The initial staffing and associated rates for this engagement are listed on Schedule 1.

## Retainer

MERU is currently holding a retainer in the amount of $22,100 from the Company. The Company agrees that MERU may retain that amount and further that in order to commence this engagement, MERU requires an additional retainer of $125,000 prior to commencement of services. This retainer shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder. Please indicate your agreement by executing a copy of this Letter in the space provided below and returning it.  A facsimile or scanned copy delivered via email are as acceptable as an original.  We appreciate prompt receipt of an executed copy but will commence work based on the understandings contained in this letter prior to our receipt of your signature.  Of course, please contact me if you have any questions about anything in this Letter or the Terms, or with respect to any aspect of our representation .

3

# MERU

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Meru, LLC

By: _____
Kyle Sturgeon

Its: Managing Partner

Accepted and agreed:

**AGSPRING, LLC;**
*By its sole member Agspring Holdco, LLC*

**Board of Managers**

_____
Name: Gerry Tywoniuk

_____
Name: Eric Knight

By: _____
Bruce Chapin

Manager for Agspring Idaho 1 LLC; Agspring Idaho LLC; FO-ND LLC, Agspring Logistics LLC, and Agspring Idaho 2 LLC

4

# MERU

### SCHEDULE 1

| Name | Title | Hourly Rate |
|------|-------|-------------|
| Kyle Sturgeon | CRO | $850 |
| Adam Cohen | Sr. Director | $600 |

# MERU

**GENERAL TERMS & CONDITIONS**

### 1.  Term

This Agreement will apply from the commencement of the services referred to in the Description of Services above and may be terminated with immediate effect by either party without cause by written notice to the other party. MERU normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for MERU to continue performance of the engagement, or other just cause or conflict of interest exists. On termination of the Agreement, any fees and expenses due to MERU shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination). The provisions of this Agreement that give the parties rights or obligations beyond its termination, including any indemnification obligations hereunder, shall survive and continue to bind the parties.

### 2.  Information Provided by the Company

The Company shall use all reasonable efforts to: (i) provide MERU with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that MERU reasonably requests in connection with the services to be provided to the Company. MERU shall rely, without further independent verification, on the accuracy and completeness of all available information and information that is furnished by or on behalf of the Company and otherwise reviewed by MERU in connection with the services performed for the Company. The Company acknowledges and agrees that MERU is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. MERU is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Company to do so.

### 3.  Forward Looking Statements

The Company understands that the services to be rendered by MERU may include the preparation of projections and other forward-looking statements, and the Company acknowledges that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, MERU will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

### 4.  No Third-Party Beneficiary

The Company acknowledges that all advice (written or oral) provided by MERU to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board of Managers and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without MERU's prior written approval (which shall not be unreasonably withheld), except as required by law.

### 5.  Services by Other Third Parties.

The Company shall be solely responsible for the work and fees of any other party (other than the Engagement Staff) engaged by the Company to provide services in connection with the engagement regardless of whether such party was introduced to the Company by MERU. Except as provided in this Agreement, MERU shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, MERU acknowledges that it is not authorized under this Agreement to engage any third party to provide services or advice to the Company, other than our agents or independent contractors engaged to provide Services, without the Company's prior written consent.

6

6. Conflicts

MERU is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because MERU and its affiliates comprise a consulting firm ("Firm") that serves many clients, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people that had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained. The MERU professionals providing services hereunder will not accept an engagement that directly conflicts with this engagement without the Company's prior written consent.

7. Confidentiality

MERU shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings, provided in the event of any such legal proceedings MERU will notify the Company so that the Company may seek protection of the information; or (iii) with the consent of the Company to the extent reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8. Audit Matters

The Company acknowledges and agrees that MERU and Engagement Personnel are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

9. Non-Solicitation

The Company, on behalf of itself and its subsidiaries and affiliates and any person that may acquire all or substantially all of its assets agrees that, for a period of two years following the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of MERU or any of its affiliates who worked on this engagement while engaged by MERU or its affiliates ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, MERU shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 2,000 hours. The Company acknowledges and agrees that this fee fairly represents the loss that MERU will suffer if the Company breaches this provision. The fee shall be due and payable at the time of the Solicited Person's acceptance of employment or engagement.

