## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING, LLC, *et al.,*[1] | Case No. 23-10699-CTG |
| Debtors. | Jointly Administered |

**Objection Deadline: August 11, 2023 at 4:00 p.m. (ET)**
**Hearing Date: August 18, 2023 at 10:00 a.m. (ET)**

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE MAINTENANCE AND CLOSURE OF CERTAIN BANK ACCOUNTS AND CONTINUED USE OF EXISTING CHECKS, (B) AUTHORIZING THE CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, AND (C) GRANTING LIMITED RELIEF FROM THE REQUIREMENTS OF BANKRUPTCY CODE SECTION 345(B)

Agspring LLC ("Agspring") and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors") by and through their proposed undersigned counsel, hereby submit this *Motion of the Debtors for Entry of an Order (a) Authorizing the Maintenance and Closure of Certain Bank Accounts and Continued Use of Existing Checks, (b) Authorizing the Continued Use of Existing Cash Management System, and (c) Granting Limited Relief from the Requirements of Bankruptcy Code Section 345(b)* (the "Motion"). In support of the Motion, the Debtors rely on the *Declaration of Kyle Sturgeon* (the "Sturgeon Declaration"), filed concurrently herewith, and respectfully state as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[2]

2.        The statutory predicates for the relief sought herein are sections 105(a), 345, 363, 364 and 553 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended or modified, the "Bankruptcy Code"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2015-2(a) and (b).

3.        Venue is proper in this district pursuant to 28 U.S.C. § 1408.

### GENERAL BACKGROUND

4.        On May 31, 2023 (the "Petition Date"), the Debtors commenced the above captioned cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court.

5.        The Debtors and certain of their affiliated entities[3] were part of a larger agribusiness and logistics company formed in August 2012 with the express aim of acquiring, consolidating, and operating midstream agricultural commodity firms, including four agribusiness units: three business units focused on commodity purchasing and one providing logistics broker services.

6.        As of the date of this Motion, no trustee, examiner or statutory committee has been appointed in these Chapter 11 Cases.

---

[2] Pursuant to Rule 9013-1(f) of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors hereby confirm their consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

[3] The Debtors' affiliates known as the Big River Entities are comprised of Agspring Mississippi Region, LLC ("AMR"), Agspring MS 1, LLC ("Agspring MS 1"), Agspring MS, LLC ("Agspring MS"), Lake Providence Grain and Rice LLC ("LPGR") and Bayou Grain & Chemical Corporation ("BGCC").  The Big River Entities filed jointly administered chapter 11 cases in this Court on September 10, 2021, under Case No. 21-11238 (CTG).  At the request of the Big River Entities, after successful resolution of all material disputes affecting their estates, the Court entered the *Order Dismissing Chapter 11 Cases* on August 16, 2022. [D.I. 483] (the "Dismissal Order").  None of the Big River Entities are debtors in these Cases.

7.       Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' business and capital structure is set forth in detail in the *Declaration of Kyle Sturgeon* [Docket No. 3] (the "First Day Declaration"), which is incorporated herein by reference.

## A.      Background Related to the Cash Management System

8.       Prior to the commencement of the Chapter 11 Cases, and in the ordinary course of their business, the Debtors maintained five (5) bank accounts (the "Bank Accounts") at Bank of America ("BofA"). The Bank Accounts are part of a cash management system (the "Cash Management System") established by the Debtors to efficiently monitor and control their cash position and disburse funds to satisfy their obligations.  All the Bank Accounts are subject to deposit control agreements in favor of the Debtors' Term Lenders.[4] The current signers on the Bank Accounts are Bruce Chapin, Sam Hawkins, and Paul Highstrom, who are independent contractors providing management services to the Debtors.  A description of each of the Debtors' Bank Accounts held at BofA is as follows:

a)       Agspring LLC (Account No. ending 7162): This Bank Account was used by the Debtors, as their primary operating account, to pay expenses in the ordinary course of business.  The total amount of cash currently in this Bank Account is approximately $110,000.

b)       Agspring LLC (Account No. ending 2879): This Bank Account is not an integral part of the Debtors' day-to-day Cash Management System.  While the Debtors were operating, they provided a cash collateral bond secured by the amounts in this Bank Account.  The bond was terminated in December 2021.  The total amount of cash currently in this Bank Account is approximately $100,000.

c)       Agspring Idaho 1 LLC (Account No. ending 2572): This Bank Account was an operating account that was used to pay expenses in the ordinary course of business for three operating units of the Debtors, Agforce, Thresher and Firebird.  These operating units were sold in late 2021.  The total amount of cash currently in this Bank Account is approximately $268,000.

