**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **AGSPRING, LLC, *et al.*,**[1] | Case No. 23-10699-CTG |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF ORDER (1) APPROVING STIPULATION AUTHORIZING USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING THE AUTOMATIC STAY AND (4) GRANTING RELATED RELIEF**

Agspring LLC ("Agspring"), and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), submit this motion (the "Motion"), pursuant to sections 105, 361, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of a final order (the "Order") substantially in the form attached hereto as **Exhibit A**: (i) approving the stipulation authorizing use of cash collateral by the Debtors and LVS II SPE XVIII LLC ("LVS") and HVS V LLC ("HVS" and, together with LVS, the "Lenders") and U.S. Bank National Association, as Administrative Agent (the "Agent") for the Lenders attached as **Exhibit 1** to the proposed Order (the "Stipulation"); (ii) granting adequate protection to the Lenders; and (iii) granting related relief.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262) (collectively "Chapter 11 Cases"). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

In support of this Motion, the Debtors rely on the *Declaration of Kyle Sturgeon* (the "Sturgeon Declaration") filed concurrently herewith and fully incorporated herein by reference. The Debtors further represent as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Pursuant to Local Rule 9013-1(f), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and procedural bases for the relief requested herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2.

4. The Office of the United States Trustee has not appointed an official committee of unsecured creditors for these cases.

## Summary of Essential Terms

5. In accordance with Bankruptcy Rules 4001(b) and (d) and Local Rule 4001-2(a)(ii), below is a summary[2] of the terms of the Debtors' proposed use of the Agent's cash collateral (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"):

[2] The summary of the Order and the Stipulation set forth in this Motion is intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof. The summary is qualified in its entirety by the Order and the Stipulation. In the event there is any conflict between this Motion and the Order or the Stipulation, the Order and the Stipulation will control in all respects.

a. Amount of Cash Collateral to Be Used. (Stipulation ¶¶ 1& 2.) The Debtors seek authority to use Cash Collateral of the Agent in an amount consistent with the expenditures described in a cash collateral budget, the initial form of which is attached to the Stipulation as Exhibit A (the "Budget"), through the Expiration Date, described in subparagraph e, below.

b. Parties with an Interest in Cash Collateral. The principal parties with an interest in the Cash Collateral are the Agent and the Lenders.

c. Use of Cash Collateral. (Stipulation ¶ 3). The Debtors will be authorized to use Cash Collateral to pay their actual, necessary, post-petition expenses, only in accordance with the terms of the Stipulation, including the agreed Budget attached to the Stipulation as Exhibit A; *provided*, *however*, (i) that the Debtors shall be deemed in compliance with the Budget so long as the Total Disbursements (as such term is used in the Budget) during the most recently concluded four-week period do not exceed the aggregate amounts in the Budget for such four week period by more than 10%, (ii) that from and after the fourth weekly Budget period, the sum of the Debtors' actual Net Cash Flow (as that term is used in the Budget) for the most recently concluded four-week period shall not be more than 10% below the sum of Net Cash Flow reflected in the Budget for such four-week period, and (iii) that the Debtors may use such Cash Collateral for expenses and/or expense amounts that are not specified in the Budget, so long as the Debtors obtain the prior written consent of the Agent for same.

d. Limitation on Use of Cash Collateral. (Stipulation ¶ 3). Notwithstanding the foregoing, no Cash Collateral shall be used for any fees, disbursements or expenses of any party, including the Debtors or any official committee appointed in these cases, or any professional employed by any party, in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Agent or Lenders (directly or

indirectly), including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Agent's security interest in and liens upon the Collateral, or the Pre-Petition Indebtedness; provided, however, that any official committee of unsecured creditors appointed in the Debtors' cases shall be permitted to use Cash Collateral in an amount not to exceed $20,000 to investigate factual and legal matters relevant to the Debtors' admissions and releases contained in paragraphs A through F of the Stipulation.

