## **EXHIBIT A**

123728851\V-24

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **AGSPRING**, **LLC**, *et al.,*[1] | Case No. 23-10699-CTG |
| Debtors. | Jointly Administered |

**FINAL ORDER (1) APPROVING STIPULATION AUTHORIZING USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING THE AUTOMATIC STAY AND (4) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Agspring LLC ("Agspring") and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), seeking entry of an order approving the stipulation attached hereto as **Exhibit 1** (the "Stipulation") authorizing the Debtors' use of Cash Collateral and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is HEREBY ORDERED THAT:

1.    The Motion is GRANTED, and the Stipulation is approved on a final basis and has the force and effect of an order of this Court.

2.    Notwithstanding anything contrary in an applicable deposit account control agreement, the Debtors are authorized to use Cash Collateral to fund postpetition expenses.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

123728851\V-24

3.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

123728851\V-24

**EXHIBIT 1**

123728851\V-24

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **AGSPRING**, **LLC,** *et al.,*[1] | Case No. 23-10699-CTG |
| Debtor and Debtor In Possession. | Jointly Administered |

## STIPULATION AUTHORIZING
## <u>USE OF CASH COLLATERAL BY DEBTORS</u>

Agspring LLC and certain of its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") have advised the Court that they have reached an agreement with LVS II SPE XVIII LLC ("<u>LVS</u>") and HVS V LLC ("<u>HVS</u>" and, together with LVS, the "<u>Lenders</u>") and U.S. Bank National Association, as Administrative Agent (the "<u>Agent</u>") for Lenders, to allow the Debtors to use cash collateral pursuant to certain terms and conditions, in connection with which the Debtors, the Agent and the Lenders submit to the Court the following stipulations (this "<u>Stipulation</u>"):

A.      The Agent and the Lenders are secured creditors of the Debtors and their estates, holding valid, enforceable, perfected and unavoidable security interests and liens in, substantially all of the Debtors' assets (collectively, the "<u>Collateral</u>").[2]

B.      The Collateral secures indebtedness owed by the Debtors to the Agent and the Lenders under the Credit Agreement (as defined below) as of the date of the filing of the voluntary Chapter 11 petitions (the "<u>Petition Date</u>"). Such indebtedness arising under the Credit Agreement

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

[2] Escrow accounts are Excluded Accounts under the Security Agreement, but the Debtors' residual interests in escrow accounts are not Excluded Collateral and Schedule III to the Security Agreement specifically lists "None" with reference to Excluded Property.

1

is referred to as the "Pre-Petition Indebtedness." The Pre-Petition Indebtedness, as of the Petition Date, is not less than seventy-six million four hundred sixteen thousand one hundred ninety-four dollars and fifty-six cents ($76,416,194.56).

C.    The Pre-Petition Indebtedness arises from and is secured by, among other things, the following documents (all documents and instruments evidencing the Pre-Petition Indebtedness, including all amendments thereto, are referred to as the "Credit Agreement Documents"):

i.    that certain Term Credit Agreement dated as of December 14, 2015 (the "Credit Agreement"), among Agspring, as Borrower, the Agent, as Administrative Agent, and Lenders as parties thereto;

ii.    that certain Security Agreement dated as of December 14, 2015, by and between Agspring, as Borrower, the undersigned subsidiaries of Borrower (including the Debtors) (together with the Borrower each individually a "Grantor" and collectively the "Grantors") and U.S. Bank N.A. as Administrative Agent for the ratable benefit of the Secured Parties (defined therein);

iii.    that certain First Amendment to Term Credit Agreement, dated as of December 13, 2016;

iv.    that certain Amendment and Forbearance to Term Credit Agreement, dated as of July 20, 2017;

v.    that certain Second Amendment to Term Credit Agreement, dated as of September 22, 2018;

vi.    that certain Third Amendment to Term Credit Agreement, dated as of January 22, 2018;

