IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING, LLC, *et al.*,[1] | Case No. 23-10699-CTG |
| Debtors. | Jointly Administered |

**DECLARATION OF KYLE STURGEON IN SUPPORT OF MOTION FOR ENTRY OF ORDER (1) APPROVING STIPULATION AUTHORIZING USE OF CASH COLLATERAL BY DEBTORS, (2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING THE AUTOMATIC STAY, AND (4) GRANTING RELATED RELIEF**

I, Kyle Sturgeon, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury that the following is true and correct:

1. I am a Managing Partner of MERU, LLC, a turnaround firm I co-founded in 2017.

2. I have been retained as Chief Restructuring Officer ("CRO") of Agspring LLC, Agspring Idaho 1 LLC; Agspring Idaho LLC; FO-ND LLC, dba Firebrand Artisan Mills; Agspring Logistics LLC, dba Agforce and Agspring Idaho 2 LLC. I previously acted as CRO of their affiliated entities known as the Big River Entities, comprised of Agspring Mississippi Region, LLC ("AMR"), Agspring MS 1, LLC ("Agspring MS 1"), Agspring MS, LLC ("Agspring MS"), Lake Providence Grain and Rice LLC ("LPGR"), and Bayou Grain & Chemical Corporation ("BGCC") (collectively the "Big River Entities").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

[2] The Big River Entities filed jointly administered chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on September 10, 2021, under Case No. 21-11238 (CTG) (the "Big River Chapter 11 Cases"). At the request of the Big River Entities, after successful resolution of all material disputes affecting their estates, the Bankruptcy Court entered the Order Dismissing Chapter 11 Cases on August 16, 2022. [D.I. 483] (the "Dismissal Order"). None of the Big River Entities are debtors in these Cases.

3. I submit this declaration (the "Declaration") in support of the concurrently filed *Motion for Entry of Order (I) Approving Stipulation Authorizing Use of Cash Collateral By Debtors, (2) Granting Adequate Protection, and (3) Granting Related Relief* (the "Motion").

**A.     Prepetition Capital Structure and Indebtedness**

4. Prior to the Petition Date, Agspring, as Borrower, entered into that certain Term Credit Agreement, dated as of December 14, 2015, as amended (the "Credit Agreement") by and between Agspring, the Lenders party thereto and U.S. Bank National Association ("USBNA"), as Administrative Agent (the "Term Loan").

5. Contemporaneously with execution of the Credit Agreement, Agspring as Borrower and its subsidiaries as grantors executed that certain Security Agreement dated as of December 14, 2015 by and between Agspring, as Borrower, the undersigned subsidiaries of Borrower (including the Debtors) (together with the Borrower each individually a "Grantor" and collectively the "Grantors") and U.S. Bank N.A. as Administrative Agent for the ratable benefit of the Secured Parties (defined therein) (the "Security Agreement");

6. Agspring Mississippi Region, LLC, Bayou Grain & Chemical Corporation, FO-ND LLC, Agspring, Agspring Logistics LLC and Agspring Idaho 1 LLC each guaranteed the repayment of the Term Loan (the "Guarantors"). Each of the Guarantors also entered into the Security Agreement pursuant to which it pledged its assets to secure the Term Loan obligations.

7. The Borrower under the Credit Agreement, including each of the Debtors, amended the Credit Agreement on multiple occasions, including; (i) that certain First Amendment to Term Credit Agreement, dated as of December 13, 2016; (ii) that certain Amendment and Forbearance to Term Credit Agreement, dated as of July 20, 2017; (iii) that certain Second Amendment to Term Credit Agreement, dated as of September 22, 2018; (iv) that certain Third Amendment to Term Credit Agreement, dated as of January 22, 2018; (v) that certain Fourth Amendment to Term Credit

Agreement, dated as of June 1, 2018; (vi) that certain Fifth Amendment to Term Credit Agreement, dated as of August 1, 2018; (vii) that certain Sixth Amendment to Term Credit Agreement, dated as of January 31, 2019; (viii); (ix) that certain Seventh Amendment to Term Credit Agreement, dated as of March 15, 2019; (x) that certain Eighth Amendment to Term Credit Agreement, dated as of June 24, 2019; (xi) that certain Ninth Amendment to Term Credit Agreement, dated as of November 5, 2020; (xii) that certain Tenth Amendment to Term Credit Agreement, dated as of January 29, 2021.

8. Agspring and the Lenders also entered into that certain *Forbearance and Consent to Replacement of Shared Services Agreement* on June 8, 2021, that certain *First Amendment to Forbearance and Consent to AMR Facilities* on September 9, 2021, and that certain *Forbearance and Consent to Sales* on December 3, which together extended the initial forbearance period.

9. As of the Petition Date, the indebtedness outstanding under the Credit Agreement is not less than $76,416,194.56 (seventy-six million four hundred sixteen thousand one hundred ninety-four dollars and fifty-six cents) (the "Pre-Petition Indebtedness"), as asserted by the Agent.

B.   **Need for the Continued Use of Cash Collateral**

10. The Debtors require the use of Cash Collateral[3] to pay their actual, necessary, post-petition expenses and propose to use Cash Collateral solely in accordance with the Budget agreed to by the Lenders and attached as "Exhibit A" to the Stipulation Authorizing Use of Cash Collateral By Debtors attached to the Motion as "Exhibit 1" (the "Stipulation"). Access to sufficient working capital and liquidity through the use of Cash Collateral is necessary and vital to avoid serious and irreparable harm to the Debtors and to achieve an orderly wind down of the Debtors' businesses. Accordingly, I submit that the Debtors have a need for continued use of Cash Collateral and entry of the Order.

---

[3] Capitalized terms not otherwise defined herein shall have the meaning afforded in the Motion.

**C.      Proposed Adequate Protection Is Fair and Reasonable**

11.     I believe that the proposed adequate protection, including the Debtors' required compliance with the Budget, transfer of cash from closed Bank Accounts to the Main Account, adequate protection Replacement Liens and Superpriority Claims each arising from any diminution of value of Collateral after the Petition Date, including but not limited to the Debtors' use of Cash Collateral, provided to the Agent and Lenders described in the Motion and the Stipulation is fair and reasonable and will compensate the Agent and the Lenders for any possible diminution in value of their Collateral, including Cash Collateral.  I also believe, given the likely significant value that the Debtors stand to lose in the event that they are denied access to continued use of Cash Collateral, the proposed protections in the Motion are wholly appropriate and justified.

Dated: July 28, 2023

*/s/ Kyle Sturgeon*
Kyle Sturgeon