# Exhibit 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING, LLC, *et al.*,[1] | Case No. 23-10699 (CTG) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 25** |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO (A) RETAIN MERU, LLC TO PROVIDE THE
DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL STAFF
AND (B) DESIGNATING KYLE STURGEON AS CHIEF RESTRUCTURING OFFICER
FOR THE DEBTORS, IN EACH CASE EFFECTIVE AS OF THE PETITION DATE,
AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors") or entry of an order (this "Order") (i) authorizing the Debtors to (a) retain and employ MERU, LLC ("MERU") to provide the Debtors with a CRO and certain Additional Staff to assist the CRO effective as of the Petition Date, on the terms set forth in the Engagement Letter attached hereto as **Exhibit 1**, and (b) designate Kyle Sturgeon as the Debtors' CRO, in each case effective as of the Petition Date, and (b) granting related relief, all as more fully set forth in the Motion; and upon the Sturgeon Declaration; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

DOCS_DE:243537.4 01213/002

States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to (i) retain and employ MERU and (ii) designate Kyle Sturgeon as Chief Restructuring Officer, in each case effective as of the Petition Date.

3. The terms of the Engagement Letter, including without limitation the compensation provisions and the indemnification provisions, as modified by the Motion and this Order, are reasonable terms and conditions of employment and are hereby approved.

4. The Debtors are hereby authorized to retain MERU to provide the Debtors with a CRO, and certain Additional Staff to assist the CRO, and to designate Kyle Sturgeon as the Debtors' CRO, effective as of the Petition Date, on the terms and conditions set forth in the Motion and the Engagement Letter, as modified by this Order, subject to the following terms, which apply notwithstanding anything in the Engagement Letter or the Motion or any exhibits related thereto to the contrary:

a) MERU and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned chapter 11 cases;

b) In the event the Debtors seek to have the Additional Staff assume executive officer positions that are different than the positions disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of the Additional Staff, (ii) adding new executive officers, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed;

c) MERU shall file with the Court with copies to the United States Trustee ("U.S. Trustee") a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed. MERU shall file with the Court, and provide notice to the U.S. Trustee, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 0.1-hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in half-hourly increments. Parties in interest shall have 14 days after the

   date each report is served to object to such report. All compensation shall be subject to review by the Court in the event an objection is filed. No payments shall be made to MERU until the objection period has passed, and in the event an objection is raised, no payment shall be made to MERU on account of the portion of such staffing report objected to until such objection is resolved.

d)  No principal, employee, or independent contractor of MERU and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned chapter 11 cases;

e)  Success fees, transaction fees, or other back-end fees, if any, shall be approved by the Court at the conclusion of the cases on a reasonable standard basis and shall not be pre-approved by entry of this Order. No success fee or back-end fee shall be sought upon conversion of the chapter 11 cases, dismissal of the chapter 11 cases for cause, or the appointment of a trustee;

f)  For a period of three years after the conclusion of the engagement, neither MERU nor any of its affiliates shall make any investments in the Debtors or the reorganized Debtors;

g)  MERU shall disclose any and all facts that may have a bearing on whether MERU, its affiliates, and/or any individuals working on the engagement have any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. The obligation to disclose identified in this subparagraph is a continuing obligation;

h)  The Debtors are permitted to indemnify those persons serving as executive officers (including the CRO) on the same terms as provided to the Debtors' other officers

and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' director and officer liability insurance policies;

i) There shall be no indemnification of MERU or its affiliates;

j) Notwithstanding the Engagement Letter:

   i. any controversy or claim with respect to, in connection with, arising out of, or in any way related to the Motion or the services provided by the CRO or Additional Staff to the Debtors as outlined in the Motion, including any matter involving a successor in interest or agent of any of the Debtors or of MERU, shall be brought in this Court;

   ii. MERU, the Debtors, and any and all of their successors and assigns, consent to the jurisdiction and venue of the Court as the exclusive forum for the resolution of MERU's and the Debtors' claims, causes of actions, or lawsuits described above (unless the Court does not have or retain jurisdiction over such claims or controversies);

   iii. MERU and the Debtors, and any and all successors and assigns, waive trial by jury, such waiver being informed and freely made; and

   iv. MERU and the Debtors will not raise or assert any defense based upon jurisdiction, venue, abstention, or otherwise to the jurisdiction and venue of this Court to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to the Motion or the services provided thereunder.

5. The limitation of liability set forth in paragraph 11 of the General Terms and Conditions of the Engagement Letter shall not apply.