10. Indemnification and Other Matters

The Company shall indemnify, hold harmless and defend MERU and its affiliates and its and their partners, director, officers, employees, and agents (each, an "MERU Party" and collectively, the "MERU Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of MERU that is the subject of the Agreement, except in the event of MERU's gross negligence, willful misconduct or bad faith. The Company shall pay damages and reasonable expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential and material conflict of interest, the MERU Parties may engage separate counsel, acceptable to the Company, to represent them at the Company's expense.

In addition to the above indemnification, MERU employees serving as directors or officers of the Company or affiliates will receive the benefit of the most favorable indemnification provisions provided by the Company to its directors, officers and any equivalently placed employees, whether

# MERU

under the Company's charter or by-laws, by contract, law or otherwise.

The Company shall specifically include and cover employees and agents serving as directors or officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees ("D&O Insurance"). Prior to MERU accepting any officer position, the Company shall, at the request of MERU, provide MERU a copy of its current D&O policy, a certificate(s) of insurance evidencing the policy is in full force and effect, and a copy of the signed Member and/or Board resolutions and any other documents as MERU may reasonably request evidencing the appointment and coverage of the indemnitees. The Company will maintain such D&O Insurance coverage for the period through which claims can be made against such persons. The Company disclaims a right to distribution from the D&O Insurance coverage with respect to such persons. If the Company is unable to include MERU employees and its agents under the Company's policy or does not have first dollar coverage acceptable to MERU in effect for at least $10 million (e.g., there are outstanding or threatened claims against officers and directors alleging prior acts that may give rise to a claim), MERU may, at its option, attempt to purchase a separate D&O Insurance policy that will cover MERU employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. If MERU is unable or unwilling to purchase such D&O Insurance, then MERU reserves the right to terminate the Agreement.

The Company's indemnification obligations in this section shall be primary to, and without allocation against, any similar indemnification obligations that MERU may offer to its personnel generally, and the Company's D&O Insurance coverage for the indemnitees shall be specifically primary to, and without allocation against, any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by MERU or otherwise).

MERU is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third-party products or services are against the third-party vendor and not against MERU, whether or not MERU is instrumental in procuring such third-party product or service.

MERU acknowledges that, during the pendency of any Bankruptcy Court approved retention, these indemnification provisions are subject to modification as may be stated within the Bankruptcy Court's retention order.

## 11. Limit of Liability

THE MERU PARTIES SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS AGAINST OR ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR INTENTIONAL MISCONDUCT OF MERU. THE MERU PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE MERU PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAYABLE TO MERU FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the MERU Parties' aggregate liability for all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by MERU pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the MERU Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the MERU Parties pursuant to this Agreement exceed the Liability Cap.

## 12. Miscellaneous

# M E R U

This Agreement shall be construed in accordance with and governed by the laws of the State of Georgia without giving effect to any choice or conflict of law provision or rule. This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof. This Agreement supersedes all prior or contemporaneous agreements, arrangements, conditions, negotiations and understandings between the parties relating to the subject matter hereof. No waiver of any term, provision or condition of this Agreement shall be deemed to be, or shall be or shall constitute, a waiver of any other term, provision or condition herein, whether or not similar. No such waiver shall be binding unless in writing and signed by the waiving party. No supplement, modification or amendment of any term, provision or condition of this Agreement shall be binding or enforceable unless evidenced in writing executed by the parties hereto. If any provision of this Agreement is declared invalid by any tribunal, then such provision shall be deemed automatically adjusted to the minimum extent necessary to conform to the requirements for validity as declared at such time and, as so adjusted, shall be deemed a provision of this Agreement as though originally included herein. In the event the provision invalidated is of such a nature that it cannot be so adjusted, the provision shall be deemed deleted from this Agreement as though such provision had never been included herein. In either case, the remaining provisions of this Agreement shall remain in effect. This Agreement may be executed in counterparts, each of which shall be deemed an original and which together shall constitute one and the same instrument. MERU AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

This Agreement shall be binding upon MERU and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of MERU's or the Company's respective businesses and/or assets. This Agreement may not be amended or modified except in writing executed by the Company and MERU. Notwithstanding anything herein to the contrary, MERU may reference or list the Company's name and/or logo and/or a general description of the services in MERU's marketing materials, including, without limitation, on MERU's website.