---

[4] Terms not otherwise defined herein have the meaning attributed to such terms in the First Day Declaration [Docket No. 3].

US_ACTIVE\123747751\V-8

d)     Agspring Idaho 1 LLC (Account No. ending 0357): This Bank Account is not an integral part of the Debtors' day-to-day Cash Management System. Instead, this Bank Account was utilized to secure the Debtors' obligations for corporate credit cards used for travel. The credit cards were cancelled in late 2021, and the cash collateral was released in 2022. The majority of the funds in this Bank Account were since moved to the Agspring Idaho LLC Operating Account. The total amount of cash currently in this Bank Account is approximately $0.72.

e)     Agspring Idaho LLC (Account No. ending 7482): This Bank Account was used by Agspring Idaho LLC as an operating account used to pay expenses in the ordinary course of business. The total amount of cash in this Bank Account as of the Petition Date is approximately $37,000.

9.      The Debtors perform a reconciliation of all of the deposits and debits in the Cash Management System which were historically reviewed daily and reconciled monthly. The Debtors also make book entries as necessary for each transfer between their accounts. The Debtors request the Court's authority to close some of the Bank Accounts and to transfer the funds of the closed Bank Accounts into the Agspring Idaho 1 LLC (Account No. ending 2572) (the "<u>Main Account</u>") in order to streamline payment and reconciliation of Chapter 11 expenses and to avoid payment of multiple bank account fees.

**B.**     <u>**Existing Checks**</u>

10.      In the ordinary course of business, the Debtors use checks with the Debtors' name printed thereon. To minimize administrative expense and delay, the Debtors request authority to continue to use their checks in the forms existing immediately prior to the Petition Date, without reference to the Debtors' "Debtor-In-Possession" status.

<u>**RELIEF REQUESTED**</u>

11.      By this Motion, the Debtors seek entry of an order: (a) authorizing but not requiring the closure of one or more of their Bank Accounts and transfer of funds of the closed Bank Accounts to the Main Account; (b) authorizing but not directing continued use of existing checks for Bank Accounts not closed; (c) authorizing but not directing the continued use of the existing

4

Cash Management System; (d) payment of any banking fees; and (e) providing any additional relief required in order to effectuate the foregoing.

## **BASIS FOR RELIEF REQUESTED**

### A.    **Cash Management System**

12.    The Debtors believe that the requested relief, including use of the existing Cash Management System will streamline the processing of payments and eliminate costs. The continued use of a cash management system employed in the ordinary course of a debtor's prepetition business has been approved as a routine matter in a number of other cases in this district. *See, e.g., In re American Eagle Delaware Holding Company LLC*, Case No. 22-10028 (JKS) (Bankr. D. Del. Feb. 10, 2022); *In re BH Cosmetics Holdings, LLC*, Case No. 22-10050 (CSS) (Bankr. D. Del. Feb. 7, 2022); *In re Alto Maipo Delaware LLC*, Case No. 21-11507 (KBO) (Bankr. D. Del. Dec. 17, 2021); *In re Sharity Ministries, Inc*., Case No. 21-11001 (JTD) (Bankr. D. Del. Aug. 10, 2021); *In re Alex and Ani, LLC*, Case No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021); *In re The Collected Group, LLC*, Case No. 21-10663 (LSS) (Bankr. D. Del. Apr. 28, 2021); *In re Mallinckrodt PLC*., Case No. 21-12522 (JTD) (Bankr. D. Del. Nov. 19, 2020); *In re SFP Franchise Corp*., Case No. 20-10134 (JTD) (Bankr. D. Del. Feb. 13, 2020); *In re HRI Holding Corp*., Case No. 19-12415 (MFW) (Bankr. D. Del. Dec. 5, 2019); *In re EdgeMarc Energy Holdings, LLC*, Case No. 19-11104 (BLS) (Bankr. D. Del. June 13, 2019); *In re Things Remembered, Inc*., Case No. 19-Case 22-10842 (KG) (Bankr. D. Del. Feb. 26, 2019).  Courts have recognized that strict enforcement of the bank account closure requirements in certain cases does not serve the rehabilitative purposes of chapter 11.  Accordingly, cases in this district have waived such requirements and replaced them with alternative procedures that provide the same protections.  *See, e.g., In re Exide Technologies*, Case No. 02-11125 (Bankr. D. Del. April 17, 2002) (permitting debtors to maintain existing bank accounts and cash management system); *In re*