e. Expiration Date. (Stipulation ¶ 11). The Debtors' right to use Cash Collateral shall expire, unless otherwise agreed by the Agent in writing, upon the earliest of: (a) midnight on September 1, 2023, unless extended or modified by further order of the Court or the written agreement of the Agent and the Debtors; (b) appointment of a Chapter 11 trustee or an examiner with expanded powers; (c) conversion of any of the Debtors' Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (d) the occurrence of a default (following the expiration of any applicable cure period) or termination event under any financing facility or order or stipulation approving the use of Cash Collateral in the bankruptcy cases of any of the Debtors; (e) the entry of any order granting relief under section 506(c) of the Bankruptcy Code with respect to any of the Collateral; (f) the filing by any of the Debtors, without the Agent's prior written consent, of any motion to obtain financing under section 364 of the Bankruptcy Code from any person other than the Agent and the Lenders, or otherwise to grant a lien or security interest on any of the Collateral in favor of any person other than the Agent and the Lenders; (g) the filing by any of the Debtors, without the Agent's prior written consent, of any motion to sell any of the Collateral; or (h) the Debtors' failure to comply with any provision of the Stipulation. The earliest of (a) —(h) in this paragraph is the "Expiration Date," provided that the Agent shall be required

to provide written notice to the Debtors of any default under items (d) and (h) above and the Debtors shall have five (5) business days to cure any such default.

f. Adequate Protection. (Stipulation ¶¶ 2, 3 & 4). The Debtors have agreed to limit the use of Cash Collateral in accordance with the Budget. In addition, under the Stipulation to be approved by an order of this Court, the Agent, for the benefit of itself and the Lenders, is granted replacement liens and security interests on all assets of the Debtors and their estates, whether now existing or hereafter acquired, and the proceeds, income and profits and offspring of any of the foregoing, to secure the Debtors' use of Cash Collateral, whether pursuant to the Stipulation or otherwise, and to secure any diminution of value in the Collateral from and after the Petition Date (the "Replacement Liens"). The Replacement Liens (i) are subordinate only to the Carve-Out (as defined below) and any prior existing and validly perfected liens and security interests in the Debtors' assets, (ii) shall attach with the same rights and in the same order of priority that existed as to the Collateral under applicable non-bankruptcy law (including by agreement of the Agent) as of the Petition Date, (iii) are automatically perfected without any further action by the Agent, and (iv) exclude any and claims or causes of action arising under Chapter 5 of the Bankruptcy Code or applicable state fraudulent-transfer law and any proceeds thereof (together, "Avoidance Actions").

As further adequate protection in addition to the liens and security interests granted to the Agent, and in the event that the value of the postpetition replacement collateral proves insufficient to enable the Agent to collect the aggregate amount of the Cash Collateral used by the Debtors pursuant to the Stipulation and Order or otherwise, or in the event the value of the Collateral diminishes during this proceeding, the Agent and the Lenders shall each be granted an allowed superpriority claim against each of the Debtors as provided in section 507(b) of the Bankruptcy

Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, except as such provision relates to Avoidance Actions and subject in all events to payment of the Carve-Out (the "Superpriority Claim").

g. Automatic Perfection. (Stipulation ¶ 4). The Replacement Liens shall be automatically perfected postpetition security interests and liens without the necessity of the execution by the Agent or the Lenders (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.

h. Carve-Out. (Stipulation ¶ 18). The Replacement Liens, the Superpriority Claim, the Pre-Petition Indebtedness, and the Collateral shall be subject in all cases to payment of the following expenses (the following subparagraphs, collectively, the "Carve-Out"): (i) unpaid postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930; (ii) accrued but unpaid postpetition obligations of the Debtors, up to the amounts set forth in the Budget (prorated on a daily basis) through the Expiration Date, other than professional fees and expenses; (iii) postpetition fees and expenses of professionals of the Debtors, which are retained by an order of the Court pursuant to sections 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "Professionals"), in an aggregate amount not to exceed $150,000, but only to the extent such fees and expenses (A) are incurred prior to the Expiration Date and (B) are allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code; and (iv) postpetition fees and expenses of the Professionals incurred after the Expiration Date in an aggregate amount not to exceed $50,000, to the extent such fees and expenses are allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code.

i. Events of Default. (Stipulation ¶ 13). The Debtors' right to use Cash Collateral may be limited if one or more events of default occur, as itemized in paragraph 13.

j. 506(c) Waiver. (Stipulation ¶ 21). Subject to entry of the Order approving the Stipulation, the Debtors, on behalf of themselves and their bankruptcy estates, waive any and all claims, rights and powers to surcharge the Agent, the Lenders, the Collateral and any other property or assets of the Debtors subject in any manner whatsoever to the liens and security interests of the Agent (including the Replacement Liens), pursuant to section 506(c) or section 105(a) of the Bankruptcy Code. The foregoing waiver shall be binding upon any trustee or examiner with expanded powers appointed for the estates of the Debtors or with respect to their property.