vii.    that certain Fourth Amendment to Term Credit Agreement, dated as of June 1, 2018;

viii.    that certain Fifth Amendment to Term Credit Agreement, dated as of August 1, 2018;

ix.    that certain Sixth Amendment to Term Credit Agreement, dated as of January 31, 2019;

x.    that certain Seventh Amendment to Term Credit Agreement, dated as of March 15, 2019;

xi.    that certain Eighth Amendment to Term Credit Agreement, dated as of June 24, 2019;

xii.    that certain Ninth Amendment to Term Credit Agreement, dated as of November 5, 2020;

xiii.    that certain Tenth Amendment to Term Credit Agreement, dated as of January 29, 2021;

xiv.    that certain First Amendment to Forbearance to Term Credit Agreement, dated as of September 9, 2021;

xv.    that certain Secured Promissory Note in favor of HVS, dated as of September 9, 2021;

xvi.    that certain Secured Promissory Note in favor of LVS, dated as of September 9, 2021; and

xvii.    that certain Intercreditor Agreement, dated as of September 9, 2021.

D.    All proceeds of the Collateral, and all cash from the products, offspring, rents or profits from such Collateral, constitute cash collateral as defined in 11 U.S.C. § 363 (the "Cash Collateral"). The Debtors have no cash other than Cash Collateral.

E.    Without prejudice to the rights of any other party (but subject to the limitations described in paragraph 17), the Debtors hereby admit, stipulate and agree to the amount of the Pre-Petition Indebtedness as set forth in paragraph B above and forever waive and release any and all Claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against the Agent, the Lenders, the Pre-Petition Indebtedness, or the Agent's security interests in and liens upon the Collateral, whether arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law. The admissions, stipulations, agreements and releases set forth in paragraphs A through F of this Stipulation are based upon and consistent with

3

the Debtors' investigation of the Agent's and the Lenders' respective liens and claims and determination that, subject to the rights reserved in paragraph 17 of this Stipulation, the Debtors have no Claims (as defined in section 101(5) of the Bankruptcy Code), defenses or counterclaims with respect thereto.

F.      The Debtors are currently unable to secure sufficient unencumbered funds for purposes of paying their current operating expenses, other than from the Cash Collateral.

G.      The Agent and the Lenders will not be adequately protected, as defined in 11 U.S.C. § 361 and § 363, without conditioning the Debtors' use of the Cash Collateral on the observance of the provisions of this Stipulation as hereinafter set forth.

H.      The Debtors, the Agent and the Lenders have agreed to entry of an order approving this Stipulation to permit the Debtors to use the Cash Collateral, subject to the terms outlined below.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the Debtors, the Agent and Lenders as follows**:

1.      Subject to the terms and conditions set forth in this Stipulation, and upon entry of an order of the Bankruptcy Court approving this Stipulation, the Agent hereby authorizes and consents to the Debtors' use of Cash Collateral through and including the Expiration Date. Notwithstanding anything to the contrary in any Deposit Account Control Agreement, the Agent consents to closure of one or more of the Debtors' five (5) bank accounts at Bank of America (each, a "Bank Account") and transfer of any Cash Collateral currently held in the Bank Accounts to be closed to the Agspring Idaho 1 Bank Account ending in 2572 to be utilized by Debtors' in their Chapter 11 cases per the terms set forth in this Stipulation ("Main Account").

4

2.      From and after entry of the Order approving this Stipulation, the Debtors shall deposit any cash receipts into the Main Account which cash deposits shall be Cash Collateral subject to existing liens under the Credit Agreement Documents to the extent such deposits are proceeds of Collateral and, to the extent necessary, the adequate protection Replacement Liens to the extent such deposits constitute proceeds of postpetition assets or Avoidance Actions in either case subject to the Budget and the Carve-Out agreed to in this Stipulation and the Order approving this Stipulation.