6. Notice of the Motion as provided therein is deemed to be good and sufficient notice of such Motion, and the requirements of the Local Rules are satisfied by the contents of the Motion.

7. Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, or 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8. MERU shall use its reasonable efforts to avoid unnecessary duplication of services provided by any other professionals retained by the Debtors.

9. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

10. To the extent that there may be any inconsistency between the terms of the Motion, the Engagement Letter, and this Order, the terms of this Order shall govern.

11. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

# Exhibit 1 to Order - Engagement Letter

# MERU

May 25, 2023

Agspring, LLC, *et al*
5101 College Boulevard
Leawood, Kansas 66211
Attn: Eric Knight and Gerry Tywoniuk, Board of Managers,
Bruce Chapin, Manager

Dear Sirs:

This letter, together with the attached Schedule(s) and General Terms and Conditions, confirms and sets forth the terms and conditions of the engagement between Meru, LLC ("MERU") and Agspring, LLC, and representation of its directly or indirectly owned affiliates, Agspring Idaho 1 LLC; Agspring Idaho LLC; FO-ND LLC, dba Firebrand Artisan Mills; Agspring Logistics LLC, dba Agforce and Agspring Idaho 2 LLC. (each, individually and collectively, the "Company"), including the scope of the services to be performed and the nature and basis of compensation for those services. Upon execution of this letter by each of the parties below, this letter will constitute a binding agreement between the Company and MERU (the "Agreement").

**Description of Services**

(a)  Officers.  In connection with this engagement, MERU shall make available to the Company:

   (i)   Kyle Sturgeon as the Chief Restructuring Officer (the "CRO"); and

   (ii)  Upon the mutual agreement of MERU and the Company, MERU will provide additional employees of MERU and/or its affiliates ("Additional Staff") as required (collectively, with the CRO, the "Engagement Staff"), to assist the CRO in the execution of the duties set forth more fully herein.

(b)  Duties.  The Engagement Staff will provide the services listed below to the Company.

   (i)   The Engagement Staff shall lead the Company's assessment of restructuring options and strategic alternatives and provide advice and recommendations, as appropriate, to the Company in the evaluation and decisions regarding restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's assets;

   (ii)  Work with the Company's counsel to identify and evaluate the risks and mitigants associated with potential restructuring plans and strategic alternatives and provide advice and recommendations regarding the same;

# MERU

(iii) Assist the Company in preparing contingency plans, as requested;

(iv) If the Company elects to pursue a bankruptcy:

    (1) Provide support to the Company, as needed, in its bankruptcy proceedings;

    (2) Assist the Company's counsel in assembling due diligence materials and preparing necessary court filings;

    (3) As appropriate, serve as declarants for factual information to which the Engagement Staff can adequately testify;

    (4) Advise, assist, and/or manage, as appropriate, communications and/or negotiations with outside stakeholders, including lenders (and their advisors), customers, regulatory agencies, suppliers and employees; and

(v) Provide other services as requested or directed by the Manager or the Board of Managers or other Company personnel as authorized and agreed to by MERU.

(c) The Engagement Staff shall report to and operate at the request of the CRO and any officers as directed by the Company and, at the request of the Company, will make recommendations to and consult with the Company.

(d) The Engagement Staff will be employed by MERU and, while rendering services to the Company, will continue to work with other personnel at MERU in connection with unrelated matters that will not unduly interfere with the services rendered by the Engagement Staff pursuant to this Agreement. Except in the event of the Engagement Staff's gross negligence, willful misconduct or bad faith, MERU shall have no liability to the Company for any acts or omissions of the Engagement Staff related to the performance or non-performance of services at the direction of the Board of Managers or Manager and consistent with the requirements of the Engagement and this Agreement.

(e) In connection with the services to be provided hereunder, from time to time MERU may utilize the services of independent contractors as Engagement Staff subject to the below "Staffing & Compensation" provisions.

**Staffing & Compensation**

MERU fees are based on the hours spent by MERU staff at MERU's hourly rates, which are:

    Partners / Managing Partners    $700 – 850

    Sr. Directors / Principals    $575 – 700

2

# MERU

| | |
|---|---|
| Vice Presidents / Directors | $450 – 575 |
| Analysts / Associates | $300 – 450 |
| Senior Advisors | $400 – 850 |

Such rates shall be subject to adjustment annually at such time as MERU adjusts its rates generally. The Company agrees that staffing (other than the CRO) may be amended from time to time to add or delete staff. The above rates reflect MERU's hourly rates as of January 1, 2023.