# Exhibit B

DOCS_DE:243537.2 01213/002

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING, LLC, *et al.*,[1] | Case No. 23-10699 (CTG) |
| Debtors. | Jointly Administered |

**DECLARATION OF KYLE STURGEON IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) RETAIN MERU, LLC TO PROVIDE THE DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL STAFF AND (B) DESIGNATE KYLE STURGEON AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS, IN EACH CASE EFFECTIVE AS OF THE PETITION DATE, AND (II) GRANTING RELATED RELIEF**

I, Kyle Sturgeon, declare under penalty of perjury as follows:

1.      I am a managing partner at MERU, LLC ("MERU").

2.      I am duly authorized to submit this declaration (the "Declaration") on behalf of MERU in support of the above-captioned debtors' (the "Debtors") *Motion for Entry of an Order (I) Authorizing the Debtors to (A) Retain MERU, LLC to Provide the Debtors with a Chief Restructuring Officer and Additional Staff and (B) Designate Kyle Sturgeon as Chief Restructuring Officer for the Debtors, in Each Case Effective as of the Petition Date, and (II) Granting Related Relief* (the "Motion").[2]  Certain of the information set forth herein is derived from my review of the Debtors' books and records.  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

3

## MERU'S Qualifications

3.      MERU is well-qualified to represent the Debtors in connection with the types of services requested in the Motion and set forth herein.  MERU is an advisory firm that specializes in financial and operational corporate restructuring, operational turnaround advisory, operational and commercial due diligence, and computations involved in-and-out of court proceedings. MERU has a wealth of experience in providing chief restructuring and financial advisory services and enjoys an excellent reputation for services it has rendered in complex chapter 11 cases on behalf of debtors and creditors.

4.      MERU has extensive experience in assisting distressed businesses.  The experience of its personnel spans a multitude of bankruptcy cases, including: *In re Athenex*, No. 23-90295 (DRJ) (Bankr. S.D. TX); *In re Agspring Mississippi Region, LLC*, Case No. 21-11238 (CTG) (Bankr. D. Del. Oct. 12, 2021); *In re SD-Charlotte, LLC*, No. 20-30149 (LTB) (Bankr. W.D.N.C. Feb. 7, 2020); *In re Achaogen, Inc.*, No. 19-10844 (BLS) (Bankr. D. Del. Apr. 15, 2019); *In re Eastern Outfitters, LLC*, No. 17-10243 (LSS) (Bankr. D. Del. Feb. 9, 2017); *In re Appvion Paper, Inc.*, No. 17-12082 (KJC) (Bankr. D. Del. Oct. 1, 2017); *In re Verso Corporation*, No. 16-10163 (KG) (Bankr. D. Del. Jan. 26, 2016); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y. Oct. 8, 2014); *In re Allens, Inc.*, No. 13-73597 (BTB) (Bankr. W.D. Ark. Oct. 28, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 13, 2012); *In re Arcapita Bank B.S.C.(c)*, No. 12-11076 (SHL) (Bankr. S.D.N.Y. Mar. 19, 2012); *In re AMR Corporation, et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Nov. 29, 2011); *In re Maronda Homes, Inc.*, No. 11-22418 (JKF) (Bankr. W.D. Pa. Apr. 18, 2011); *In re Vitro America, LLC*, No. 10-47473 (ML) (Bankr. N.D. Tex. Nov. 17, 2010); *In re Qimonda North America Corp., et al.*, No. 09-10589 (MFW) (Bankr. D. Del. Feb. 20, 2009); and *In re Mercedes Homes, Inc.*, No. 09-11191 (PGH) (Bankr. S.D. Fla. Jan. 26, 2009).

5.      MERU was previously engaged by Agspring Holdco LLC ("Holdco"), an affiliate

of the Debtors, and in connection with the bankruptcy cases of certain of the Debtors' affiliates

in 2021.   As a result, MERU has acquired significant knowledge of the Debtors and their

businesses and familiarity with the Debtors' financial affairs, debt structure, operations, and

related matters.  Mr. Sturgeon has served as the Debtors' CRO since May 25, 2023.  In providing

prepetition services to the Debtors, MERU has worked closely with the Debtors' boards,

management, and their other advisors and counsel.    Accordingly, MERU has experience,

expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing

effective and efficient services in these chapter 11 cases.