5

*W.R. Grace & Co.*, Case No 01-01139 (Bankr. D. Del. April 2, 2001) (same); *In re USG Corp.*, Case No. 01-02094 (Bankr. D. Del. June 27, 2001) (same); *In re Waccamaw's HomePlace*, Case No. 01-00181 (Bankr. D. Del. Jan. 17, 2001) (same).

13.    Indeed, courts in this district have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

14.    Further, Bankruptcy Code section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title" and Bankruptcy Code section 363(c)(1) authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. §§ 105(a) and 363(c)(1).

15.    The Debtors' Cash Management System constitutes a customary practice that was created and implemented by the management of the Debtors in the exercise of their business judgment.  The Cash Management System is a practical mechanism that allows the Debtors to transfer their funds for the payment of their obligations including the ability to: (a) control and monitor corporate funds; (b) ensure cash availability and (c) reduce administrative expenses by facilitating the of timely and accurate balance and presentment information and make the relief requested herein appropriate under Bankruptcy Code section 105(a).

**B.**     **The Bank Accounts**

16.     Likewise, the Debtors should be authorized to close some of their Bank Accounts and continue to fund their post-petition expenses by payments made from the Main Account and should be exempt from certain of the Guidelines[5] established by the United States Trustee for the District of Delaware.  One provision of the Guidelines requires a chapter 11 debtor-in-possession to open new bank accounts and close all existing accounts.  The Guidelines also require that the new bank accounts only be opened in certain financial institutions designated as authorized depositories by the United States Trustee.  In the present case, the Bank Accounts are already held at BofA which is an authorized depository.  Maintaining the Main Account at BofA will enable the continued use of the existing Cash Management System and will avoid the need for opening yet another bank account, obtaining new checks and attendant costs and delay.  As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific bank accounts for any tax payments.  The Debtors believe that tax obligations, if any, can be paid most efficiently out of the Main Account and the United States Trustee can adequately monitor the flow of funds into and out of the Main Account. The creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary, costly and inefficient.

17.     Accordingly, the Debtors hereby request authority to close some of the Bank Accounts, transfer the funds held in the closed Bank Accounts to the Main Account and utilize the Main Account pursuant to the existing Cash Management System currently in place.  The Debtors

---

[5] The Guidelines were issued in order to assist the U.S. Trustee in supervising the administration of chapter 11 cases. Such Guidelines require chapter 11 debtors to, among other things, unless the Court requires otherwise:

   a.   Close all existing bank accounts and open new accounts which must be designated debtor-in-possession bank accounts;

   b.   Establish and maintain separate debtor-in-possession accounts for the payment of taxes and separate debtor-in-possession accounts for cash collateral; and

   c. Obtain and utilize new checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession" and contain certain other information related to the chapter 11 case.

do not believe that allowing them to do so will prejudice any party-in-interest or their estates. If the relief requested herein is granted, the Debtors will not pay any debts incurred on their behalf before the Petition Date unless specifically authorized by this Court.

18.      Subject to Bankruptcy Code section 553, all banks that maintain the Bank Accounts should be prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtors' use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in Bankruptcy Code section 101(5)) of any such bank against the Debtors that arose before the Petition Date, absent further order of the Court.

**C.      The Debtors Should be Permitted to Continue Using Existing Checks**

19.      Local Rule 2015-2(a) requires a debtor to obtain court approval to continue to use its existing checks without imprinting "DIP" or "Debtor-In-Possession" thereon.  Accordingly, and in an abundance of caution, the Debtors request that this Court authorize them to use checks existing immediately before the Petition Date without reference to the Debtors' status as "debtor-in-possession." As of the Petition Date, the Debtors had a large stock of checks that were used in the ordinary course of business.  Reprinting their checks to indicate that the Debtors are each a "Debtor-In-Possession" would impose an unnecessary burden and expense on the Debtors.