**Disclosures**

6. Pursuant to Bankruptcy Rule 4001(c) and Local Rule 4001-2(a)(i), a debtor in possession seeking authority to use cash collateral or to obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing. The debtor in possession must also justify the inclusion of such provisions. Set forth below are the disclosures required in accordance with such rules:

a. Local Rule 4001-2(a)(i)(A) requires a debtor to disclose whether it has granted cross-collateralization to prepetition secured creditors in connection with the debtor's cash collateral usage or additional financing. **The proposed Stipulation and Order do not provide for cross-collateralization protection.**

b. Local Rule 4001-2(a)(i)(B) and Bankruptcy Rule 4001(c)(1)(B)(iii) require the disclosure of provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or

(ii) involve the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and a creditors' committee at least sixty (60) days from the date of its formation to investigate such matters. **The proposed Stipulation and Order (i) contain stipulations relating to the validity, perfection, enforceability, and amount of the Agent's prepetition liens and claims, and (ii) immediately release claims of the Debtors against the Agent. However, all such stipulations and releases are expressly subject to challenge by parties in interest within the time frames provided by the Local Rule. *See* Stipulation ¶¶ A-F & 16.**

c. Local Rule 4001-2(a)(i)(C) and Bankruptcy Rule 4001(c)(1)(B)(x) require the disclosure of provisions that seek to waive a debtor's rights without notice under section 506(c) of the Bankruptcy Code. **The proposed Stipulation and Order provide for a waiver of rights under section 506(c) of the Bankruptcy Code only upon entry of the Order. *See* Stipulation ¶ 20.**

d. Local Rule 4001-2(a)(i)(D) and Bankruptcy Rule 4001(c)(1)(B)(xi) require disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code. **The proposed Stipulation and Order do not provide for such liens.**

e. Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that deem prepetition secured debt be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor' prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code). **The proposed Stipulation and Order do not contain provisions that deem prepetition secured debt to be postpetition debt or use postpetition**

**loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code).**

f. Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out. **The proposed Order does not provide for disparate treatment for the professionals retained by a Committee from those professionals retained by the Debtors, except that the Budget does not project expenditures for Committee professional fees. *See* Budget.**

g. Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that provide for the priming of any secured lien without the consent of that lienholder. **The proposed Stipulation and Order do not provide for the priming of any secured lien without the consent of that lienholder.**

h. Local Rule 4001-2(a)(i)(H) requires disclosure of provisions that seek to affect the Court's power to consider equities of the case under section 552(b)(1) of the Bankruptcy Code. **The proposed Stipulation and Order do not provide for a waiver of the "equities of the case" exception.**

i. Bankruptcy Rule 4001(c)(1)(B)(ii) requires disclosure of the provision of adequate protection or priority for claims arising prior to the commencement of the case. **The proposed Stipulation and Order describe the specific forms of adequate protection provided to the Agent. *See* Stipulation ¶¶ 4-5.**

j. Bankruptcy Rule 4001(c)(1)(B)(iv) requires disclosure of provisions that constitute a waiver or modification of the automatic stay. **The proposed Stipulation and Order do not provide for a waiver or modification of the automatic stay.**

k. Bankruptcy Rule 4001(c)(1)(B)(vii) requires disclosure of provisions that waive or modify the applicability of non-bankruptcy law relating to the perfection of a lien on property of the estate. **The proposed Stipulation and Order include provisions that provide for the automatic perfection and validity of the adequate protection liens without the necessity of any further filing or recording under the laws of any jurisdiction. *See* Stipulation ¶ 4.**

## Relief Requested

7. By this Motion, the Debtors request that the Court (i) approve the Stipulation on a final basis and (ii) enter a final order authorizing use of Cash Collateral and granting adequate protection to the Agent. The Stipulation authorizes the Debtors to use Cash Collateral to pay their actual, necessary, post-petition expenses, in accordance with the Budget.

## Background

8. On May 31, 2023 (the "Petition Date"), each of the Debtors commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the chapter 11 cases.

9. Factual background regarding the Debtors, including the events precipitating their chapter 11 filings, is set forth in the *Declaration of Kyle Sturgeon in Support of Chapter 11 Petitions* [Docket No. 3] (the "First Day Declaration"), filed on the Petition Date and incorporated herein by reference.[3]

[3] Capitalized terms not otherwise defined herein shall be afforded the definition provided in the First Day Declaration.

**Prepetition Capital Structure and Indebtedness**

10. Prior to the Petition Date, Debtor Agspring, LLC ("Agspring"), as Borrower, entered into that certain Term Credit Agreement, dated as of December 14, 2015, as amended (the "Credit Agreement") by and between Agspring, the Lenders party thereto and U.S. Bank National Association ("USBNA"), as Administrative Agent (the "Term Loan").