3.      The Debtors are hereby authorized to use Cash Collateral of the Agent and the Lenders to pay their actual, necessary, post-petition expenses, only in accordance with the budget attached hereto as **Exhibit A** (the "Budget") and the terms of this Stipulation, *provided*, *however*, (i) that the Debtors shall be deemed in compliance with the Budget so long as the Total Disbursements (as such term is used in the Budget) during the most recently concluded four-week period do not exceed the aggregate amounts in the Budget for such four week period by more than 10%, (ii) that from and after the fourth weekly Budget period, the sum of the Debtors' actual Net Cash Flow (as that term is used in the Budget) for the most recently concluded four-week period shall not be more than 10% below the sum of Net Cash Flow reflected in the Budget for such four-week period, and (iii) that the Debtors may use such Cash Collateral for expenses and/or expense amounts that are not specified in the Budget so long as the Debtors obtain the prior written consent of the Agent, at the direction of the Lenders, for same. The Budget may only be modified or amended with the written approval of the Agent, at the direction of the Lenders. Notwithstanding the foregoing, no Cash Collateral shall be used for any fees, disbursements or expenses of any party, including the Debtors or any official committee appointed in these cases, or any professional employed by any party, in connection with the initiation or prosecution of any claims, causes of

5

action, adversary proceedings, or other litigation against the Agent or the Lenders (directly or indirectly), including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Agent's security interests in and liens upon the Collateral, or the Pre-Petition Indebtedness; *provided, however,* that an official committee of unsecured creditors appointed in the Debtors' cases shall be permitted to use Cash Collateral in an amount not to exceed $20,000 to investigate factual and legal matters relevant to the Debtors' admissions and releases contained in paragraphs A through F of this Stipulation.

4.      Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Agent, for the benefit of itself and the Lenders, is hereby granted replacement liens and security interests on all assets of the Debtors and their estates, whether now existing or hereafter acquired, and the proceeds, income and profits and offspring of any of the foregoing, to secure the Debtors' use of Cash Collateral, whether pursuant to this Stipulation and Order or otherwise, and to secure any diminution of value in the Collateral from and after the Petition Date (the "Replacement Liens"). The Replacement Liens (i) are subordinate only to the Carve-Out (as defined below) and any prior existing and validly perfected liens and security interests in the Debtors' assets, (ii) shall attach with the same rights and in the same order of priority that existed as to the Collateral under applicable non-bankruptcy law (including by agreement of the Agent) as of the Petition Date, (iii) are automatically perfected without any further action by the Agent, and (iv) exclude any and claims or causes of action arising under Chapter 5 of the Bankruptcy Code or applicable state fraudulent-transfer law and any proceeds thereof (together, "Avoidance Actions").

5.      Pursuant to section 507(b) of the Bankruptcy Code, as further adequate protection in addition to the liens and security interests granted to the Agent herein, and in the event that the

value of the post-petition replacement collateral proves insufficient to enable the Agent to collect the aggregate amount of the Cash Collateral used by the Debtors pursuant to this Stipulation and Order or otherwise, or in the event the value of the Collateral diminishes during this proceeding, the Agent and the Lenders shall each be granted an allowed superpriority claim against each of the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, except as such provision relates to Avoidance Actions and subject in all events to payment of the Carve-Out (the "Superpriority Claim").

6.      The Debtors are authorized and directed to pay the reasonable and documented invoiced feeds, costs and out-of-pocket expenses, whether incurred prepetition or postpetition of the Agent, Seward & Kissel LLP, as counsel to the Agent, and any local counsel engaged by or on behalf of the Agent, whether or not such amounts are contained in the Budget. The payment of all reasonable and documented invoiced professional fees and expenses provided for herein shall not be required to comply with the U.S. Trustee guidelines nor shall the applicable professionals be required to file fee applications with the Court with respect to any fees or expenses payable herein, and a all invoices therefor may be in summary form only (and shall not be required to contain individual time entries, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be provided to counsel to the Debtors, counsel to any committee, and the U.S. Trustee (the "Fee Notice Parties"); *provided, however*, that if no formal objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties

7

within ten calendar days after delivery of such invoices (the "Fee Objection Period"), then, upon the expiration of the Fee Objection Period, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any event, within 10 business days thereof. If a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested postpetition fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until such objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors. Notwithstanding the foregoing, the Debtors are authorized and directed to pay all adequate protection fees and expenses incurred under this paragraph on or prior to the Petition Date without the need for any applicable professional to first deliver a copy of its invoice or other supporting documentation.