In addition to payment of hourly rates, the Company shall reimburse MERU for its reasonable out-of-pocket documented expenses incurred in connection with this assignment, such as travel, lodging, duplicating, research, messenger and telephone charges.

All fees and expenses will be billed by written invoice on a weekly basis. Invoices are due upon receipt and payable within 10 business days of receipt.

The initial staffing and associated rates for this engagement are listed on Schedule 1.

**Retainer**

MERU is currently holding a retainer in the amount of $22,100 from the Company. The Company agrees that MERU may retain that amount and further that in order to commence this engagement, MERU requires an additional retainer of $125,000 prior to commencement of services. This retainer shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder. Please indicate your agreement by executing a copy of this Letter in the space provided below and returning it. A facsimile or scanned copy delivered via email are as acceptable as an original. We appreciate prompt receipt of an executed copy but will commence work based on the understandings contained in this letter prior to our receipt of your signature. Of course, please contact me if you have any questions about anything in this Letter or the Terms, or with respect to any aspect of our representation.

# MERU

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Meru, LLC

By: _____
      Kyle Sturgeon

Its: Managing Partner

Accepted and agreed:

**AGSPRING, LLC;**
*By its sole member Agspring Holdco, LLC*

**Board of Managers**

_____
Name: Gerry Tywoniuk

_____
Name: Eric Knight

By: _____
      Bruce Chapin

Manager for Agspring Idaho 1 LLC; Agspring Idaho LLC; FO-ND LLC, Agspring Logistics LLC, and Agspring Idaho 2 LLC

4

# MERU

### SCHEDULE 1

| Name | Title | Hourly Rate |
|---|---|---|
| Kyle Sturgeon | CRO | $850 |
| Adam Cohen | Sr. Director | $600 |

# MERU

**GENERAL TERMS & CONDITIONS**

1. Term

This Agreement will apply from the commencement of the services referred to in the Description of Services above and may be terminated with immediate effect by either party without cause by written notice to the other party. MERU normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for MERU to continue performance of the engagement, or other just cause or conflict of interest exists. On termination of the Agreement, any fees and expenses due to MERU shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination). The provisions of this Agreement that give the parties rights or obligations beyond its termination, including any indemnification obligations hereunder, shall survive and continue to bind the parties.

2. Information Provided by the Company

The Company shall use all reasonable efforts to: (i) provide MERU with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that MERU reasonably requests in connection with the services to be provided to the Company. MERU shall rely, without further independent verification, on the accuracy and completeness of all available information and information that is furnished by or on behalf of the Company and otherwise reviewed by MERU in connection with the services performed for the Company. The Company acknowledges and agrees that MERU is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. MERU is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Company to do so.

3. Forward Looking Statements

The Company understands that the services to be rendered by MERU may include the preparation of projections and other forward-looking statements, and the Company acknowledges that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, MERU will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

4. No Third-Party Beneficiary

The Company acknowledges that all advice (written or oral) provided by MERU to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board of Managers and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without MERU's prior written approval (which shall not be unreasonably withheld), except as required by law.

5. Services by Other Third Parties.

The Company shall be solely responsible for the work and fees of any other party (other than the Engagement Staff) engaged by the Company to provide services in connection with the engagement regardless of whether such party was introduced to the Company by MERU. Except as provided in this Agreement, MERU shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, MERU acknowledges that it is not authorized under this Agreement to engage any third party to provide services or advice to the Company, other than our agents or independent contractors engaged to provide Services, without the Company's prior written consent.

6

MERU

6. Conflicts

MERU is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because MERU and its affiliates comprise a consulting firm ("Firm") that serves many clients, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people that had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained. The MERU professionals providing services hereunder will not accept an engagement that directly conflicts with this engagement without the Company's prior written consent.

7. Confidentiality

MERU shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings, provided in the event of any such legal proceedings MERU will notify the Company so that the Company may seek protection of the information; or (iii) with the consent of the Company to the extent reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8. Audit Matters

The Company acknowledges and agrees that MERU and Engagement Personnel are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

9. Non-Solicitation

The Company, on behalf of itself and its subsidiaries and affiliates and any person that may acquire all or substantially all of its assets agrees that, for a period of two years following the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of MERU or any of its affiliates who worked on this engagement while engaged by MERU or its affiliates ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, MERU shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 2,000 hours. The Company acknowledges and agrees that this fee fairly represents the loss that MERU will suffer if the Company breaches this provision. The fee shall be due and payable at the time of the Solicited Person's acceptance of employment or engagement.