6.      In addition, on May 25, 2023, the Debtors appointed me to act as their CRO.  I am

well-positioned to continue serving them in such role in their chapter 11 cases, and to help them

achieve their ultimate goal of preserving the going-concern value of the Debtors' businesses, their

stakeholders, and parties in interest. In addition to being a Managing Partner of MERU, I am also

its co-founder, based in Atlanta, Georgia.  I am a certified insolvency and restructuring advisor.

I have extensive experience as a financial restructuring advisor and have provided advisory

services to management for companies across multiple industries with typical annualized

revenues between $50 million and $4 billion.  I have had great success optimizing stakeholder

value by providing advisory services to management, owners, boards of directors, senior secured

lenders, bondholders, and private equity firms across a broad spectrum of industries.  Prior to co-

founding MERU, I was a Senior Vice President in the Recovery & Transformation Services group

at McKinsey & Company from 2013 to 2017.  Prior to that, I was a Director in the North American

Corporate Restructuring Practice at Alvarez & Marsal from 2006 to 2013.

7.      MERU is able to advise the Debtors in a cost-effective, efficient, and timely

manner.

5

## **Services to Be Rendered**

8.     MERU intends to provide the Debtors with a CRO and Additional Staff as necessary on the terms and conditions set forth in the Engagement Letter and any order granting the relief requested in the Motion.  MERU will provide CRO services to the Debtors as directed by the Debtors' Board of Managers (the "Board") and will report to the Board.  Generally, I will perform activities and services customarily performed by a chief restructuring officer, including having control over: (a) the financial and operational functions of the Debtors and (b) all elements of the restructuring process with respect to the Debtors.

9.     These services may include, but are not limited to:

(a)     Leading the Debtors' assessment of restructuring options and strategic alternatives and providing advice and recommendations to the Board in its evaluation and decision regarding restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various businesses and assets;

(b) Working with the Debtors' counsel to identify and evaluate the risks and mitigants associated with potential restructuring plans and strategic alternatives and providing advice and recommendations regarding the same;

(c)     Assisting the Debtors' counsel in assembling due diligence materials and preparing necessary court filings;

(d) Advising, assisting, and/or managing, as appropriate, communications and/or negotiations with outside stakeholders; and

(e)     Providing other services as requested or directed by the Debtors as authorized and agreed to by MERU.

10.     I believe these services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their chapter 11 cases.

6

## Terms of Retention

11.     MERU's decision to accept this engagement is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter and the Motion.

12.     The current standard hourly rates of MERU's professionals are:

| Partners/Managing Partners | $700-$850 |
|---|---|
| Senior Directors/Principals | $575-700 |
| Vice Presidents/Directors | $450-$575 |
| Analysts/Associates | $300-$450 |
| Senior Advisors | $400-$850 |

13.     For this engagement, my hourly rate will begin at $850.

14.     The hourly rates set forth above are set at a level designed to fairly compensate MERU, to cover fixed and routine overhead expenses, and are subject to periodic adjustments necessitated by market and other conditions.  As set forth in the Engagement Letter, these "rates shall be subject to adjustment annually at such time as MERU adjusts its rates generally."

15.     Beyond the rates listed above, the Debtors will reimburse MERU for its reasonable out-of-pocket documented expenses incurred in connection with this assignment, such as travel, lodging, duplicating, research, messenger, and telephone charges.

## Indemnification

16.     As a material part of the consideration for which MERU has agreed to provide the services described herein, and pursuant to the Engagement Letter, including the indemnification provisions attached thereto and incorporated by reference therein (the "Indemnification Provisions"), the Debtors have agreed to indemnify and hold harmless MERU (including its affiliates and its and their partners, director, officers, employees, and agents) and me as CRO, (collectively, the "Indemnified Parties") under certain circumstances, in connection with MERU's

7

engagement pursuant to the Engagement Letter, including paying damages and reasonable expenses; *provided, however*, that MERU acknowledges that, during the pendency of any retention approved by this Court, the Indemnification Provisions are subject to modification as may be stated within the Court's retention order, that indemnification does not apply in the event of MERU's gross negligence, willful misconduct, or bad faith, and that the other Indemnified Parties shall not be entitled to indemnification of any costs, fees, expenses, damages, and liabilities for any claim which arises out of gross negligence, bad faith or willful misconduct, as finally adjudicated by a finder of fact; *and, provided further*, that such indemnification shall be permitted only in accordance with the Court's order approving MERU's retention in this matter.