**D.      Waiver of the Requirements of Bankruptcy Code Section 345(b) Is Appropriate**

20.      The Debtors request that the Court waive the requirements of Bankruptcy Code section 345(b) to the extent they are applicable. The Debtors' existing deposit practices are significantly less burdensome and more appropriately tailored to their needs than the practices otherwise required under the Bankruptcy Code and by the U.S. Trustee Guidelines.  Accordingly, the Debtors submit that strict compliance with Bankruptcy Code section 345 and the U.S. Trustee Guidelines would be overly burdensome and restrict the Debtors' banking options to the detriment of their estates and creditors.

8

21.    Bankruptcy Code section 345 governs a debtor's deposits during its bankruptcy case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code section 345(b) requires debtors to obtain from the entity with which such money is deposited, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety. 11 U.S.C. § 345(b). In the alternative, the estate may require that the entity deposit government securities in accordance with 31 U.S.C. § 9303.

22.    Maintaining deposits in strict compliance with the requirements of Bankruptcy Code section 345(b) would, in some cases, be inconsistent with the requirement of section 345(a) that deposits be maintained in a manner that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). It is for this reason that in 1994, Congress amended Bankruptcy Code section 345 to allow the requirements of subsection (b) to be waived or modified if a court so orders "for cause." 11 U.S.C. § 345(b). As the legislative history indicates, Congress believed that strict application of Bankruptcy Code section 345(b) could "needlessly handcuff larger, more sophisticated debtors." 140 Cong. Rec. H 10,767 (October 4, 1994). All of the Debtors' Bank Accounts are maintained for operational and not investment purposes.  It is possible that at times, the individual balance in the Main Account may exceed the current limits of governmental insurance. Therefore, the Main Account may be subject to the bonding or collateralization requirements of Bankruptcy Code section 345(b) and the U.S. Trustee Guidelines unless those requirements are waived. 11 U.S.C. § 345(b).

US_ACTIVE\123747751\V-8

23.     The Debtors believe it would be in the best interests of the estate's creditors to continue following the existing deposit practices, notwithstanding the requirements of Bankruptcy Code section 345(b) and the U.S. Trustee Guidelines. The Debtors further submit that the Debtors' deposit practices are commercially reasonable and appropriate, and consistent with the intent of Bankruptcy Code section 345.

24.     Bankruptcy judges in this district have consistently waived the requirements of Bankruptcy Code section 345(b) and the U.S. Trustee Guidelines. *See, e.g., In re Sharity Ministries, Inc.*, Case No. 21-11001 (JTD) (Bankr. D. Del. Aug. 10, 2021) (authorizing the debtors' continued use of existing bank accounts); *In re Things Remembered, Inc.*, Case No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019) (same); *In re ATD Corp.*, Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 24, 2018) (same); *In re VER Techs. Holdco LLC*, Case No. 18-10834 (KG) (Bankr. D. Del. May 4, 2018) (same); *In re EV Energy Partners, L.P.*, Case No. 18-10814 (CSS) (Bankr. D. Del. Apr. 25, 2018) (same); *In re PES Holdings, LLC*, Case No. 18-10122 (KG) (Bankr. D. Del. Jan. 23, 2018) (same). The Debtors submit that cause for a similar waiver exists in this case.

## NOTICE AND NO PRIOR REQUEST

25.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the U.S. Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the twenty (20) largest unsecured claims as set forth in the list filed with the Debtors' petitions; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) the United States Securities and Exchange Commission; (f) the United States Food and Drug Administration; (g) all parties who have requested notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002; and (h) each of the banks holding the Bank Accounts.  In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

10

26.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and grant the Debtors such other and further relief as is just and proper.

Dated: July 28, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
919 North Market Street, 17th Floor P.O.
Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400 Email:
ljones@pszjlaw.com

 and

**DENTONS US LLP**

Samuel R. Maizel (*Pro Hac Vice* Pending)
Tania M. Moyron (*Pro Hac Vice* Pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email: samuel.maizel@dentons.com
          tania.moyron@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*