11. Agspring Mississippi Region, LLC, Bayou Grain & Chemical Corporation, FO-ND LLC, Agspring, Agspring Logistics LLC and Agspring Idaho 1 LLC each guaranteed the repayment of the Term Loan (the "Guarantors"). Each of the Guarantors also entered into a Security Agreement pursuant to which it pledged its assets to secure the Term Loan obligations.

12. Agspring and the Lenders entered into that certain *Forbearance and Consent to Replacement of Shared Services Agreement* on June 8, 2021, that certain *First Amendment to Forbearance and Consent to AMR Facilities* on September 9, 2021, and that certain *Forbearance and Consent to Sales* on December 3, which together extended the initial forbearance period.

13. As of the Petition Date, the indebtedness outstanding under the Credit Agreement is not less than $76,416,194.56 (seventy-six million four hundred sixteen thousand one hundred ninety-four dollars and fifty-six cents) (the "Pre-Petition Indebtedness"), as asserted by the Agent.

**Need for the Continued Use of Cash Collateral**

14. The Debtors require the use of Cash Collateral to pay their actual, necessary, post-petition expenses, in accordance with the Budget. Access to sufficient working capital and liquidity through the use of Cash Collateral is necessary and vital to avoid serious and irreparable harm to the Debtors and to achieve an orderly wind down of the Debtors' businesses. Accordingly, the Debtors have a need for continued use of Cash Collateral and entry of the Order.

## Basis for Relief

**A. The Lenders Have Agreed to the Use of Cash Collateral**

15. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The Lenders and the Agent, on behalf of the Lenders, have consented to the Debtors' use of Cash Collateral in accordance with the terms of the Stipulation and the Budget, which is necessary for the Debtors to have sufficient liquidity during these cases to preserve the value of their assets and property. Accordingly, section 363(c)(2)(A) of the Bankruptcy Code is satisfied. This use of Cash Collateral is critical to permit the Debtors to pay expenditures set forth in the Budget.

**B. The Proposed Adequate Protection Provided to the Lenders Is Fair and Reasonable**

16. Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *See, e.g.*, *Resolution Trust Corp.* v. *Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d. Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis.").

17. The Supreme Court's landmark decision, *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626 (1988), provides that a secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing

the creditor's allowed secured claim. Under *Timbers*, therefore, where the "value of the collateral" is not diminishing by its use, sale, or lease, the creditor's interest is adequately protected. This conclusion flows directly from the equivalency of "value of such entity's interests" with "value of the collateral."

18. The Debtors' use of Cash Collateral is conditioned upon adequate protection being provided to the Lenders, as set forth in the Stipulation, which provides the Agent and Lenders with Replacement Liens on all assets of the Debtors and their estates, whether now existing or hereafter acquired, and the proceeds, income and profits and offspring of any of the foregoing, to secure the Debtors' use of Cash Collateral and to secure any diminution of value in the Collateral from and after the Petition Date.

19. The Debtors respectfully submit that the proposed adequate protection described herein is fair and reasonable and will compensate the Agent and the Lenders for any possible diminution in value of their respective prepetition liens in the Debtors' assets. Given the likely significant value that the Debtors stand to lose in the event that they are denied access to continued use of Cash Collateral, the proposed protections are wholly appropriate and justified.

## Notice

20. The Debtors will provide notice of this Motion to (collectively, the "Notice Parties"): (a) the United States Trustee, (b) all creditors known to the Debtors who may have liens against the Debtors' assets, (c) the United States Internal Revenue Service, (d) the twenty (20) largest unsecured creditors of the Debtors, and (e) all other creditors and parties in interest requesting notice under Bankruptcy Rule 2002(i). In light of the nature of the relief requested herein, and the limited number of creditors of the Debtors, the Debtors submit that no other or further notice is required.

## **Conclusion**

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request approval of the Stipulation and entry of the Order, granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 28, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436) 919
North Market Street, 17th Floor P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400 Email:
ljones@pszjlaw.com

and

**DENTONS US LLP**

Samuel R. Maizel (*Pro Hac Vice* Pending)
Tania M. Moyron (*Pro Hac Vice* Pending)
601 S. Figueroa Street #2500
Los Angeles, California 90017
Telephone: (213) 623-9300
Email: samuel.maizel@dentons.com
tania.moyron@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*