7.      The Debtors shall cooperate with the Agent to execute such documents and instruments and do such other things as the Agent may reasonably request to evidence the perfection of the Replacement Liens, although such Replacement Liens are deemed perfected without the need for any additional action.

8.      The Debtors shall provide Agent and the Lenders with (i) a weekly budget-to-actual comparison due each Tuesday for the prior week, and (ii) any other financial information reasonably requested by the Agent or the Lenders, to be promptly provided by the Debtors following a written request for same. Item (i) herein shall be certified as true and correct by an officer of the Debtors.

9.      The Debtors shall timely deposit all post-petition taxes (whether federal, state or local) with the appropriate taxing authorities and timely file appropriate tax returns. The Debtors shall timely pay all U.S. Trustee fees.

10.     The Debtors shall maintain insurance with respect to all of the Collateral for all the purposes and in the amounts maintained by the Debtors in accordance with the requirements of the Credit Agreement Documents, as is currently in place. Such insurance shall contain a standard mortgage clause with the Agent named as loss payee, except that the Agent shall not be named as loss payee for any particular items of equipment as to which the Agent's liens are not superior to the liens of any other lien claimant.

11.     The provisions of this Stipulation shall be binding on and inure to the benefit of the assigns, representatives and successors of the parties hereto, including any Trustee appointed by the Court under Chapter 11 or Chapter 7 of the Bankruptcy Code, and all creditors and other parties in interest.

12.     The Debtors and their officers, directors and employees shall not take any action, nor shall they assist or participate directly or indirectly with any other party or party in interest in any actions which would knowingly contravene any provision of this Stipulation.

13.     The Debtors' right to use Cash Collateral shall expire, unless otherwise agreed by Lenders and the Agent, at the direction of the Lenders, in writing, upon the earliest of: (a) midnight on September 1, 2023, unless extended or modified by further order of the Court or the written agreement of the Agent and the Debtors, (b) appointment of a Chapter 11 trustee or an examiner with expanded powers, (c) conversion of any of the Debtors' cases to a Chapter 7 case, (d) the occurrence of a default (following the expiration of any applicable cure period) or termination event under any financing facility or order or stipulation approving the use of cash collateral in the bankruptcy cases of any of the Debtors, (e) the entry of any order granting relief under section 506(c) of the Bankruptcy Code with respect to any of the Collateral, (f) the filing by any of the Debtors, without the Lenders or the Agent's prior written consent, of any motion to obtain

financing under section 364 of the Bankruptcy Code from any person other than the Agent and the Lenders, or otherwise to grant a lien or security interest on any of the Collateral in favor of any person other than the Agent and the Lenders, (g) the filing by any of the Debtors, without the Lenders or the Agent's prior written consent, of any motion to sell any of the Collateral, or (h) the Debtors' failure to comply with any provision of this Stipulation. The earliest of (a) - (h) in this numbered paragraph is the "Expiration Date," provided that the Agent shall be required to provide written notice to the Debtors of any default under items (d) and (h) above and the Debtors shall have five (5) business days to cure any such default.

14.     All Cash Collateral, including Proceeds of Collateral, shall be deposited into one of Debtors' accounts at Bank of America, N.A. listed in paragraph 14 of this Stipulation (the "Cash Collateral Accounts"). Such Cash Collateral Accounts shall contain only Cash Collateral and shall not be commingled with any other funds. The Agent and the Lenders shall retain any and all rights to such Cash Collateral, including, without limitation, any rights of set-off.