10. Indemnification and Other Matters

The Company shall indemnify, hold harmless and defend MERU and its affiliates and its and their partners, director, officers, employees, and agents (each, an "MERU Party" and collectively, the "MERU Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of MERU that is the subject of the Agreement, except in the event of MERU's gross negligence, willful misconduct or bad faith. The Company shall pay damages and reasonable expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential and material conflict of interest, the MERU Parties may engage separate counsel, acceptable to the Company, to represent them at the Company's expense.

In addition to the above indemnification, MERU employees serving as directors or officers of the Company or affiliates will receive the benefit of the most favorable indemnification provisions provided by the Company to its directors, officers and any equivalently placed employees, whether

7

under the Company's charter or by-laws, by contract, law or otherwise.

The Company shall specifically include and cover employees and agents serving as directors or officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees ("D&O Insurance"). Prior to MERU accepting any officer position, the Company shall, at the request of MERU, provide MERU a copy of its current D&O policy, a certificate(s) of insurance evidencing the policy is in full force and effect, and a copy of the signed Member and/or Board resolutions and any other documents as MERU may reasonably request evidencing the appointment and coverage of the indemnitees. The Company will maintain such D&O Insurance coverage for the period through which claims can be made against such persons. The Company disclaims a right to distribution from the D&O Insurance coverage with respect to such persons. If the Company is unable to include MERU employees and its agents under the Company's policy or does not have first dollar coverage acceptable to MERU in effect for at least $10 million (e.g., there are outstanding or threatened claims against officers and directors alleging prior acts that may give rise to a claim), MERU may, at its option, attempt to purchase a separate D&O Insurance policy that will cover MERU employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. If MERU is unable or unwilling to purchase such D&O Insurance, then MERU reserves the right to terminate the Agreement.

The Company's indemnification obligations in this section shall be primary to, and without allocation against, any similar indemnification obligations that MERU may offer to its personnel generally, and the Company's D&O Insurance coverage for the indemnitees shall be specifically primary to, and without allocation against, any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by MERU or otherwise).

MERU is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against MERU, whether or not MERU is instrumental in procuring such third-party product or service.

MERU acknowledges that, during the pendency of any Bankruptcy Court approved retention, these indemnification provisions are subject to modification as may be stated within the Bankruptcy Court's retention order.

11. Limit of Liability

THE MERU PARTIES SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS AGAINST OR ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR INTENTIONAL MISCONDUCT OF MERU. THE MERU PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE MERU PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAYABLE TO MERU FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the MERU Parties' aggregate liability for all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by MERU pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the MERU Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the MERU Parties pursuant to this Agreement exceed the Liability Cap.

12. Miscellaneous

8

# MERU

This Agreement shall be construed in accordance with and governed by the laws of the State of Georgia without giving effect to any choice or conflict of law provision or rule. This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof. This Agreement supersedes all prior or contemporaneous agreements, arrangements, conditions, negotiations and understandings between the parties relating to the subject matter hereof. No waiver of any term, provision or condition of this Agreement shall be deemed to be, or shall be or shall constitute, a waiver of any other term, provision or condition herein, whether or not similar. No such waiver shall be binding unless in writing and signed by the waiving party. No supplement, modification or amendment of any term, provision or condition of this Agreement shall be binding or enforceable unless evidenced in writing executed by the parties hereto. If any provision of this Agreement is declared invalid by any tribunal, then such provision shall be deemed automatically adjusted to the minimum extent necessary to conform to the requirements for validity as declared at such time and, as so adjusted, shall be deemed a provision of this Agreement as though originally included herein. In the event the provision invalidated is of such a nature that it cannot be so adjusted, the provision shall be deemed deleted from this Agreement as though such provision had never been included herein. In either case, the remaining provisions of this Agreement shall remain in effect. This Agreement may be executed in counterparts, each of which shall be deemed an original and which together shall constitute one and the same instrument. MERU AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

This Agreement shall be binding upon MERU and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of MERU's or the Company's respective businesses and/or assets. This Agreement may not be amended or modified except in writing executed by the Company and MERU. Notwithstanding anything herein to the contrary, MERU may reference or list the Company's name and/or logo and/or a general description of the services in MERU's marketing materials, including, without limitation, on MERU's website.