### Fees and Reporting

17.     Upon Court approval of the relief requested in the Motion, MERU will not be employed as a professional under section 327 of the Bankruptcy Code, and MERU will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, MERU will file with the Court with copies to the United States Trustee ("U.S. Trustee") a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed. MERU shall file with the Court, and provide notice to the U.S. Trustee, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in quarter-hour increments and the corresponding charge (time multiplied by hourly rate) for each

8

task; where personnel are providing services at a "flat" rate, the time entries shall be kept in half-hourly increments.  Parties in interest shall have 14 days after the date each report is served to object to such report.  In the event an objection is raised and not consensually resolved, the portion of the staffing report objected to shall be subject to review by the Court.  No payments shall be made to MERU until the objection period has passed, and in the event an objection is raised, no payment shall be made to MERU on account of the portion of such staffing report objected to until such objection is resolved.

18.    As set forth in the Engagement Letter, MERU received $125,000 as a retainer from the Debtors (the "Retainer").  The purpose of the Retainer was to secure the payment of professional fees to MERU.  MERU is current as of the Petition Date but has not yet completed a final reconciliation as of the Petition Date.   In the 90 days prior to the Petition Date, other than the Retainer, MERU received no other payments from the Debtors.

19.    I am not aware of any asserted or threatened disputes against MERU or its personnel on account of any services provided to the Debtors before the Petition Date.

20.    I believe that the compensation structure described above and set forth in the Engagement Letter and the Motion is consistent with and typical of compensation arrangements entered into by MERU and other comparable firms that render similar services under similar circumstances.  I further believe that the compensation structure is reasonable, market-based, and designed to compensate MERU fairly for its work and to cover fixed and routine overhead expenses.

## No Duplication of Services

21.    I believe that MERU's services will complement, and not duplicate, the services rendered by other professionals retained in these chapter 11 cases.

9

**MERU's Disinterestedness**

22.    In the ordinary course of its business, MERU maintains a database for purposes of performing "conflicts checks."  The database contains information regarding its present and past representations and transactions.

23.    In the process of preparing for these chapter 11 cases, I obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in herein (the "Potential Parties in Interest").

24.    Based on my review, MERU represents that, to the best of its knowledge, MERU knows no fact or situation that would represent a conflict of interest for MERU with regard to the Debtors.

25.    As disclosed above, MERU had previously been engaged by Holdco, a non-Debtor affiliate of the Debtors, and in connection with the bankruptcy cases of certain of the Debtors' affiliates in 2021.

26.    Other than as disclosed above, MERU has no current or past relationships with any Potential Parties in Interest.  However, it is possible that MERU personnel have worked with Potential Parties in Interest.  It is also possible that certain of MERU's employees, partners, equity holders, or an affiliate of any of the foregoing may have financial accounts or insurance relationships with Potential Parties in Interest.

27.    To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, and except as set forth herein, neither I nor any MERU personnel: (a) have any connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, the U.S. Trustee, or any person employed in the office of the U.S. Trustee, the U.S. Bankruptcy Court for the District of Delaware, or any

person employed in the Bankruptcy Court; and (b) does not hold any interest adverse to the Debtors' estates.

28.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, except as set forth herein, MERU is not currently engaged to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these chapter 11 cases.  MERU will continue to provide professional services to entities that may be creditors or equity security holders of the Debtors or other parties in interest in these chapter 11 cases, including the Debtors' non-Debtor affiliates, provided that such services do not relate to, or have any direct connection with, the chapter 11 cases of the Debtors.

29.     In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, neither I nor MERU have entered into any agreements, express or implied, with any other party in interest, including any Debtor, any creditor, or any attorney for such party in interest in these chapter 11 cases (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the estate in excess of the compensation allowed by the Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) for payment of compensation in connection with these chapter 11 cases other than in accordance with the applicable provisions of the Bankruptcy Code.

30.     If MERU discovers any additional information that requires disclosure, MERU will provide the Court with a supplemental declaration disclosing, among other things, any new material facts and relationships between the Debtors, the Additional Staff, or other significant parties in interest.  MERU reserves the right to supplement this Declaration in the event MERU discovers any facts bearing on matters described in this Declaration regarding MERU's employment by the Debtors.

11

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: June 30, 2023
                                        */s/ Kyle Sturgeon*
                                        Kyle Sturgeon
                                        Managing Partner, MERU, LLC