15.     The Cash Collateral Accounts shall consist of the following deposit accounts: Agspring LLC (Account No. ending 7162), Agspring LLC (Account No. ending 2879), Agspring Idaho 1 (Account No. ending 2572), Agspring Idaho 1 Cash Collateral (Account No. ending 0357), and Agspring Idaho LLC (Account No. ending 7482).

16.     The adequate protection provided in this Stipulation is reasonable and designed to protect the interests of the Agent and the Lenders. Notwithstanding any other provision in this Stipulation, the grant of adequate protection to the Agent and the Lenders is without prejudice to the rights of those parties to seek different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such request.

17.     The Debtors' admissions and releases contained in paragraphs A through F of this Stipulation: (i) shall be binding upon the Debtors for all purposes; and (ii) shall be binding upon all other parties in interest, including any committee appointed in these cases, for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such party's right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than the date that is seventy-five (75) days after the date of entry of the Order approving this Stipulation (or, in the case of any official committee appointed within such 75-day period, sixty (60) days after the appointment of such committee (the "**Committee Challenge Deadline**")), (x) challenging the amount, validity, enforceability, priority or extent of the Pre-Petition Indebtedness or the Agent's security interests in and liens upon the Collateral, or (y) otherwise asserting any claims or causes of action against the Agent or the Lenders on behalf of the Debtors' estates, and (2) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly filed as of such dates or the Court does not rule in favor of the plaintiff in any such proceeding, then: (a) the Debtors' admissions and releases contained in paragraphs A through F of this Stipulation shall be binding on all parties in interest, including any committee; (b) the obligations of the Debtors under the Credit Agreement Documents shall constitute allowed claims for all purposes in this case, and any subsequent Chapter 7 case; (c) the Agent's security interests in and liens upon the Collateral shall be deemed to have been, as of Petition Date, legal, valid, binding, and perfected first-priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Pre-Petition Indebtedness shall not be subject to any other or further challenge by any committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any trustee or

11

other successor thereto. If any such adversary proceeding or contested matter is properly filed as of such dates, the Debtors' admissions and releases contained in paragraphs A through F of this Stipulation shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. Nothing contained in this Stipulation shall be deemed to grant standing to any committee or any other party to commence any such adversary proceeding or contested matter.

18.     The Replacement Liens, the Superpriority Claim, the Pre-Petition Indebtedness, and the Collateral shall be subject in all cases to payment of the following expenses (the following subparagraphs, collectively, the "Carve-Out"):

1)  unpaid post-petition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U. S C. § 1930;

2)  accrued but unpaid post-petition obligations of the Debtors, up to the amounts set forth in the Budget (prorated on a daily basis) through the Expiration Date, other than professional fees and expenses;

3)  post-petition fees and expenses of professionals of the Debtors and professionals of any official committee appointed in the Debtors' cases, which are retained by an order of the Court pursuant to sections 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "Professionals"), in an aggregate amount not to exceed $150,000, but only to the extent such fees and expenses (i) are incurred prior to the Expiration Date, (ii) are allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (iii) have not otherwise been paid by the Debtors and are not otherwise paid from retainers; and

4)  post-petition fees and expenses of the Professionals incurred after the Expiration Date in an aggregate amount not to exceed $50,000, to the extent such fees and expenses (i) are allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (ii) have not otherwise been paid by the Debtors and are not otherwise paid from retainers.

124489373\V-1

19.     In the event that any court modifies any of the provisions of this Stipulation following a final hearing on the Motion, (a) such modifications shall not affect the rights or priorities of the Agent or the Lenders arising under this Stipulation prior to such modification with respect to the Collateral, and (b) this Stipulation shall remain in full force and effect except as specifically amended or modified at any final hearing on the Motion.

20.     In the event of the sale of any of the Collateral pursuant to section 363 of the Bankruptcy Code or under a plan of reorganization or liquidation, the Agent (or its designee), on behalf of the Lenders, directly or through an acquisition vehicle, shall have the right (at an auction or otherwise) to credit-bid an amount equal to all or any portion of the Pre-Petition Indebtedness.

21.     Subject to entry of the Order approving this Stipulation, the Debtors, on behalf of themselves and their bankruptcy estates, waive any and all claims, rights and powers to surcharge the Agent, the Lenders, the Collateral and any other property or assets of the Debtors subject in any manner whatsoever to the liens and security interests of the Agent (including the Replacement Liens) pursuant to section 506(c) or section 105(a) of the Bankruptcy Code. The foregoing waiver shall be binding upon any trustee or examiner with expanded powers appointed for the estates of the Debtors or with respect to their property.

22.     Nothing in this Stipulation shall obligate the Agent or the Lenders with respect to any plan of reorganization or sale that may be proposed in these cases or shall constitute a waiver of any right or remedy of the Agent or the Lenders, including the right to seek relief from the automatic stay, to seek conversion or dismissal of these cases, or to oppose confirmation of any plan of reorganization or sale proposed by the Debtors. Nothing in this Stipulation shall constitute an agreement or admission by the Agent or the Lenders as to the value of the Collateral or the treatment of their claims under any plan of reorganization. The approval of the Budget does not

124489373\V-1

prohibit any party in interest from objecting to any specific request to allow a claim or other expense that is identified generally in the Budget.

23.     The Agent and the Lenders shall not be construed or deemed to be acting as a "responsible person" or an "owner and operator" or a person in "control" with respect to the governance, management or operation of the Debtors or their businesses (as such terms, or any similar terms, are used in the Internal Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, as each may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights and remedies granted to or conferred upon the Agent and the Lenders under this Stipulation, including such rights and remedies as may be exercisable by the Agent and the Lenders in connection with this Stipulation.

24.     Notwithstanding Fed. R. Bankr. P. 4001(a)(3) and 6004(h), this Stipulation shall be immediately effective and enforceable upon entry of an order approving this Stipulation.

(Signatures on Next Page)

**AGREED AND ACCEPTED**:

**HVS V LLC**

By: _____
Name:  Adam L. Gubner
Title:  Authorized Person

**LVS II SPE XVIII LLC**

By: _____
Name:  Adam L. Gubner
Title:  Authorized Person

**U.S. BANK NATIONAL ASSOCIATION, as Administrative Agent to Lenders**

By: _____
Name:
Title:

**DENTONS US LLP**

By: */s/ Tania M. Moyron*  _____
      Samuel R. Maizel (Pro Hac Vice Pending)
      Tania M. Moyron (Pro Hac Vice Pending)
      601 S. Figueroa Street #2500
      Los Angeles, CA 90017
      Telephone: (213) 623-9300
      Email: samuel.maizel@dentons.com
             tania.moyron@dentons.com

**PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

**AGREED AND ACCEPTED**:

**HVS V LLC**                                    **DENTONS US LLP**

By: _____          By: *_/s/ Tania M. Moyron_____*
Name:                                                        Samuel R. Maizel (Pro Hac Vice Pending)
Title:                                                         Tania M. Moyron (Pro Hac Vice Pending)
                                                                601 S. Figueroa Street #2500
                                                                Los Angeles, CA 90017
**LVS II SPE XVIII LLC**                            Telephone: (213) 623-9300
                                                                Email: samuel.maizel@dentons.com
By: _____                       tania.moyron@dentons.com
Name:
Title:                                           **PROPOSED COUNSEL FOR DEBTORS AND
                                                 DEBTORS IN POSSESSION**

**U.S. BANK NATIONAL ASSOCIATION, as Administrative
Agent to Lenders**
By: _____
Name: Alexandra Rhyne
Title: Vice President

**<u>EXHIBIT A</u>**

**Agspring LLC, et al**
**Cash Collateral Budget**
**Weekly Forecast**
*Actual $s*

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13 week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Week ending Friday* | Week Ending 6/9/2023 | Week Ending 6/16/2023 | Week Ending 6/23/2023 | Week Ending 6/30/2023 | Week Ending 7/7/2023 | Week Ending 7/14/2023 | Week Ending 7/21/2023 | Week Ending 7/28/2023 | Week Ending 8/4/2023 | Week Ending 8/11/2023 | Week Ending 8/18/2023 | Week Ending 8/25/2023 | Week Ending 9/1/2023 | |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Cash receipts from operations | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Cash receipts from asset sales | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | | | | | |
| Insurance | - | - | 2,000 | - | - | - | - | - | - | - | - | - | - | 2,000 |
| Property taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Contractors | - | - | 15,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 65,000 |
| Professional Fees [1] | - | - | - | - | - | 20,000 | - | - | - | - | 20,000 | - | 37,500 | 40,000 |
| Director Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 37,500 |
| US Trustee Fees | - | - | - | - | - | - | - | - | 250 | - | - | - | - | 250 |
| Interest & bank fees | - | - | - | - | 2,500 | - | - | - | 2,500 | - | - | - | 2,500 | 7,500 |
| Document retention | - | - | - | - | - | 60,000 | - | - | - | - | - | - | - | 60,000 |
| Other expenses | - | - | 2,000 | 5,000 | 5,000 | - | 2,500 | 500 | 500 | 500 | 500 | 500 | 500 | 17,500 |
| **Total Disbursements** | - | - | 19,000 | 10,000 | 12,500 | 85,000 | 7,500 | 5,500 | 8,250 | 5,500 | 25,500 | 5,500 | 45,500 | 229,750 |
| **Net Cash Flow** | - | - | (19,000) | (10,000) | (12,500) | (85,000) | (7,500) | (5,500) | (8,250) | (5,500) | (25,500) | (5,500) | (45,500) | (229,750) |
| **Beginning Cash** | 474,183 | 474,183 | 474,183 | 455,183 | 445,183 | 432,683 | 347,683 | 340,183 | 334,683 | 326,433 | 320,933 | 295,433 | 289,933 | 474,183 |
| Net Cash Flow | - | - | (19,000) | (10,000) | (12,500) | (85,000) | (7,500) | (5,500) | (8,250) | (5,500) | (25,500) | (5,500) | (45,500) | (229,750) |
| **Ending Cash** | 474,183 | 474,183 | 455,183 | 445,183 | 432,683 | 347,683 | 340,183 | 334,683 | 326,433 | 320,933 | 295,433 | 289,933 | 244,433 | 244,433 |

(1) Other professional fees are being accrued but the payment is not reflected in this budget

**Disclaimer**

The analyses, forecasts, and all other information ("Work Product") presented herein was prepared by Meru LLC ("MERU") pursuant to its engagement by Agspring, LLC and its subsidiaries and affiliates (collectively, the "Company") dated May 25, 2023. We have made certain inquiries and have obtained certain information in order to assist the Client in gaining an understanding of the Company's business performance, operations and liquidity. Much of the information contained herein was furnished to us by Company management and counsel, and we have not verified the accuracy or completeness of what we were furnished. Although the information contained herein is believed to be reliable, MERU makes no representation as to the accuracy or completeness of any information contained herein or otherwise provided by MERU. The Work Product contains estimates of values for illustrative purposes based on information from various sources. While MERU believes that these values are reasonable and appropriate for the purposes of the analysis, valuation work was not within the scope of our engagement, and we did not perform such work to confirm the values shown. Further, MERU makes no representations as to the adequacy or completeness of the procedures performed. This presentation may contain forward looking statements. You are cautioned not to place undue reliance on forward looking statements. While due care has been used in the preparation of forecast information, actual may results may vary in a materially positive or negative manner. Forecasts are subject to uncertainty outside the control of the Company and MERU. As a