## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING, LLC, *et al.*,[1] | Case No. 23-10699 (CTG) |
| Debtors. | (Jointly Administered) |

## SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT PLAN OF LIQUIDATION OF AGSPRING, LLC AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Laura Davis Jones (DE Bar No. 2436)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email:  ljones@pszjlaw.com

Samuel R. Maizel (*pro hac vice*)
Tania M. Moyron (*pro hac vice*)
**DENTONS US LLP**
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email:  samuel.maizel@dentons.com
            tania.moyron@dentons.com

*Co-Counsel to Debtors and Debtors in Possession*

Dated: December 3, 2024

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262).  The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

**ARTICLE I.** EXECUTIVE SUMMARY .................................................6

  A.    AN OVERVIEW OF THE CHAPTER 11 PROCESS.................7

  B.    OVERVIEW OF THE PLAN.............................................7

  C.    SOLICITATION, VOTING AND CONFIRMATION MATTERS ..........10

      **1.**  Important Dates and Deadlines.........................................10

      **2.**  Who May Vote on the Plan..............................................10

      **3.**  Summary of Solicitation Package and Voting Instructions.............11

      **4.**  Confirmation of the Plan ...............................................11

      **5.**  Confirming and Consummating the Plan .......................12

      **6.**  Rules of Interpretation; Computation of Time .................12

      **7.**  Distribution of Confirmation Hearing Notice to Holders of Claims in Non-Voting Classes and Holders of Disputed Claims................................................12

      **8.**  Filing of the Plan Supplement .........................................13

      **9.**  The Confirmation Hearing..............................................13

      **10.**  The Deadline for Objecting to Confirmation of the Plan .............13

      **11.**  Effect of Confirmation of the Plan .................................13

  D.    RISK FACTORS ..........................................................14

**ARTICLE II.** DEFINED TERMS..........................................................14

**ARTICLE III.** BACKGROUND TO THE CHAPTER 11 CASES .................24

  A.    DEBTORS' BUSINESS AND CERTAIN HISTORICAL EVENTS ...........24

      1.  Background.............................................................24

      2.  Relevant Litigations...................................................25

      3.  The MIPCA and the Escrow Agreement .........................25

  B.    DEBTORS' ORGANIZATIONAL STRUCTURE....................26

  C.    DEBT STRUCTURE......................................................26

  D.    EVENTS LEADING TO THE PETITION DATE ..................26

  E.    DEVELOPMENTS IN THE DEBTORS' CHAPTER 11 CASES ............27

      1.  Cash Collateral and Other Motions/Applications.................27

      2.  Schedules and Statements of Financial Affairs ..................27

      3.  Claims Bar Dates .....................................................27

**ARTICLE IV.** SUMMARY OF PLAN AND CONFIRMATION PROCEDURES ...........28

  A.    ADMINISTRATIVE AND PRIORITY TAX CLAIMS............28

      **1.**  Administrative Expense Claims ....................................28

      **2.**  Priority Tax Claims....................................................29

  B.    CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS..................29

      **1.**  Summary...............................................................29

      **2.**  Separate Classification of Certain Claims ......................30

      **3.**  **Elimination of Vacant Classes** .................................30

      **4.**  Voting; Presumptions; Solicitation in Good Faith.............30

      **5.**  **Cramdown** ...........................................................30

      **6.**  Classification and Treatment of Claims and Equity Interests ........30

      **7.**  Special Provision Governing Unimpaired Claims...........33

      **8.**  Subordinated Claims..................................................33

C.    ACCEPTANCE OR REJECTION OF THE PLAN ...................................34
    1.    Presumed Acceptance of Plan .........................................................34
    2.    Presumed Rejection of Plan ............................................................34
    3.    Voting Classes ..................................................................................34
    4.    Acceptance by Impaired Classes of Claims......................................34
    5.    Confirmation Pursuant to Section 1129(B) of the
        Bankruptcy Code ............................................................................34
D.    MEANS FOR IMPLEMENTATION OF THE PLAN ..............................34
    1.    Continued Existence of Debtors and Revesting of Assets...............34
    2.    Corporate Action .............................................................................35
    3.    Limited Substantive Consolidation..................................................36
    4.    Plan Administrator...........................................................................36
    5.    Source of Funding; Funding and Consideration Provided by
        the Prepetition Term Loan Lenders ................................................37
    6.    Causes of Action Retained...............................................................37
    7.    Dissolution of Debtors; Final Decree .............................................38
    8.    Treatment of Vacant Classes ...........................................................38
E.    TREATMENT OF EXECUTORY CONTRACTS AND
    UNEXPIRED LEASES ..........................................................................38
    1.    Assumption and Rejection of Executory Contracts and
        Unexpired Leases.............................................................................38
    2.    Claims On Account of the Rejection of Executory
        Contracts or Unexpired Leases .......................................................39
    3.    Preservation of D&O Liability Insurance Policies ........................39
F.    DEBTOR RELEASE AND RELATED PROVISIONS ...........................40
    1.    General...............................................................................................40
    2.    Release..............................................................................................40
G.    THIRD PARTY RELEASE, EXCULPATION & INJUNCTION..............41
    1.    Third Party Release...........................................................................41
    2.    Discharge of Claims ........................................................................41
    3.    Exculpation ......................................................................................41
    4.    Injunction ........................................................................................42
H.    PROVISIONS GOVERNING DISTRIBUTIONS....................................42
    1.    Dates of Distributions ......................................................................42
    2.    Distribution Agent ...........................................................................42
    3.    Cash Distributions ...........................................................................43
    4.    De Minimis Distributions; Rounding of Payments .........................43
    5.    Distributions on Account of Claims Allowed After the
        Effective Date ..................................................................................43
    6.    General Distribution Procedures......................................................43
    7.    Address for Delivery of Distributions .............................................43
    8.    Undeliverable Distributions and Unclaimed Property....................43
    9.    Withholding Taxes...........................................................................44
    10.    Setoffs .............................................................................................44
    11.    Lost, Stolen, Mutilated or Destroyed Securities.............................45
I.    PROCEDURES FOR RESOLVING CONTINGENT,
    UNLIQUIDATED AND DISPUTED CLAIMS ........................................45

|  |  | 1. | Disputed Claims | 45 |
|  |  | 2. | Procedures Regarding Disputed Claims | 45 |
|  |  | 3. | Allowance and Estimation of Claims | 45 |
|  | J. | | CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN | 46 |
|  |  | 1. | Conditions Precedent | 46 |
|  |  | 2. | Waiver of Conditions | 47 |
|  |  | 3. | Substantial Consummation | 47 |
|  |  | 4. | Effect of Non-Occurrence of Conditions | 47 |
|  | K. | | BINDING NATURE OF PLAN | 47 |
|  | L. | | RETENTION OF JURISDICTION | 47 |
|  | M. | | MISCELLANEOUS PROVISIONS | 49 |
|  |  | 1. | Payment of Statutory Fees | 49 |
|  |  | 2. | Modification of the Plan | 49 |
|  |  | 3. | Revocation of the Plan | 49 |
|  |  | 4. | Entire Agreement | 50 |
|  |  | 5. | Successors and Assigns | 50 |
|  |  | 6. | Reservation of Rights | 50 |
|  |  | 7. | Further Assurances | 50 |
|  |  | 8. | Nonseverability | 50 |
|  |  | 9. | Service of Documents | 51 |
|  |  | 10. | Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code | 51 |
|  |  | 11. | Exhibits / Plan Supplement | 51 |
|  |  | 12. | Governing Law | 52 |
|  |  | 13. | Tax Reporting and Compliance | 52 |
|  |  | 14. | Controlling Document | 52 |
|  | N. | | CONFIRMATION PROCEDURES | 52 |
|  |  | 1. | Confirmation Hearing | 52 |
|  |  | 2. | Filing Objections to the Plan | 52 |
|  | O. | | STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN | 53 |
|  |  | 1. | Best Interests of Creditors Test/Liquidation Analysis | 54 |
|  |  | 2. | Feasibility | 55 |
|  |  | 3. | Acceptance by Impaired Classes | 55 |
|  |  | 4. | Confirmation Without Acceptance by Impaired Classes | 56 |
|  |  | 5. | No Unfair Discrimination | 56 |
|  |  | 6. | Fair and Equitable Test | 57 |
|  | P. | | CONSUMMATION OF THE PLAN | 57 |
| ARTICLE V. | | | RISK FACTORS | 58 |
|  | A. | | CERTAIN BANKRUPTCY LAW CONSIDERATIONS | 58 |
|  |  | 1. | Parties in Interest May Object to the Debtors' Classification of Claims and Equity Interests. | 58 |
|  |  | 2. | The Conditions Precedent to the Effective Date of the Plan May Not Occur. | 58 |
|  |  | 3. | The Debtors May Fail to Satisfy the Vote Requirement. | 58 |

    **4.**    The Debtors May Not Be Able to Secure Confirmation of the Plan. ...................................................................................58

    **5.**    Non-Consensual Confirmation of the Plan May Be Necessary. ..........................................................................................59

    **6.**    The Debtors May Object to the Amount or Classification of a Claim. ...........................................................................................59

    **7.**    The Chapter 11 Cases May Be Converted to Cases under Chapter 7 of the Bankruptcy Code ...................................................60

    **8.**    Releases, Injunctions, and Exculpations Provisions May Not Be Approved .........................................................................60

  **B.**    DISCLAIMERS ......................................................................................60

    **1.**    The Information Contained Herein is for Soliciting Votes Only. ...............................................................................................60

    **2.**    No Legal or Tax Advice is Provided to You by This Combined Plan and Disclosure Statement. .................................60

    **3.**    No Admissions Are Made by This Combined Plan and Disclosure Statement. ......................................................................60

    **4.**    No Reliance Should Be Placed on Any Failure to Identify Litigation Claims or Projected Objections. ....................................60

    **5.**    Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Recover Transfers and Assets. ......................61

    **6.**    The Information Used Herein was Provided by the Debtors and was Relied Upon by the Debtors' Advisors.............................61

    **7.**    The Potential Exists for Inaccuracies and the Debtors Have No Duty to Update..............................................................61

    **8.**    No Representations Made Outside the Disclosure Statement Are Authorized. .....................................................................61

**ARTICLE VI.** ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN .......................................................................61

  **A.**    LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE ...................................................................................................61

  **B.**    FILING OF AN ALTERNATIVE CHAPTER PLAN .............................62

**ARTICLE VII.** SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .......................................................................62

  **A.**    FEDERAL INCOME TAX CONSEQUENCES TO CERTAIN CREDITORS ..........................................................................................62

    **1.**    In General .....................................................................................62

    **2.**    Non-United States Persons ...........................................................63

  **B.**    INFORMATION REPORTING AND BACKUP WITHHOLDING .........63

**ARTICLE VIII.** RECOMMENDATION ..........................................................................64

Agspring, LLC ("Agspring") and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby propose the following combined disclosure statement and plan of liquidation pursuant to sections 1121(a) and 1125(b) of title 11 of the United States Code (the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion hereof, the "Plan," as may be modified and/or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement").[2]  This Disclosure Statement has been conditionally approved by the Bankruptcy Court as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code.  The Debtors are soliciting your vote to accept or reject the Plan.

**ONLY HOLDERS OF PREPETITION TERM LOAN SECURED CLAIMS (CLASS 3), NGP UNSECURED CLAIMS (CLASS 4) AND GENERAL UNSECURED CLAIMS (CLASS 5) ARE ENTITLED TO VOTE ON THE PLAN AND ARE BEING SOLICITED UNDER THIS DISCLOSURE STATEMENT.**

| |
|---|
| **THE VOTING DEADLINE IS 4:00 P.M. PREVAILING EASTERN TIME ON JULY 8, 2024 (UNLESS THE DEBTORS EXTEND THE VOTING DEADLINE).** |
| **IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT FOR YOU TO READ** |

---

[2]  Capitalized terms used in the Combined Plan and Disclosure Statement and not otherwise defined have the meanings ascribed to such terms in Article II hereof.

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT TO HOLDERS OF CLAIMS FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT OR REJECT THE DEBTORS' PLAN. NOTHING IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE V HEREOF.

**THE PLAN IS PROPOSED BY THE DEBTORS. THE DEBTORS URGE ALL CREDITORS ENTITLED TO VOTE ON THE PLAN TO TIMELY VOTE TO ACCEPT THE PLAN.**

THIS COMBINED PLAN AND DISCLOSURE STATEMENT CONTAINS "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF FEDERAL SECURITIES LAWS. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE DEBTORS CONSIDER ALL STATEMENTS REGARDING ANTICIPATED OR FUTURE MATTERS TO BE FORWARD-LOOKING STATEMENTS. FORWARD-LOOKING STATEMENTS MAY INCLUDE STATEMENTS ABOUT:

- FINANCIAL CONDITION, REVENUES, CASH FLOWS, AND EXPENSES;

- LEVELS OF INDEBTEDNESS, LIQUIDITY, AND COMPLIANCE WITH APPLICABLE COVENANTS;

- FINANCIAL STRATEGY, BUDGET, PROJECTIONS, AND OPERATING RESULTS;

- VARIATION FROM PROJECTED FINANCIAL DATA; AND

- AVAILABILITY AND TERMS OF CAPITAL.

STATEMENTS CONCERNING THESE AND OTHER MATTERS ARE NOT GUARANTEES OF THE DEBTORS' FUTURE PERFORMANCE. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE DEBTORS' ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE DIFFERENT FROM THOSE THEY MAY PROJECT, AND THE DEBTORS UNDERTAKE NO OBLIGATION TO UPDATE THE PROJECTIONS MADE HEREIN. THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS. THE LIQUIDATION ANALYSIS, PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE VALUE OF THE PROPERTY DISTRIBUTED TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED.

THEREFORE, ANY ANALYSES, ESTIMATES, OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT.  THE DEBTORS URGE EACH HOLDER OF A CLAIM TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHER, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN OR A GUARANTEE BY THE BANKRUPTCY COURT OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES, AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE OR THAT MAY BE FILED LATER WITH THE PLAN SUPPLEMENT.  ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.  IN THE EVENT OF ANY CONFLICT, INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN AND CONTROL FOR ALL PURPOSES. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS.

IN PREPARING THIS DISCLOSURE STATEMENT, THE DEBTORS RELIED ON FINANCIAL DATA DERIVED FROM THEIR BOOKS AND RECORDS AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTORS' BUSINESS. THE DEBTORS' MANAGEMENT HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THE DEBTORS HAVE USED THEIR REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED (UNLESS OTHERWISE EXPRESSLY PROVIDED HEREIN) AND NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTORS' BUSINESS AND THEIR FUTURE FINANCIAL RESULTS.  THE DEBTORS EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.

THIS COMBINED PLAN AND DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER.   RATHER, THIS DISCLOSURE STATEMENT SHALL CONSTITUTE A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO POTENTIAL CONTESTED MATTERS,

POTENTIAL ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. EXCEPT AS PROVIDED UNDER THE PLAN, THE DEBTORS MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND CAUSES OF ACTION AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS ON THE TERMS SPECIFIED IN THE PLAN.

THE DEBTORS ARE GENERALLY MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF WHERE FEASIBLE, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS SENT. INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION, MODIFICATION, OR AMENDMENT. THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED DISCLOSURE STATEMENT FROM TIME TO TIME.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTORS AND THEIR OWN ANALYSES OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. IMPORTANTLY, PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD REVIEW THE PLAN IN ITS ENTIRETY AND CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN ARTICLE V HEREOF, "RISK FACTORS."

THE DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 P.M. (EASTERN TIME) ON <u>JULY 8, 2024</u>, UNLESS EXTENDED BY THE DEBTORS IN THEIR DISCRETION.[3]

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST, AND HOLDERS OF EQUITY INTERESTS IN (INCLUDING THOSE HOLDERS OF

---

[3] NGP's deadline to accept or reject the Plan was extended by the Debtors.

**CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN, WHO VOTE TO REJECT THE PLAN, OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN), THE DEBTORS WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.**

**THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED HEREIN AND SET FORTH IN ARTICLE IV.J HEREOF. THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED, OR IF CONFIRMED, THAT THE CONDITIONS REQUIRED TO BE SATISFIED FOR THE PLAN TO BECOME EFFECTIVE WILL BE SATISFIED (OR WAIVED).**

**ALL EXHIBITS TO THIS COMBINED PLAN AND DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.**

## <u>EXHIBITS</u>

EXHIBIT A – Organizational Chart of the Debtors

EXHIBIT B – Liquidation / Plan Recovery Analysis

THE DEBTORS HEREBY ADOPT AND INCORPORATE EACH EXHIBIT ATTACHED TO THIS COMBINED PLAN AND DISCLOSURE STATEMENT BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN.

# ARTICLE I.
## EXECUTIVE SUMMARY

**Only Holders of Prepetition Term Loan Secured Claims (Class 3), NGP Unsecured Claims (Class 4) and General Unsecured Claims (Class 5) are entitled to vote on the Plan and are being solicited under this Disclosure Statement.**

This Executive Summary is being provided as an overview of the material items addressed in this Combined Plan and Disclosure Statement and should not be relied upon for a comprehensive discussion of the Plan. Prior to soliciting votes on a proposed plan of reorganization, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance or rejection of the plan of reorganization. As such, this Disclosure Statement is being submitted in accordance with the requirements of section 1125 of the Bankruptcy Code. This Disclosure Statement includes, without limitation, information about:

- the Debtors' business and financial history;

- the significant events that have occurred to date;

- the solicitation procedures for voting on the Plan;

- the Confirmation process and the voting procedures that Holders of Claims who are entitled to vote on the Plan must follow for their votes to be counted; and

- the terms and provisions of the Plan, including certain effects of Confirmation of the Plan, certain risk factors relating to the Debtors and the Plan, and the manner in which distributions will be made under the Plan.

If the Plan cannot be confirmed for any reason, then (a) the Plan may be revoked by the Debtors or (b) the Debtors may seek to convert the Chapter 11 Cases to a chapter 7 liquidation. The Debtors intend to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims that is Impaired as set forth in Article IV.B hereof.

The Plan is a plan of liquidation which, among other things, provides that the Prepetition Term Loan Lenders will provide sufficient Cash to (i) pay and satisfy in full all Allowed Administrative Claims, Priority Tax Claims, Other Priority Claims and, if applicable, Other Secured Claims (unless otherwise agreed to by the claimant and the Debtors or Plan Administrator), and (ii) make a distribution to holders of General Unsecured Claims (which excludes the NGP Unsecured Claims) on account of any Allowed General Unsecured Claims. The Debtors and Prepetition Term Loan Lenders anticipate that the Plan will be funded through use of Escrow Funds (defined herein) that will be distributed pursuant to a Global Settlement (further defined and discussed herein). The Global Settlement, among other things, (i) satisfies the claims of NGP X US Holdings LP (together with its affiliates, "NGP"), (ii) resolves pending litigation between the parties and disputes related to the Escrow Funds, and (iii) provides for mutual releases between the parties. The Debtors will seek approval of the Global Settlement pursuant to a 9019 motion in conjunction with Plan confirmation.

Under the Plan, a Plan Administrator will administer the Cash and make the applicable Distributions to creditors and other parties consistent with the Plan and will liquidate or otherwise dispose of the remaining assets of the Estates, to the extent such assets were not previously monetized to Cash or otherwise transferred or disposed of by the Debtors prior to the Effective

Date. If confirmed and consummated, the Plan will facilitate the orderly wind down of the Debtors' remaining business and assets, including, as applicable, the pursuit of any remaining causes of action and distribution of any proceeds therefrom according to the Plan. The Debtors believe that any alternative to Confirmation of the Plan, such as a chapter 7 liquidation or other attempts by another party in interest to file a plan, would not include outside funding like the Plan Funding and distribution to Class 5 Fund under the Plan and would result in significant delays, litigation, and additional costs, and ultimately would diminish the recovery for creditors. **Accordingly, the Debtors strongly recommend that all Holders of Prepetition Term Loan Secured Claims (Class 3), NGP Unsecured Claims (Class 4) and General Unsecured Claims (Class 5) vote to accept the Plan.**

## A.    AN OVERVIEW OF THE CHAPTER 11 PROCESS

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11 of the Bankruptcy Code, a debtor may remain in possession of its assets and business and attempt to reorganize or liquidate its business for the benefit of such debtor, its creditors and other parties in interest.

The commencement of a chapter 11 case creates an estate comprised of all of the legal and equitable interests of a debtor in property as of the date that the bankruptcy petition is filed. Sections 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession," unless the bankruptcy court orders the appointment of a trustee. The filing of a bankruptcy petition also triggers the automatic stay provisions of section 362 of the Bankruptcy Code which provide, among other things, for an automatic stay of all attempts to collect prepetition claims from a debtor or otherwise interfere with its property or business. Except as otherwise ordered by the bankruptcy court, the automatic stay generally remains in full force and effect until the effective date of a plan of reorganization, following confirmation of such plan of reorganization.

The Bankruptcy Code provides that, upon commencement of a chapter 11 bankruptcy case, the Office of the United States Trustee may appoint a committee of unsecured creditors and may, in its discretion, appoint additional committees of creditors or of equity interest holders if necessary to assure adequate representation.

Upon the commencement of a chapter 11 bankruptcy case, all creditors and equity interest holders have standing to be heard on any issue in the chapter 11 proceedings pursuant to section 1109(b) of the Bankruptcy Code.

The formulation and confirmation of a plan is the principal objective of a chapter 11 case. The plan sets forth the means of satisfying the claims against and equity interests in the debtor. A bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or an equity interest in the debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code to the terms and conditions of the confirmed plan, whether or not such Entity voted on the plan or affirmatively voted to reject the plan.

## B.    OVERVIEW OF THE PLAN

The Plan is a joint liquidating plan, which provides for a Plan Administrator to make distributions to creditors pursuant to the Plan, using the Plan Funding (to be provided by the Prepetition Term Loan Lenders), and to liquidate or otherwise dispose of the remaining assets of the Debtors and Estates in accordance with the Plan (to the extent such assets were not previously monetized to Cash or otherwise transferred by the Debtors prior to the Effective Date). The Post-

Effective-Date Debtors, acting through the Plan Administrator, shall attempt to liquidate, diligently and for the highest value reasonably possible, the remaining Distributable Assets. The Post-Effective-Date Debtors may liquidate or abandon the Distributable Assets, including Causes of Action, based on the Post-Effective-Date Debtors' business judgment, without the need for further order of the Bankruptcy Court. The Plan Administrator will distribute all net proceeds to creditors, including payment of all Allowed Prepetition Term Loan Secured Claims, Administrative Expense Claims, Priority Tax Claims, Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (subject to the Debtors' election of alternative treatments under the Plan and solely to extent of the value of the collateral which secured such Claims), generally in accordance with the priority scheme under the Bankruptcy Code, subject to the terms of the Plan, including the provision of the Class 5 Fund, for the benefit of general unsecured creditors.  On or as soon as reasonably practicable after the Effective Date (after the applicable claim has been Allowed), general unsecured creditors in Class 5 will receive a Pro Rata share of the Class 5 Fund. In a Chapter 7 proceeding, without any Plan Funding or the establishment of the Class 5 Fund, general unsecured creditors would receive no distribution on account of their claims.

As to NGP Unsecured Claims (Class 4), on or after the Effective Date in accordance with the terms of the Plan, each Allowed Class 4 Claim shall be satisfied in accordance with the terms of the Global Settlement and the Global Settlement Approval Order.

As to the Prepetition Term Loan Secured Claims (in Class 3), on or after the Effective Date in accordance with the terms of the Plan, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, and release of such Allowed Class 3 Claim, a portion of the Escrow Funds payable pursuant to the Global Settlement, the Cash proceeds of the Debtors' Distributable Assets from and after the Effective Date, net of the amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Allowed Claims, Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims (if applicable), and the Post-Effective-Date Liquidating Expenses, and/or reserves established for any of the foregoing.  The Holders of Class 3 Claims shall continue to retain Liens against the applicable Distributable Assets (other than, for the avoidance of doubt, the Administrative / Priority / Other Distributions Reserve, the Post-Effective-Date Liquidating Expense Reserve, the Professional Fee Reserve, and the Class 5 Fund) until the Allowed Class 3 Claims have been paid in full or otherwise satisfied and extinguished.  The Prepetition Lenders Deficiency Claims are classified as Class 5 General Unsecured Claims (discussed above), but no distributions of the Class 5 Fund will be made to the Prepetition Term Loan Lenders.

Lastly, the Holders of Intercompany Claims (in Class 6) and Equity Interests (in Class 7) will not receive any distributions or property under the Plan.

The following chart briefly summarizes the classification and estimated recoveries of Claims and Equity Interests under the Plan.[4] Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor, and each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Equity Interests will be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.  The Plan provides for the limited substantive consolidation of the Debtors' Estates for the purposes of voting on the Plan by the Holders of Claims and making Distributions to Holders of Claims.

---

[4] This chart is only a summary of the classification and treatment of Claims and Equity Interests under the Plan. References should be made to the entire Disclosure Statement and the Plan for a complete description.

| Class | Type of Claim or Interest | Estimated Claim Amount | Impairment | Entitled to Vote | Estimated Recovery Under Plan |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | $0 - $3,417 | No | No | 100% |
| 2 | Other Secured Claims | $0 | No | No | 100% |
| 3 | Prepetition Term Loan Secured Claims | $76,416,195 | Yes | Yes | Not less than $956,031[5] |
| 4 | NGP Unsecured Claims | $5,893,000 - $9,710,902[6] | Yes | Yes | Agspring Parties' Release under the terms of the Global Settlement. |
| 5 | General Unsecured Claims | $10,565.69 | Yes | Yes | 47% |
| 6 | Intercompany Claims | Subject to reconciliation | Yes | No | 0% |
| 7 | Equity Interests in Debtors | N/A | Yes | No | None |

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE ABOVE ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE.  FOR A COMPLETE DESCRIPTION OF THE DEBTORS' CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN AND THE RISK FACTORS DESCRIBED IN ARTICLE V BELOW.  THE TABLE IS INTENDED FOR ILLUSTRATIVE PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR A REVIEW OF THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.  FOR CERTAIN CLASSES OF CLAIMS, THE ACTUAL AMOUNT OF ALLOWED CLAIMS COULD BE MATERIALLY DIFFERENT THAN THE ESTIMATED AMOUNTS SHOWN IN THE TABLE ABOVE.**

---

[5] Includes a portion of the Escrow Funds and net proceeds from any Causes of Action in which the Prepetition Term Loan Lenders have Liens.

[6] Higher number set forth in NGP's Proof of Claim No. 6 ("aggregate amount of at least $9,710,901.62").

## C.    SOLICITATION, VOTING AND CONFIRMATION MATTERS

### 1.    Important Dates and Deadlines

| Event | Date[7] |
|---|---|
| Voting Record Date | June 3, 2024 |
| Solicitation Commences | June 7, 2024 |
| Deadline to File Rule 3018 Motions | June 21, 2024 @ 4:00 p.m. |
| Deadline to Respond to Rule 3018 Motions | July 8, 2024 @ 4:00 p.m. |
| Deadline to file Plan Supplement | June 28, 2024 @ 4:00 p.m. |
| Voting Deadline[8] | July 8, 2024 @ 4:00 p.m. |
| Combined Plan and Disclosure Statement Objection Deadline[9] | July 8, 2024 @ 4:00 p.m. |
| Deadline to File Confirmation Brief and Other Evidence Supporting the Combined Plan and Disclosure Statement | November 21, 2024 @ 4:00 p.m. |
| Deadline to File Voting Tabulation Affidavit | November 21, 2024 @ 4:00 p.m. |
| Confirmation Hearing | Continued various times to December 11, 2024 @ 2:00 p.m. |

### 2.    Who May Vote on the Plan

Each Holder of an Allowed Claim in Class 3, 4 or 5 is entitled to vote either to accept or to reject the Plan.  Only those votes cast by Holders of Allowed Claims in Classes 3, 4 and 5 shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.  An Impaired Class of Claims shall have accepted the Plan if:  (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  Classes 1 and 2 are Unimpaired under the Plan, are each deemed to accept the Plan by operation of law and are not entitled to vote on the Plan.  All Intercompany Claims in Class 6 and Equity Interests in Class 7 are deemed to reject the Plan by operation of law.  Without limiting the foregoing, if any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, the Debtors reserve the right to seek confirmation of the Plan over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

---

[7]  All times noted are in prevailing Eastern Time.

[8] NGP's Voting Deadline was extended by the Debtors.

[9] NGP's Deadline to Object to the Combined Plan and Disclosure Statement was extended by the Debtors.

3.      **Summary of Solicitation Package and Voting Instructions**

The following materials constitute the solicitation package with respect to the Plan enclosed herewith (the "Solicitation Package"):

- a solicitation cover letter from the Debtors addressed to the voting creditors;

- the appropriate form of Ballot and instructions for completing the Ballot;

- this Combined Plan and Disclosure Statement with all exhibits; and

- a copy of the order conditionally approving this Disclosure Statement (without exhibits).

Only Holders of Prepetition Term Loan Secured Claims (Class 3), NGP Unsecured Claims (Class 4), and General Unsecured Claims (Class 5) are entitled to vote to accept or reject the Plan and shall be served with electronic or paper copies of this Disclosure Statement and the Plan. All parties entitled to vote to accept or reject the Plan shall receive electronically or a paper copy of each appropriate Ballot. Any party who desires additional paper copies of these documents may request copies from Debtors' counsel, Attn: Dentons US LLP (the "Voting Agent"), at no charge by calling the Voting Agent at (213) 623-9300 or emailing samuel.maizel@dentons.com and tania.moyron@dentons.com. The Voting Agent will, among other things, answer questions, provide additional copies of all Solicitation Package materials, and generally oversee the solicitation process.

To be counted, Ballots cast by Holders must be received by the Voting Agent by **4:00 p.m. (prevailing Eastern Time) on July 8, 2024, the Voting Deadline**. Voting instructions are attached to each Ballot.

Unless the Debtors in their discretion decide otherwise, any Ballot received after the Voting Deadline shall not be counted. As soon as practicable after the Voting Deadline, the Voting Agent will process and tabulate received Ballots and will File a voting report.

**Any Ballot that is properly executed by the Holder of a Claim but fails to clearly indicate an acceptance or rejection, or that indicates both an acceptance and a rejection of the Plan, shall not be counted.**

**All Ballots are accompanied by voting instructions. It is important to follow the specific instructions provided with the Ballot. Voting tabulation procedures are set forth in the Ballots.**

4.      **Confirmation of the Plan**

(a)      Generally

"Confirmation" is the technical term for the Bankruptcy Court's approval of a plan of reorganization or liquidation. The timing, standards and factors considered by the Bankruptcy Court in deciding whether to confirm a plan are discussed below.

The confirmation of a plan of reorganization by the Bankruptcy Court binds the debtor, any issuer of securities under a plan of reorganization, any person acquiring property under a plan of reorganization, any creditor or equity interest holder of a debtor, and any other person or entity

as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.

     (b)    <u>The Confirmation Hearing</u>

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

The Debtors will provide notice of the Confirmation Hearing to all necessary parties. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing of any adjournment thereof.

### 5.    Confirming and Consummating the Plan

It is a condition to Confirmation of the Plan that the Bankruptcy Court shall have entered the Confirmation Order. Certain other conditions contained in the Plan must be satisfied or waived pursuant to the provisions of the Plan.

### 6.    Rules of Interpretation; Computation of Time

The following rules for interpretation and construction shall apply to this Combined Plan and Disclosure Statement: (1) unless otherwise specified, any reference in this Combined Plan and Disclosure Statement to a contract, instrument, release, indenture, or other agreement or document shall be a reference to such document in the particular form or substantially on such terms and conditions described; (2) unless otherwise specified, any reference in this Combined Plan and Disclosure Statement to an existing document, schedule, or exhibit, whether or not filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) any reference to an entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; (4) unless otherwise specified, all references in this Combined Plan and Disclosure Statement to Sections are references to Sections of this Combined Plan and Disclosure Statement; (5) unless otherwise specified, all references in this Combined Plan and Disclosure Statement to exhibits are references to exhibits in this Combined Plan and Disclosure Statement; (6) unless otherwise set forth in this Combined Plan and Disclosure Statement, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (7) any term used in capitalized form in this Combined Plan and Disclosure Statement that is not otherwise defined in this Combined Plan and Disclosure Statement but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. Unless expressly provided otherwise herein, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

### 7.    Distribution of Confirmation Hearing Notice to Holders of Claims in Non-Voting Classes and Holders of Disputed Claims

As set forth above, certain Holders of Claims are not entitled to vote on the Plan. As a result, such parties will not receive Solicitation Packages but, instead, will only receive the Confirmation Hearing Notice that explains, among other things, that (i) Classes 1 and 2 are Unimpaired under the Plan, and therefore, are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and that Classes 6 and 7 are Impaired but will not receive any distribution under the Plan and thus is deemed to have rejected the Plan pursuant to section

1126(g), (ii) instructions for Holders of Claims and Equity Interests in all Classes on how they may obtain a copy of the Plan and this Combined Plan and Disclosure Statement, (iii) the deadline by which to object to confirmation of the Plan; and (iv) the Confirmation Hearing date and time.

> Contract and Lease Counterparties. Parties to certain of the Debtors' executory contracts and unexpired leases may not have Claims pending the disposition of their contracts or leases by assumption or rejection under the Plan. Such parties nevertheless will receive the Confirmation Hearing Notice.

**8.      Filing of the Plan Supplement**

The Debtors will file the Plan Supplement with the Bankruptcy Court in accordance with the Plan. The Debtors will have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date. **Parties may obtain a copy of the Plan Supplement, once it is filed, through the Voting Agent by calling the Voting Agent at (213) 623-9300 or emailing samuel.maizel@dentons.com and tania.moyron@dentons.com.**

**9.      The Confirmation Hearing**

**The Confirmation Hearing has been scheduled to commence on December 11, 2024 at 2:00 p.m. (prevailing Eastern time).** The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

**10.      The Deadline for Objecting to Confirmation of the Plan**

**The deadline for objecting to Confirmation of the Plan is July 8, 2024 at 4:00 p.m. (prevailing Eastern time)**. Subject to order of the Bankruptcy Court, any objection to confirmation of the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the applicable Debtor, the name of the objecting party and the amount and nature of the Claim of such Entity or the amount of Equity Interests held by such Entity; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan; and (v) be filed with the Bankruptcy Court and served by no later than the deadline to Confirmation set by the Bankruptcy Court on the parties set forth in the order approving the Disclosure Statement (the "Notice Parties"), which service may be by way of the CM/ECF system, with courtesy copies by email.

CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

**11.      Effect of Confirmation of the Plan**

The Plan contains certain provisions relating to (a) the compromise and settlement of Claims and Equity Interests, (b) the release of the Released Parties by the Debtors and certain other parties, and each of their respective Related Persons, and (c) exculpation of certain parties.

> THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND
> EQUITY INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED

BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (B) HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASES (IF ANY ARE FILED), OR (C) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## D.    RISK FACTORS

**PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS IS URGED TO CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE V HEREOF TITLED, "RISK FACTORS."**

## ARTICLE II.
## DEFINED TERMS

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*9019 Motion*" means the motion seeking approval of the Global Settlement.

2.    "*Accrued Professional Compensation*" means, with respect to a particular Professional, an Administrative Expense Claim of such Professional for compensation for services rendered to the Debtors or the Estates or reimbursement of costs, expenses or other charges incurred on behalf of the Debtors or the Estates from the Petition Date through the Effective Date.

3.    "*Administrative Expense Bar Date*" has the meaning set forth in Article IV.A hereof."*Administrative Expense Claim*" means any Claim against any of the Debtors for costs and expenses of administration of the Chapter 11 Cases that is Allowed pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred from the Petition Date through the Effective Date of preserving the Estates and operating the business of the Debtors; (b) any Professional Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.  Notwithstanding anything to the contrary herein, Administrative Expense Claims exclude any Prepetition Term Loan Secured Claims.

5.    "*Administrative / Priority / Other Distributions Reserve*" means a reserve fund established and administered by the Plan Administrator on or as soon as reasonably practicable after the Effective Date, in an aggregate amount determined by the Debtors subject to consultation with the Prepetition Term Loan Lenders, to be needed to pay all Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Cash payments in satisfaction of Other Secured Claims, and any other amounts required to be funded under the Plan, including any U.S. Trustee fees accrued or anticipated to be owed in the future until the Chapter 11 Cases are closed.

6.    "*Affiliate*" means with respect to any specified Entity, any other Entity directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Entity. For purposes of this definition, "control" (including, with correlative meanings, the terms "controlling," "controlled by," and "under common control with") as used with respect to any Entity, shall mean the possession, directly or indirectly, of the right or power

to direct or cause the direction of the management or policies of such Entity, whether through the ownership of voting securities, by agreement, or otherwise.

7.  "*Allowed*" means any Claim or Equity Interest (a) that appears on the Schedules and is not listed at $0 or marked as unliquidated, contingent, or disputed and that has not been superseded by a Filed Proof of Claim, (b) that is allowed under the Plan, (c) that is not Disputed and for which a Proof of Claim has been timely Filed or deemed timely Filed by Final Order, (d) that is either allowed or determined by Final Order, or (e) that is agreed to by the Debtors and the Holder of such Claim or Equity Interest.

8.  "*Allowed Claim or Equity Interest*" means a Claim or Equity Interest of the type that has been Allowed.

9.  "*Assets*" means all of the right, title, and interest of any of the Debtors in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

10.  "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of any of the Debtors or their Estates under the Bankruptcy Code or applicable nonbankruptcy law, including actions or remedies arising under sections 502, 510 or 542-553 of the Bankruptcy Code, excluding those Avoidance Actions that have been released pursuant to the Plan, the Global Settlement, or released or sold pursuant to a Final Order of the Bankruptcy Court in the Chapter 11 Cases.

11.  "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan.

12.  "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

13.  "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

14.  "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

15.  "*Bar Date*" means, as applicable, the General Claims Bar Date, the Administrative Expense Bar Date, or any other applicable deadline to file Claims referenced in the Plan."*Bar Date Order*" means the *Order: (I) Setting Bar Dates For Filing Proofs Of Claim, Including Requests For Payment Under Section 503(B)(9) Of The Bankruptcy Code; (II) Setting A Bar Date For The Filing Of Proofs Of Claim By Governmental Units; (III) Setting A Bar Date For The Filing Of Requests For Allowance Of Administrative Expense Claims; (IV) Establishing An Amended Schedules Bar Date And A Rejection Damages Bar Date; (V) Approving The Form Of And Manner For Filing Proofs Of Claim; (VI) Approving A Notice Of Bar Dates; And (VII) Granting Related Relief* [Docket No. 118], which established the General Claims Bar Date and certain other deadlines and procedures."*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.  "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

- 15 -

19.    "*Cash Collateral Order(s)*" means that certain *Final Order (1) Approving Stipulation Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, and (3) Related Relief* [Docket No. 75] entered by the Bankruptcy Court on August 17, 2023, and any other orders entered in the Chapter 11 Cases governing the Debtors' use of cash collateral of the Prepetition Term Loan Lenders and Prepetition Agent.

20.    "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever belonging to the Debtors, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any claims under any state or foreign law, including Avoidance Actions. **Notwithstanding anything to the contrary herein, the Causes of Action retained by the Post-Effective-Date Debtors from and after the Effective Date exclude any Causes of Action released under the Plan, the Confirmation Order, the Global Settlement and the Global Settlement Approval Order.**

21.    "*Chapter 11 Cases*" means the Debtors' cases under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court.

22.    "*Claim*" means any "claim" against the Debtors as defined in section 101(5) of the Bankruptcy Code.

23.    "*Claim Objection Deadline*" means with respect to all Claims other than Professional Fee Claims, (a) **180 days after the Effective Date**, or (b) such other period as may be fixed by an order of the Bankruptcy Court for objecting to Claims upon request of the Plan Administrator for cause shown.

24.    "*Claims Register*" means the official register of Claims maintained by the Voting Agent.

25.    "*Clark*" means Bradley K. Clark.

26.    "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article IV.B hereof pursuant to section 1122(a) of the Bankruptcy Code.

27.    "*Class 5 Fund*" means $5,000 in Cash, free and clear from all other claims and interests, which will fund a distribution of Cash to Holders of Allowed Class 5 Claims (excluding the Prepetition Lenders Deficiency Claims), in accordance with the Plan. The Class 5 Fund will be administered by the Plan Administrator.

28.    "*Collateral*" means any property or interest in property of the Debtors' Estates that is subject to a valid and enforceable Lien to secure a Claim.

29.    "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

30.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to sections 1128 and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

31.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance the same as attached to the Global Settlement with changes (i) acceptable to the Debtors, and (ii) that do not contain any material amendments or modifications to the version unless consented to by NGP, Clark, and Linville, such consent not to be unreasonably withheld.

32.    "*Consummation*" or "*Consummated*" means the occurrence of the Effective Date.

33.    "*D&O Liability Insurance Policies*" means all insurance policies for directors' and officers' liability maintained by the Debtors as of the Petition Date and/or the Effective Date, including tail coverage after the termination of any such policies.

34.    "*Debtor/Estate Release*" has the meaning set forth in Article IV.F.2 hereof.

35.    "*Debtor/Estate Releasors*" has the meaning set forth in Article IV.F.2 hereof.

36.    "*Debtors*" means Agspring, Agspring Idaho 1 LLC, Agspring Idaho LLC, FO-ND LLC (dba Firebrand Artisan Mills), Agspring Logistics LLC (dba Agforce), and Agspring Idaho 2 LLC, each in its capacity as a debtor and debtor in possession in the Chapter 11 Cases and, from and after the Effective Date, as a liquidating debtor pursuant to the Plan.

37.    "*Debtors in Possession*" means the Debtors, as debtors in possession in the Chapter 11 Cases as of the Petition Date.

38.    "*Disallowed*" means, as to any Claim (or portion thereof) or Equity Interest, a Claim or Equity Interest against the Debtors that (i) has been disallowed by a Final Order, (ii) is not listed on the Schedules or, as to any Claim, is listed as unliquidated, contingent, or disputed and as to which no Proof of Claim has been Filed for such Claim or deemed timely Filed pursuant to any Final Order, or (iii) has been agreed to by the Holder of such Claim or Equity Interest and the Debtors to have no value or to be expunged.

39.    "*Disclosure Statement*" means the disclosure statement portion of the Combined Plan and Disclosure Statement.

40.    "*Disputed*" means, with respect to a Claim, (a) any Claim, which Claim is disputed under Article IV.I hereof or as to which the Debtors or any other party in interest has interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be Filed by order of the Bankruptcy Court but as to which a Proof of Claim was not timely or properly Filed or deemed timely and/or properly Filed by Final Order; (c) any Claim that is listed in the Schedules as unliquidated, contingent or disputed, and as to which no request for payment or Proof of Claim has been Filed; or (d) any Claim that is otherwise disputed by the Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order, *provided, however*, that if the Debtors seek to dispute a Claim that is the subject of a Filed Proof of Claim, the Debtors shall do so in accordance with the Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court.  To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim.

41.     "*Distributable Assets*" means, except as otherwise noted below, any and all real or personal property of the Debtors of any nature, including any real estate, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Causes of Action, books and records, any other general intangibles of the Debtors and the Post-Effective-Date Debtors from and after the Effective Date, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including property of the Estates within the scope of section 541 of the Bankruptcy Code, and D&O Liability Insurance Policies and the proceeds thereof.   Notwithstanding the foregoing, the term "Distributable Assets" does not include the Professional Fee Reserve and any other Cash tendered by the Debtors and held in their counsel's trust account for the purpose of satisfying Accrued Professional Compensation.

42.     "*Distribution Agent*" means any party (including the Plan Administrator) designated by the Plan Administrator to serve as distribution agent under the Plan.

43.     "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder, as such date shall be fixed by order of the Bankruptcy Court.

44.     "*Effective Date*" means, with respect to the Plan, the date that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IV.J have been satisfied or waived (in accordance with Article IV.J); and (c) the Plan is declared effective.

45.     "*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

46.     "*Equity Interest*" means any equity interest in the Debtors including, but not limited to, all limited liability company interests, together with any warrants, options, or other contract rights to purchase or acquire such interests at any time.

47.     "*Estates*" means the bankruptcy estates of the Debtors created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

48.     "*Exculpated Parties*" means, collectively, each in its capacity as such: (a) the Debtors, (b) the Debtors' directors and officers who served in such capacity on and after the Petition Date, and (c) the Debtors' professionals retained in the Chapter 11 Cases.

49.     "*Exculpation*" means the exculpation provision set forth in Article IV.G.3 hereof.

50.     "*Executory Contract*" means a contract to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

51.     "*Exhibit*" means an exhibit annexed hereto to the Plan Supplement or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

52.     "*File*" or "*Filed*" or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

53.     "*Final Distribution Date*" means the date when, (a) in the reasonable judgment of the Plan Administrator, substantially all of the Distributable Assets have been

monetized and there are no substantial potential sources of additional Cash for distribution, (b) there remain no Disputed Claims and (c) the Plan Administrator distributes all remaining Cash held by the Post-Effective-Date Debtors to creditors in accordance with the Plan.

54.      "*Final Order*" means an order of the Bankruptcy Court, which is in full force and effect and has not been reversed, modified or amended, that is not stayed, and to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, no stay pending appeal has been granted or such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

55.      "*General Claims Bar Date*" meansJanuary 19, 2024 at 5:00 p.m. prevailing Eastern Time, which was the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtors (excluding Claims of Governmental Units) that arose prior to the Petition Date (including requests for payment pursuant to section 503(b)(9) of the Bankruptcy Code)."*General Unsecured Claim*" means any Claim against any of the Debtors that is not a/an:  (a) Administrative Expense Claim; (b) Priority Tax Claim; (c) Other Priority Claim; (d) Other Secured Claim; (e) Prepetition Term Loan Secured Claims; (f) NGP Unsecured Claims; (g) Intercompany Claim;  or  (h) Equity Interests.   General Unsecured Claims include the Prepetition Lenders Deficiency Claims.

57.      "*Global Settlement*" means the *Confidential Settlement Agreement and Release* between NGP, Clark, Linville, Agspring, Holdco, LVS II SPE XVIII LLC, HVS V LLC, and TOBI XXI, LLC, subject to approval by the Bankruptcy Court.

58.      "*Global Settlement Approval Order*" means the order approving the Global Settlement.

59.      "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

60.      "*Holdco*" means non-Debtor party Agspring Holdco, LLC, the sole member and managing member of Debtor Agspring, LLC.

61.      "*Holder*" means an Entity holding a Claim against, or Equity Interest in, any of the Debtors.

62.      "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

63.      "*Initial Distribution Date*" means, subject to the "Treatment" sections in Article IV.B hereof, the date that is as soon as reasonably practicable after the Effective Date, when distributions under the Plan shall commence to Holders of Allowed Claims.

64.    "*Intercompany Claim*" means a Claim held by one Debtor against another Debtor.

65.    "*Interim Professionals Compensation Orders*" means any and all orders of the Bankruptcy Court entered in the Chapter 11 Cases approving the allowance and payment of Professional Fee Claims, including, without limitation, Docket Nos. 137 and 138.

66.    "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

67.    "*Linville*" means Randal L. Linville and the Randal L. Linville Revocable Trust.

68.    "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

69.    "*NGP*" means NGP X US Holdings LP and any successor thereto.

70.    "*NGP Advancement*" means Agspring's liability to NGP on account of a judgment entered on or about February 7, 2022 by the Delaware Court of Chancery in *Agspring, LLC, et al. v. NGP Holdings, et al.*, Case No. 2018-0567-AGB, which was subsequently confirmed by the Delaware Supreme Court on December 2, 2022, for the advancement of certain litigation costs relating to a JAMS arbitration award in favor of NGP.

71.    "*NGP Unsecured Claims*" means any and all Claims of NGP against the Debtors, including, without limitation, putative Proof of Claim No. 6 filed against Agspring, Claims for indemnification under the Services Agreement, the NGP Advancement and any other Claims of NGP referenced in the Schedules.

72.    "*Other Priority Claim*" means any Claim against any of the Debtors accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

73.    "*Other Secured Claim*" means any Secured Claim against any of the Debtors other than a Prepetition Term Loan Secured Claim.

74.    "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

75.    "*Petition Date*" means May 31, 2023, the date on which the Debtors commenced the Chapter 11 Cases.

76.    "*Plan*" means the plan portion of this Combined Plan and Disclosure Statement, including the Exhibits and Plan Supplement and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

77.    "*Plan Administrator*" means that Person selected by the Debtors, with the consent of the Prepetition Term Loan Lenders, to administer the Post-Effective-Date Debtors and liquidate the Distributable Assets in accordance with the Plan. In the event that the Person serving

as the Plan Administrator is terminated or is unable to fulfill his, her or its duties under the Plan, the Bankruptcy Court shall appoint a Person to fulfill the obligations of the Plan Administrator under the Plan. The Debtors shall identify the Person to serve initially as the Plan Administrator in the Plan Supplement.

78.     "*Plan Distribution*" means the payment or distribution of consideration to holders of Allowed Claims under the Plan.

79.     "*Plan Documents*" means any of the documents, other than the Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement.

80.     "*Plan Funding*" means the funding from the Prepetition Term Loan Lenders and the Escrow Fund in an aggregate amount sufficient to (i) pay (or reserve for payment of) all Allowed Administrative Claims, Priority Tax Claims, Other Priority Claims, and, if applicable, Other Secured Claims; (ii) fund (a) the Class 5 Fund, (b) the Professional Fee Reserve, and (c) the Post-Effective-Date Liquidating Expense Reserve; and (iii) make any other payments that may be required of the Debtors or Estates pursuant to the Plan, including amounts payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, in each case in the reasonable judgment and estimation of the Debtors subject to consultation with the Prepetition Term Loan Lenders; *provided, however*, that absent the written consent of the Prepetition Term Loan Lenders, the Plan Funding shall not exceed $1,332,352. The Plan Funding shall be deposited into one or more accounts controlled by the Plan Administrator on and after the Effective Date, free and clear of any Liens, Claims or other interests.

81.     "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including the Exhibits and Plan Documents, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time, which shall be Filed with the Bankruptcy Court on or before the deadline set forth in Local Rule 3016-2 or as otherwise ordered by the Court  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

82.     "*Post-Effective-Date Debtor*" means a Debtor that is liquidating after the Effective Date.

83.     "*Post-Effective-Date Liquidation Expenses*" means the expenses incurred or payable by the Plan Administrator and the Post-Effective-Date Debtors from and after the Effective Date, including the reasonable fees and costs of attorneys and other professionals, relating to implementation of the Plan.

84.     "*Post-Effective-Date Liquidating Expense Reserve*" means a reserve fund with Cash, in the amount of $50,000, to be established by the Plan Administrator  on or as soon as reasonably practicable after the Effective Date, to pay Post-Effective-Date Liquidating Expenses.

85.     "*Postpetition*" means the time period beginning on the Petition Date and ending on the day before the Effective Date.

86.     "*Prepetition Agent*" means U.S. Bank National Association as administrative agent under the Prepetition Term Loan Agreement, and any successor thereto.

87.    "*Prepetition Lenders Deficiency Claims*" means the unsecured deficiency claims of the Prepetition Term Loan Lenders and Prepetition Agent in relation to the Prepetition Term Loan Agreement, which Claims are classified in Class 5 (General Unsecured Claims).

88.    "*Prepetition Term Loan Agreement*" means that certain Term Credit Agreement, dated December 14, 2015 (as amended or otherwise modified from time to time), by and among Agspring LLC as borrower, the Prepetition Term Loan Lenders, and the Prepetition Agent, together with the other Debtors as guarantors.

89.    "*Prepetition Term Loan Lenders*" means LVS II SPE XVIII LLC and HVS V LLC as lenders under the Prepetition Term Loan Agreement and any successors thereto.

90.    "*Prepetition Term Loan Secured Claims*" means any and all Claims against the Debtors arising under or relating to the Prepetition Term Loan Agreement, the Cash Collateral Orders, and all agreements and instruments relating to the foregoing.

91.    "*Prepetition Term Loan Secured Parties*" means the Prepetition Term Loan Lenders and the Prepetition Agent.

92.    "*Priority Tax Claim*" means any Claim of a Governmental Unit against any of the Debtors of the kind specified in section 507(a)(8) of the Bankruptcy Code.

93.    "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim in a particular Class (or several Classes taken as a whole) bears to (b) the aggregate Allowed amount of all Claims in such Class (or several Classes taken as a whole), unless the Plan provides otherwise.

94.    "*Professional*" means (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 363, or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

95.    "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

96.    "*Professional Fee Reserve*" has the meaning set forth in Article IV.A.1 hereof."*Proof of Claim*" means a proof of Claim or Equity Interest Filed against the Debtors in the Chapter 11 Cases.

97.    "*Reinstated*" means, with respect to any Claim, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the holder of such Claim in accordance with Section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:  (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than the Debtors or an insider of the Debtors) for any actual pecuniary loss incurred by such Holder as a result of such

failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

99.    "*Related Persons*" means, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's successors and assigns, and as applicable, said Person's current and former shareholders, members, Affiliates, subsidiaries, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, investment bankers, accountants, and consultants, solely in their respective capacities as such. For the avoidance of doubt, "Related Persons" include Pacific Investment Management Company, PIMCO Horseshoe Fund, LP, PIMCO BRAVO Fund II, L.P., and TOBI XXI, LLC.

100.    "*Released Party*" means, collectively, each solely in its respective capacity as such:  (a) the Debtors, (b) Holdco, (c) the Prepetition Term Loan Lenders, (d) the Prepetition Agent, and (e) the Related Persons of the parties covered by (a) through (d); *provided, however*, in no event shall any of the following be a Released Party under the Plan: (i) NGP, (ii) Clark, (iii) Linville, and (iv) any of the Big River Entities.  For the avoidance of doubt, (i) NGP, (ii) Clark, and (iii) Linville shall only receive the releases described in the Global Settlement and are not a "Released Party" within the meaning of the Plan.

101.    "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtors with the Bankruptcy Court.

102.    "*Secured Claim*" means a Claim that is secured by a Lien on property in which any of the Debtors' Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

103.    "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

104.    "*Services Agreement*" means that certain Advisory Services, Reimbursement and Indemnification Agreement dated August 30, 2012 between NGP and Agspring, as may be amended, modified and/or supplemented from time to time.

105.    "*Solicitation"* means the solicitation of votes of those parties entitled to vote to accept or reject the Plan.

106.    "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including such taxes on prime contracting and owner-builder sales), privilege taxes (including privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

107.    "*Unexpired Lease*" means a lease to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

108.    "*Unimpaired*" means, with respect to a Class of Claims that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

109.    "*Voting Agent*" means Dentons US LLP and any successor thereto.

110.    "*Voting Classes*" means Class 3, Class 4 and Class 5 under the Plan.

111.    "*Voting Deadline*" means the deadline set by the Bankruptcy Court for submitting a Ballot for the purpose of voting on the Plan.

112.    "*Voting Record Date*" means the date for determining which Holders of Claims are entitled to receive the Disclosure Statement and vote to accept or reject the Plan, which date shall be set by the Bankruptcy Court.

## ARTICLE III.
## BACKGROUND TO THE CHAPTER 11 CASES

### A.    DEBTORS' BUSINESS AND CERTAIN HISTORICAL EVENTS

#### 1.    Background

Prior to the Petition Date, the Debtors, together with a group of affiliated entities known as the "Big River Entities",[10] were part of a larger agribusiness and logistics company formed in August 2012 with the express aim of acquiring, consolidating, and operating midstream agricultural commodity firms, including four agribusiness units: three business units focused on commodity purchasing; and one providing logistics broker services.

In 2015, the founders and equity sponsors of these agribusiness units sold them to American Infrastructure MLP Funds ("AIM") for approximately $272 million (the "2015 Sale"). To effectuate the 2015 Sale, NGP and the Management Investors (collectively, the "Sellers") agreed to sell the Agspring business via a Membership Interest Purchase and Contribution Agreement ("MIPCA"). Agspring LP, a limited partnership, was created by AIM to effectuate the membership interest purchase. In addition, Agspring, also a party to the MIPCA, entered into the Prepetition Term Loan Agreement, pursuant to which it borrowed $80 million from the Prepetition Term Loan Lenders. Finally, HVS and TOBI invested $45 million in preferred equity. These debt and equity investments were made in reliance on financial information provided by Sellers.

The Agspring companies suffered significantly lower EBITDA in 2016 than forecasted during the 2015 Sale process, which resulted in Agspring's inability to service the significant debt load taken under the Term Loan to finance the 2015 Sale. In connection with the 2015 Sale, NGP and the Management Investors (as defined below), former owners of Agspring, projected EBITDA of $33 million for the Agspring operating entities for fiscal year 2016. Six months later, the EBITDA was $701,901. The Management Investors resigned in July of 2016. Debtors assert that prior to their resignation, certain documents and information relating to the Agspring businesses were destroyed or deleted. The Debtors also assert that certain financial reporting discrepancies were discovered by Agspring's new owners after the 2015 Sale, including (i) overstatement of the margin for seed sales by an Agspring subsidiary, (ii) material understatement of weather storm impaired inventory values, and (iii) material understatement of lost and missing inventory values at certain of Agspring's subsidiaries. The Debtors assert these inaccuracies overstated Agspring's income and asset values by approximately $3.8 million; NGP, Clark and Linville have contested the foregoing allegations.

---

[10] Comprised of non-Debtors Agspring Mississippi Region, LLC ("AMR"), Agspring MS 1, LLC ("Agspring MS 1"), Agspring MS, LLC ("Agspring MS"), Lake Providence Grain and Rice LLC ("LPGR"), and Bayou Grain & Chemical Corporation ("BGCC") (collectively the "Big River Entities").

### 2.  Relevant Litigations

In 2019, Agspring and its sole member, Holdco, commenced litigation (the "Delaware Chancery Litigation") in Delaware Chancery Court, C.A. No. 2019-0567-AGB,  against the founders of the Agspring businesses, Clark and Linville (collectively the "Management Investors") and former equity owner NGP.  Plaintiffs LVS II SPE XVIII LLC, a Delaware limited liability company ("LVS"), HVS V LLC, a Delaware limited liability company ("HVS") and TOBI XXI, LLC a Delaware limited liability company ("TOBI") also brought claims for damages incurred by them in reliance on alleged misrepresentations of NGP and the Management Investors, as more specifically described in the Amended Complaint filed in the Delaware Chancery Litigation.  The Amended Complaint is based, inter alia, on indemnification obligations of NGP and the Management Investors under the MIPCA as well as breach of fiduciary duty and fraud related claims, as more described below and in the Amended Complaint.  The Delaware Chancery Litigation is currently stayed until Agspring, a plaintiff, pays NGP advancement.

In 2019, the Management Investors and the Randal L. Linville Revocable Trust commenced an action against defendants Agspring, Holdco, HVS, and TOBI in Johnson County Kansas District Court entitled *Bradley K. Clark, et al., v. Agspring LLC, et al*., Case No. 19cv00248 (the "Kansas Litigation," and together with the Delaware Chancery Litigation, the "Pending Litigations").

### 3.  The MIPCA and the Escrow Agreement

The MIPCA contains certain covenants and provides for indemnification by the Sellers in certain instances. The indemnification obligations flow to AIM and the "Partnership Indemnified Parties," which include the General Partner (Agspring GP LLC), the Partnership (Agspring LP) and their respective "controlling representatives, unitholders, members and other equity owners and controlling persons and their Related Persons."  Related Persons includes Affiliates of Partnership Indemnified Parties.

An Escrow Agreement dated December 14, 2015 (the "Escrow Agreement") was created in conjunction with the MIPCA.  It was funded initially by a $2,070,000 cash deposit (the "Escrow Funds"), which constitutes a holdback from the purchase price payable to Sellers to address claims of the Partnership Indemnified Parties that might arise under the MIPCA post-closing.  Wells Fargo is the Escrow Agent.  The Escrow Agreement is binding on and inures to the benefit of the Parties (as defined therein) and their successors or assigns upon written notice to the Escrow Agent and the other parties to the Escrow Agreement.

While the Delaware Chancery Litigation was pending, the Agspring companies continued to incur losses from their operations and determined to commence the marketing and sale of their assets. In early 2021, the Agspring companies engaged an investment banker to market the assets of the Big River Entities. For a variety of reasons, an acceptable offer did not materialize, and on September 10, 2021, the Big River Entities filed chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (Case No. 21-11238 (CTG) (the "Big River Chapter 11 Cases")).

In the Big River Chapter 11 Cases, the Big River Entities effectuated settlements with their major creditors and concluded an orderly sale process and the consensual distribution of the sale proceeds. By virtue of the order entered on August 16, 2022 in Case No. 21-11238 (CTG) [Docket No. 483], the Bankruptcy Court provided authority to management to dissolve the Big River Entities under applicable law. As a result, none of the Big River Entities are Debtors in these Cases.

The Debtors have no ongoing operations and currently have only part time independent contractors providing services to them via an Intercompany Services Agreement.

## B.    DEBTORS' ORGANIZATIONAL STRUCTURE

Agspring is a Delaware limited liability company and the sole managing member and sole interest holder of Agspring Logistics LLC, FO-ND, LLC and Agspring Idaho 1, LLC ("Idaho 1"), each of which is a Delaware limited liability company. Agspring indirectly owns Agspring Idaho 2 LLC ("Idaho 2") and Agspring Idaho LLC, which are Delaware limited liability companies.

Holdco is the sole member and managing member of Agspring. Attached hereto as **Exhibit A** is an organizational chart of the Agspring companies.

## C.    DEBT STRUCTURE

Agspring is the borrower under a Term Credit Agreement, dated December 14, 2015, between Agspring, LVS, and HVS.  Debtors Agspring, FO-ND LLC, Agspring Logistics LLC and Agspring Idaho 1 LLC, together with certain non-Debtor affiliates, each guaranteed the repayment of the Term Loan (the "Guarantors"). Each of the Guarantors also entered into a Security Agreement, pursuant to which it pledged its assets to secure the Term Loan obligations. The current amount of the unpaid Prepetition Term Loan Secured Claims is no less than $77,416,193.91.

As of the date hereof, based on their books and records, the Debtors estimate they owe approximately $10,565.69 in unsecured trade debt and other unsecured accounts payable, excluding any claims of NGP (discussed below).[11]

## D.    EVENTS LEADING TO THE PETITION DATE

As noted above, Agspring is a Plaintiff in the Delaware Chancery Litigation, which alleged breach of contract, fraud, and breach of fiduciary duty against NGP and the Management Investors relating to the 2015 Sale. In response, NGP commenced an arbitration proceeding against Agspring seeking the advancement of litigation defense costs pursuant to a contract entered into between Agspring and NGP (the Services Agreement). On March 10, 2021, NGP successfully obtained, over Agspring's opposition, a ruling from the JAMS arbitration panel that NGP is contractually entitled to the advancement of its defense costs, including attorneys' fees (the "Arbitration Award").  After the Arbitration Award was entered, NGP submitted reimbursement claims to Agspring for expenses it had incurred in the Delaware Chancery Litigation and the Kansas Litigation to date, which totaled over $5 million.

This Arbitration Award was subsequently confirmed by the Delaware Court of Chancery and the Delaware Supreme Court in 2022.  Accordingly, Agspring is liable to NGP for a judgment in the amount of at least $5,893,000, though Agspring's advancement obligations continue to increase as NGP continues to incur defense costs.  However, the Arbitration Award provides that the NGP Advancement does not strip Agspring of its claims against NGP and the Management Investors nor any of its defenses. Under the Services Agreement, NGP's advancement and indemnification rights are subject to a carve out for bad faith, gross negligence or willful misconduct.  To the extent the carve out applies, Agspring would have a right to claw back any amounts paid to NGP on account of the NGP Advancement.  As a result of its claims against NGP, Agspring believes that NGP's claims are contingent.

Currently, the Delaware Chancery Litigation is stayed by order of the Delaware Court of Chancery until such time as Agspring can satisfy the NGP Advancement. In December 2022, NGP filed a new action in Delaware Superior Court against Agspring to obtain collection discovery (the

---

[11] As discussed in Debtors' Monthly Operating Report (to be filed), certain payments to unsecured trade creditors and a priority unsecured claimant (totaling a little more than $11,000) on account of prepetition claims were inadvertently made postpetition by the Debtors.

"<u>Delaware Superior Court Action</u>"). Though Agspring responded to interrogatories and produced documents consistent with its limited resources, NGP is seeking further discovery. Costs of NGP's counsel relating to this discovery were added to the NGP Advancement amount by NGP, and as such, the amount of advancement to which NGP is entitled continues to increase.

As of the Petition Date, in addition to its claims in the Delaware Chancery Litigation, Agspring has asserted a claim to the Escrow Funds of approximately $2 million. Agspring asserts it is entitled to the Escrow Funds; however, NGP, Linville, Clark, Chris Stratton and Dustin Clevenger, who were management investors in the Agspring businesses at the time of the 2015 Sale, have also asserted claims to the Escrow Funds and each is currently party to the Escrow Agreement.

The Debtors filed their Chapter 11 Cases to preserve their remaining assets and to effectuate an orderly liquidation of said assets.

## E.    DEVELOPMENTS IN THE DEBTORS' CHAPTER 11 CASES

### 1.    Cash Collateral and Other Motions/Applications

The Debtors have filed motions and obtained approval for, among other things:

(i)      joint administration of the cases [motion, Docket No. 2; order, Docket No. 8];

(ii)     authorization to redact certain personally identifiable information and obtain related relief [Docket No. 14; order, Docket No. 69];

(iii)    authorization to use cash collateral of the Prepetition Term Loan Lenders and Prepetition Agent [motion, Docket No. 55; order, Docket No. 75]; and

(iv)     retention of Dentons US LLP and Pachulski Stang Ziehl & Jones LLP as co-bankruptcy counsel to the Debtors [orders, Docket Nos. 67 & 100].

### 2.    Schedules and Statements of Financial Affairs

The Debtors filed with the Court their respective Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket Nos. 26-37].

### 3.    Claims Bar Dates

Upon the Debtors' motion [Docket No. 114], the Bankruptcy Court entered an order [Docket No. 118] establishing January 19, 2024 as the General Claims Bar Date and the deadline for holders of Administrative Claims that arose or are deemed to have arisen on or prior to January 1, 2024, to file said Administrative Claims.

### 4.    Global Settlement

Agspring, Holdco, LVS, HVS, TOBI, NGP, Clark, and Linville entered into the Global Settlement which resolves the Pending Litigations, the Delaware Superior Court Action, and related disputes between the parties. It also paves the way for confirmation of the Debtors' Plan and wind-down of the Debtors. In particular, the Global Settlement satisfies the NGP Unsecured Claims, the largest unsecured claim in these Chapter 11 Cases, and directs certain distributions from the Escrow Fund to be paid to the Debtors, which will be used as Plan Funding. Under the terms of the Global Settlement, each of the parties will release each other from any claims relating, among other things as further described in the Global Settlement, to the 2015 Sale, the MIPCA, the Services Agreement, the Prepetition Term Loan Agreement, the Escrow Agreement, the

Pending Litigations, and the Delaware Superior Court Action.  In return, NGP agreed to support this Plan.

On December 3, 2024, the Debtors filed the 9019 Motion, seeking approval of the Global Settlement.  A hearing to consider approval of the 9019 Motion is set to be heard concurrently with the Confirmation Hearing.

**ARTICLE IV.**
**SUMMARY OF PLAN AND CONFIRMATION PROCEDURES**

**A.    ADMINISTRATIVE AND PRIORITY TAX CLAIMS**

**1.    Administrative Expense Claims**

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim will receive, in full satisfaction, settlement, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Plan Administrator and such Holder; *provided, however*, that Administrative Expense Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business by the Plan Administrator in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  **Unless otherwise ordered by Final Order of the Bankruptcy Court, all Administrative Expense Claims arising or deemed to have arisen after January 1, 2024 (excluding any Professional Fee Claims and claims asserting priority pursuant to Section 503(b)(9) of the Bankruptcy Code) must be Filed within thirty (30) days after the Effective Date (the "Administrative Expense Bar Date"), and served on the Plan Administrator and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court.  Any Administrative Claims that arose or are deemed to have arisen on or prior to January 1, 2024 must have been filed with the Court by January 19, 2024 pursuant to the Bar Date Order and shall remain subject to the Bar Date Order.**

*Professional Fee Claims.*  Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, within sixty (60) days after the Effective Date, and serve on the Plan Administrator, the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claims; *provided* that the Plan Administrator may pay Professionals in the ordinary course of business, for any work expressly authorized by the Plan Administrator performed on and after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash.  Once Allowed by the Bankruptcy Court, Professional Fee Claims incurred prior to the Effective Date shall be paid by Debtors' counsel from Cash tendered by the Debtors and held in such counsel's trust account (the "Professional Fee Reserve") as of the Effective Date for the purpose of satisfying Accrued Professional Compensation.  If the amounts held in the Professional Fee Reserve for the purpose of satisfying such Allowed Accrued Professional Compensation is insufficient to pay all such Allowed Accrued Professional Compensation in full in Cash, the Plan Administrator shall promptly pay any unpaid balance of such Allowed Accrued Professional Compensation from the Distributable Assets.  The Professional Fee Reserve shall be free and clear of all Liens and claims (including, without limitation, those of the Prepetition Term Loan Secured Parties), to be funded on the Effective Date by the Debtors.  Nothing in the Plan is intended to, nor shall the Plan, modify any prior relief provided by the Court pursuant to the Interim Professionals Compensation Orders.  For the

avoidance of doubt, nothing in the Plan is intended to impose any further obligations, process and requirements with respect to the compensation of the Debtors' Chief Restructuring Officer and any additional personnel of MERU, LLC utilized by the Debtors.

### 2. Priority Tax Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors prior to the Effective Date and the Plan Administrator as of the Effective Date:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (b) treatment in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; or (c) such other less favorable treatment as agreed to in writing by such Holder and the Debtors prior to the Effective Date or the Plan Administrator after the Effective Date.

## B. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### 1. Summary

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified as described in Article IV.A above.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

### Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition Term Loan Secured Claims | Impaired | Entitled to Vote |
| 4 | NGP Unsecured Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests in the Debtors | Impaired | Deemed to Reject |

2.      **Separate Classification of Certain Claims**

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within the Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject the Plan and receiving Plan Distributions.

3.      **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

4.      **Voting; Presumptions; Solicitation in Good Faith**

Only Holders of Allowed Claims in Class 3, Class 4 and Class 5 are entitled to vote to accept or reject the Plan.  Holders of Claims in the Voting Class will receive Ballots containing detailed voting instructions.

The Debtors will solicit votes on the Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  Accordingly, the Debtors and each of their Related Persons shall be entitled to, and upon the Confirmation Date will be granted, the protections of section 1125(e) of the Bankruptcy Code.

5.      **Cramdown**

If any Class of Claims or Equity Interests is deemed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Debtors intend to (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

6.      **Classification and Treatment of Claims and Equity Interests**

(a)      Class 1 - Other Priority Claims

- *Classification*:  Class 1 consists of the Other Priority Claims.

- *Treatment*:  The legal, equitable and contractual rights of the Holders of Class 1 Claims are unaltered by the Plan.  With respect to each Allowed Class 1 Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 1 Claim is an Allowed Class 1 Claim on the Effective Date or (ii) the date on which such Class 1 Claim becomes an Allowed Class 1 Claim, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtors prior to the Effective Date or the Plan Administrator on and after the Effective Date:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtors prior to the Effective Date or the Plan Administrator on and after the

Effective Date and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code. The Debtors shall be jointly and severally liable for the payment of Allowed Other Priority Claims.

- *Impairment and Voting*: Class 1 is an Unimpaired Class and the Holders of Class 1 Claims are conclusively deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

(b)    <u>Class 2 - Other Secured Claims</u>

- *Classification*:  Each Class 2 Claim is an Other Secured Claim against the Debtors. This Class will be further divided into subclasses designated by letters of the alphabet (Class 2A, Class 2B and so on), so that each holder of any Allowed Other Secured Claim against each Debtor is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class.

- *Treatment*:  The legal, equitable and contractual rights of the Holders of Class 2 Claims are unaltered by the Plan.  With respect to each Allowed Class 2 Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 2 Claim is an Allowed Class 2 Claim on the Effective Date or (ii) the date on which such Class 2 Claim becomes an Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, and in exchange for, such Allowed Class 2 Claim, at the election of the Debtors prior to the Effective Date or the Plan Administrator on and after the Effective Date: (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) return of the collateral securing such Allowed Class 2 Claim; (C) such other less favorable treatment as to which the Debtors prior to the Effective Date or the Plan Administrator on and after the Effective Date and the Holder of such Allowed Class 2 Claim will have agreed upon in writing; (D) any defaults shall be cured and shall be paid or satisfied in accordance with and pursuant to the terms of the applicable agreement between the Debtors prior to the Effective Date or the Plan Administrator on and after the Effective Date and the Holder of the Allowed Class 2 Claim and such Claim shall be Reinstated; or (E) Reinstatement or such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.

- *Impairment and Voting*:  Class 2 is an Unimpaired Class and the Holders of Class 2 Claims are conclusively deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 2 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

(c)   Class 3 – Prepetition Term Loan Secured Claims

- *Classification*:   Class 3 consists of the Prepetition Term Loan Secured Claims.

- *Treatment*:  On or after the Effective Date in accordance with the terms of the Plan, each Holder of an Allowed Class 3 Claim shall receive in full satisfaction, settlement, and in exchange for, such Allowed Class 3 Claim, Cash equal to the value, net of the Post-Effective-Date Debtors' and Plan Administrator's costs and expenses, including fees and expenses of counsel, of preserving, disposing of or monetizing such collateral, realized, if any, by the Plan Administrator from any remaining collateral that secured such Allowed Class 3 Claim prior to the Effective Date.

  The Holders of Class 3 Claims shall continue to retain Liens against the specific applicable Distributable Assets (other than, for the avoidance of doubt, the Administrative / Priority / Other Distributions Reserve, the Post-Effective-Date Liquidating Expense Reserve, the Professional Fee Reserve, and the Class 5 Fund) until the Allowed Class 3 Claims have been paid in full or otherwise satisfied and extinguished.

- *Impairment and Voting*:  Class 3 is an Impaired Class and the Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

(d)   Class 4 – NGP Unsecured Claims

- *Classification*:  Class 4 consists of the NGP Unsecured Claims.

- *Treatment*: Notwithstanding any other provision of the Plan, on the Effective Date, (i) all NGP Unsecured Claims shall be deemed satisfied in full on the terms set forth in the Global Settlement and as approved by the Global Settlement Approval Order, (ii) NGP shall not give or get a release under this Plan and the only releases given or received by NGP shall be as set forth in the Global Settlement, (iii) the Global Settlement shall be binding upon the parties thereto, including without limitation the Debtors, the Plan Administrator, and the Post Effective Date Debtors.

- *Impairment and Voting*:  Class 4 is an Impaired Class and the Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

(e)   Class 5 – General Unsecured Claims

- *Classification*:  Class 5 consists of the General Unsecured Claims, which includes the Prepetition Lenders Deficiency Claims.

- *Treatment*: On or as soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim (excluding the Prepetition Lenders Deficiency Claims) shall receive, as the sole distribution under the Plan on account of such Allowed General

Unsecured Claim, a Pro Rata share of the Class 5 Fund (calculated as a percentage of all Allowed General Unsecured Claims excluding the Prepetition Lenders Deficiency Claims). Aggregate distributions to each Holder of an Allowed General Unsecured Claim shall not exceed the full Allowed amount of such General Unsecured Claim.

- *Impairment and Voting*:  Class 5 is an Impaired Class and the Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

(f)     Class 6 – Intercompany Claims

- *Classification*:  Class 6 consists of Intercompany Claims.

- *Treatment*:    In full and final satisfaction of all Allowed Intercompany Claims, on the Effective Date, such Claims shall be, at the option of the Debtors or the Post-Effective-Date Debtors, either reinstated, adjusted, otherwise set off, settled, distributed, or contributed, or canceled, released, or discharged without any distribution on account of such Claims.

- *Impairment and Voting*:  Class 6 is an Impaired Class and the Holders of Class 6 Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holders of Class 6 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

(g)     Class 7 – Equity Interests

- *Classification*:  Class 7 consists of the Equity Interests in the Debtors.

- *Treatment*:  Holders of Interests in each Debtor shall receive no distributions under the Plan, and on the Effective Date, all Interests in the Debtors shall be deemed cancelled.

- *Impairment and Voting*:  Class 7 is an Impaired Class and the Holders of Class 7 Equity Interests are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Holders of Class 7 Equity Interests will not be entitled to vote to accept or reject the Plan and will not be solicited.

**7.     Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to contracts to be assumed under the Plan.

**8.     Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(a) of the

Bankruptcy Code, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Post-Effective-Date Debtors reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

## C.    ACCEPTANCE OR REJECTION OF THE PLAN

### 1.    Presumed Acceptance of Plan

Classes 1 and 2 are Unimpaired under the Plan, and are, therefore, presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

### 2.    Presumed Rejection of Plan

Classes 6 and 7 are Impaired and receive no distributions under the Plan. Therefore, Classes 6 and 7 are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### 3.    Voting Classes

Each Holder of an Allowed Claim as of the applicable Voting Record Date in the Voting Classes (Classes 3, 4 and 5) will be entitled to vote to accept or reject the Plan.

### 4.    Acceptance by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class (or, as applicable sub-class) of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims actually voting in such Class (or, as applicable, sub-class) voted to accept the Plan.

### 5.    Confirmation Pursuant to Section 1129(B) of the Bankruptcy Code

The Debtors shall seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class (or, as applicable, sub-class) or Equity Interest that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtors reserve the right to modify the Plan or any Exhibit thereto or the Plan Supplement in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## D.    MEANS FOR IMPLEMENTATION OF THE PLAN

### 1.    Continued Existence of Debtors and Revesting of Assets

On and after the Effective Date, subject to the requirements of the Plan, each Debtor will continue to exist as a separate limited liability company and shall retain all of the powers of an LLC under applicable non-bankruptcy law, and without prejudice to any right to amend its corporate charter, bylaws or other organizational documents, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence. The Plan Administrator shall be deemed to have been admitted as the sole officer, director and manager of each Debtor under applicable non-bankruptcy law and shall be authorized to exercise all of the attendant rights and powers including as provided in the Plan. Further, each of the Debtors' charters shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code. Notwithstanding any provision of the Plan, from and after the Effective Date, the Plan

- 34 -

Administrator, in his, her or its discretion, may immediately or subsequently dissolve all or some of the Debtors, without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, members, partners, equity holders, and/or any other parties; provided, however, the Plan Administrator in his, her or its discretion shall be authorized to take any and all actions necessary or desirable in relation to dissolution of the Debtors.

Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Debtors and their Estates, including any interests in subsidiaries and affiliates and any Causes of Action, will vest and revest in the Post-Effective-Date Debtors and the Estates free and clear of all Claims, Liens, charges, other encumbrances and Equity Interests. Neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtors, which shall be continued under the control of the Plan Administrator following the Effective Date subject to the terms of the Plan.

2.      **Corporate Action**

On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors or equity holders of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the directors, officers, employees or agents of the Debtors.

Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (i) any existing directors, officers, managers and employees of the Debtors will be deemed to have resigned on the Effective Date without any further corporate action, (ii) the Plan Administrator shall be deemed the sole director, officer, manager and representative of the Debtors to exercise the rights, power and authority of the Debtors under applicable provisions of the Plan and bankruptcy and non-bankruptcy law, and (iii) all matters provided under the Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying the Debtors' charters, bylaws and/or other organizational documents such that the provisions of the Plan can be effectuated. The Plan shall be administered by the Plan Administrator, and all actions taken thereunder in the name of the Debtors shall be taken through the Plan Administrator. All corporate governance activities of the Debtors shall be exercised by the Plan Administrator in his, her or its discretion, subject to the terms of the Plan.

On and after the Effective Date, the Plan Administrator may, in the name of the Debtors, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Plan Administrator may pay all Post-Effective-Date Liquidating Expenses without further notice to creditors or Holders of Interests or approval of the Bankruptcy Court. The Post-Effective-Date Liquidating Expenses will be paid out of the Distributable Assets.

From and after the Effective Date, (i) the Debtors, for all purposes, shall be deemed to have withdrawn their business operations from any state in which they were previously conducting or are registered or licensed to conduct their business operations, and the Debtors shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) the Debtors shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

- 35 -

3.      **Limited Substantive Consolidation**

Under the Plan, there shall be limited substantive consolidation of the Debtors' Estates solely for the purposes of voting on the Plan by the Holders of Claims and making Distributions to Holders of Claims. Specifically, on the Effective Date, (i) all assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors; and (vii) for purposes of section 548(a)(1)(B) of the Bankruptcy Code, any payment made by one Debtor shall be treated as if made by the Debtor obligated for such payment. Holders of Allowed Claims entitled to Distributions under the Plan shall be entitled to their share of assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Combined Plan and Disclosure Statement) affect the legal and corporate structures of the Debtors.

The Plan shall serve as a motion seeking entry of an order substantively consolidating the Chapter 11 Cases for distribution and voting purposes as provided above. Unless an objection to substantive consolidation is made in writing by any Creditor or Interest holder affected by the Plan on or before the applicable objection deadline set by the Court, an order substantively consolidating the Chapter 11 Cases for distribution and voting purposes (which order may be the Confirmation Order) may be entered by the Bankruptcy Court.

Notwithstanding the limited substantive consolidation herein, substantive consolidation shall not affect the obligation of each and every one of the Debtors under 28 U.S.C. § 1930(a)(6) until a particular case is closed, converted, or dismissed.

4.      **Plan Administrator**

The Plan Administrator shall attempt to liquidate, diligently and for the highest value reasonably possible, the remaining Distributable Assets on behalf of the Estates. The Plan Administrator may liquidate or abandon the Distributable Assets, including Causes of Action, based on the Plan Administrator's business judgment, without the need for further order of the Bankruptcy Court.

*Appointment of the Plan Administrator*.  The Plan Administrator shall be selected by the Debtors, with the consent of the Prepetition Term Loan Lenders, whose identity will be disclosed as part of the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.

*Powers of the Plan Administrator*.  The Plan Administrator shall be a representative of the Post-Effective-Date Debtors and the Estates in accordance with Section 1123 of the Bankruptcy Code and shall, subject to the terms of the Plan, have the power to make all decisions with respect to the Post-Effective-Date Debtors, the Estates and the Distributable Assets, including prosecution of any Causes of Action.

The duties and powers of the Plan Administrator shall include the following (without need of further Court approval):

(i)      To exercise all power and authority that may be exercised, to commence all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtors or Estates prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, or manager of the Debtors with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and managers, including consummating the Plan and all transfers thereunder on behalf of the Debtors and the Estates;

(ii)      To wind-up the affairs of the Debtors and the Estates to the extent necessary as expeditiously as reasonably possible;

(iii)      To maintain all accounts, make all distributions to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Secured Claims and General Unsecured Claims, and any other creditors of the Debtors in accordance with the Plan, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtors;

(iv)      To use, manage, sell, abandon, convert to Cash and/or otherwise dispose of the Distributable Assets for the purpose of making distributions, and fully consummating the Plan;

(v)      To take all steps necessary to terminate the corporate existence of the Debtors and to wind-up the Post-Effective-Date Debtors;

(vi)      To prosecute objections to Claims, including Administrative Expense Claims, and compromise or settle any such Claims (disputed or otherwise);

(vii)      To investigate and prosecute any and all Causes of Action of the Post-Effective-Date Debtors and/or the Estates and compromise or settle any Causes of Action;

(viii)      To prepare and file tax returns for the Debtors to the extent required by law;

(ix)      To employ and compensate any and all such professionals and agents as the Plan Administrator, in his, her or its sole discretion, deems reasonably necessary to perform his, her or its duties under the Plan without further order of the Bankruptcy Court;

(x)      To satisfy and pay all Post-Effective-Date Liquidating Expenses; and

(xi)      Take all other actions not inconsistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable in connection with the administration of the Plan, including filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases.

**5.      Source of Funding; Funding and Consideration Provided by the Prepetition Term Loan Lenders**

The source of all distributions and payments under the Plan will be (i) the Distributable Assets and the proceeds thereof, including the Debtors' Cash on hand and proceeds from the sale or other disposition of the Debtors' assets, including the prosecution of Causes of Action, and (ii) the Plan Funding.

**6.      Causes of Action Retained**

Unless a Cause of Action (including the right to object to any Claim asserted against the Estates) is, in writing, expressly waived, relinquished, released, exculpated, assigned,

compromised, or settled in the Plan, or in a Final Order, all rights of the Debtors and Estates from and after the Effective Date with respect to all Causes of Action are expressly preserved for the benefit of, retained by, and fully vested in, the Post-Effective-Date Debtors and the Estates. Without limiting the generality of the foregoing, the Debtors expressly reserve such retained Cause of Action for later adjudication by the Post-Effective-Date Debtors and Plan Administrator, including, without limitation, Causes of Action not specifically identified or described in the Plan, the Disclosure Statement, any Plan Supplement or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order). For the avoidance of doubt, any Agspring Released Claims (as defined in the Global Settlement) against NGP, Clark or Linville are waived and released pursuant to the terms of the Global Settlement.

### 7.    Dissolution of Debtors; Final Decree

On or after the Effective Date, the Plan Administrator may file a certification with the Bankruptcy Court that it has substantially administered the Plan for any Debtor, and such Debtor shall be deemed dissolved without further order of the Bankruptcy Court or action by the Plan Administrator, including the filing of any documents with the secretary of state for the state in which such dissolved Debtor(s) are formed or any other jurisdiction.

At any time following the Effective Date, the Plan Administrator, on behalf of the Post-Effective-Date Debtors and Estates, shall be authorized to file a motion for the entry of a final decree closing one or more of the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code. Upon entry of such final decree, such Debtor shall be deemed dissolved without further order of the Bankruptcy Court or action by the Plan Administrator, including the filing of any documents with the secretary of state for the state in which such dissolved Debtor(s) are formed or any other jurisdiction.

### 8.    Treatment of Vacant Classes

Any Claim or Interest in a Class that is considered vacant under Article IV.B.3 of the Plan shall receive no Plan Distribution.

## E.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1.    Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, *except* for those Executory Contracts and Unexpired Leases that:

1.    have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;

2.    have been assumed by order of the Bankruptcy Court;

3.    are the subject of a motion to assume or motion to reject pending on the Effective Date;

4.     are identified on a schedule of assumed contracts in the Plan Supplement; or

5.     are explicitly assumed pursuant to the terms of the Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract and Unexpired Lease assumed pursuant to this Article of the Plan will revest in and be fully enforceable by the Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

## 2. Claims On Account of the Rejection of Executory Contracts or Unexpired Leases

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the Effective Date or such other date set by Final Order. The Debtors or the Post-Effective-Date Debtors will provide notice of such rejection and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtors, the Post-Effective-Date Debtors, or the Estates, and the Debtors, the Post-Effective-Date Debtors, and the Estates and property will be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article IV.G.4 of the Plan. All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

## 3. Preservation of D&O Liability Insurance Policies

Notwithstanding anything to the contrary in the Plan, as of the Effective Date, all rights of the Debtors and their Estates in the D&O Liability Insurance Policies are fully and expressly preserved under the Plan. Confirmation and effectiveness of the Plan will not discharge, impair, or otherwise modify any rights of the Debtors, their Estates, the Post-Effective-Date Debtors, or any other beneficiary under the D&O Liability Insurance Policies. For the avoidance of doubt, the Debtors and their Estates reserve all of their rights, claims, offsets, setoffs, defenses, counterclaims and all other interests relating to any and all D&O Liability Insurance Policies.

**F.    DEBTOR RELEASE AND RELATED PROVISIONS**

**1.    General**

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

**2.    Release**

**Notwithstanding anything in the Combined Plan and Disclosure Statement to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, by, through, for, or because of the foregoing entities (collectively, the "Debtor/Estate Releasors"), shall release (the "Debtor/Estate Release") each Released Party, and each Released Party is deemed released by the Debtor/Estate Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor/Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have been legally entitled to assert in its own right, or on behalf of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party (including pursuant to the Prepetition Term Loan Agreement), the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of, or solicitation of votes on, the Combined Plan and Disclosure Statement or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; provided, that the foregoing Debtor/Estate Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and further provided that nothing herein shall act as a discharge of the Debtor.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all holders of**

Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

## G.    THIRD PARTY RELEASE, EXCULPATION & INJUNCTION

### 1.    Third Party Release

As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate the liquidation of the Debtors and the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties are deemed forever released and Claims against such Released Parties waived by (i) the Holders of all Claims who vote to accept the Plan and do not opt out of granting the releases set forth in the Plan (but excluding NGP, Clark and Linville who shall not give any releases under this Plan or the Confirmation Order and shall only give releases to the extent set forth in the Global Settlement) and (ii) each of the other Released Parties (but excluding the Related Persons of the Released Parties), from any and all claims, causes of action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to the Debtors, the Chapter 11 Cases, any sale of the Debtors' assets, the Disclosure Statement, the Plan, or the solicitation of votes on the Plan, *provided, however*, that the foregoing provisions of this release shall not operate to waive or release (i) any claims or causes of action arising from actual fraud, gross negligence, or willful misconduct of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) any Claims that any Person or Entity may assert against the Debtors, and/or (iii) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan.

### 2.    Discharge of Claims

Nothing contained in the Plan shall be deemed to constitute a discharge of the Debtors under section 1141(d)(3) of the Bankruptcy Code.

### 3.    Exculpation

Without affecting or limiting the releases in Article IV.F or IV.G.1 hereof, the Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to the Chapter 11 Cases, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, pursuing or effecting the Consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, pursuing confirmation of the Plan or soliciting votes on the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct; *provided, further,* that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and

- 41 -

responsibilities (if any) under the Plan, and such reasonable reliance shall form a defense to any such claim, Cause of Action, or liability; *provided, further*, however, that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

### 4.    Injunction

Except as otherwise provided in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner, any suit, action or other proceeding, or creating, perfecting or enforcing any lien of any kind, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, equity interest, or remedy released or to be released, exculpated or to be exculpated, pursuant to the Plan or the Confirmation Order. All injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date. Notwithstanding any other provision of this Plan, the Debtors shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).

## H.    PROVISIONS GOVERNING DISTRIBUTIONS

### 1.    Dates of Distributions

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions provided in the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Debtors shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Confirmation Order. All payments and all distributions made by the Plan Administrator or the Distribution Agent under the Plan shall be in full and final satisfaction of all Claims against the Debtors.

### 2.    Distribution Agent

Except as provided in the Plan, all distributions under the Plan shall be made by the Plan Administrator or the Distribution Agent. The Plan Administrator or the Distribution Agent shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

The Plan Administrator and the Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals, transfer agents and registrars to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Plan Administrator and the Distribution Agent by order

of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator and the Distribution Agent to be necessary and proper to implement the provisions hereof.

### 3.        Cash Distributions

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Plan Administrator, except that Cash payments made to foreign creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### 4.        De Minimis Distributions; Rounding of Payments

Whenever payment or distribution of a fraction of a dollar of value in the form of Cash would otherwise be called for, the actual payment or distribution shall reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one-half of one dollar and a rounding up of such fraction to the nearest whole dollar if the amount is one-half or more of one dollar.  Notwithstanding anything herein to the contrary, the Plan Administrator shall not be required to make a Distribution if the amount to be distributed is or has an economic value of less than fifty ($50).  Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent Distributions.

### 5.        Distributions on Account of Claims Allowed After the Effective Date

Except as otherwise agreed by the Holder of a particular Claim or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order. Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### 6.        General Distribution Procedures

The Plan Administrator or the Distribution Agent shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise.  All Cash and other property held by the Post-Effective-Date Debtors for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

### 7.        Address for Delivery of Distributions

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any proofs of claim Filed by such Holders (to the extent such proofs of claim are Filed in the Chapter 11 Cases), (2) at the addresses set forth in any written notices of address change delivered to the Debtors or the Plan Administrator, or (3) at the addresses in the Debtors' or the Plan Administrator's books and records.

### 8.        Undeliverable Distributions and Unclaimed Property

If the distribution to the Holder of any Allowed Claim is returned to the Debtors, the Plan Administrator or the Distribution Agent as undeliverable, no further distribution shall be made to such Holder, and the Plan Administrator and Distribution Agent shall have no obligation to make any further distribution to the Holder, unless and until the Plan Administrator or Distribution Agent is notified in writing of such Holder's then current address.  The Debtors, the Plan Administrator,

and the Distribution Agent shall have no independent obligation to check or identify a current mailing address for any Holder of an Allowed Claim.

Any Entity that fails to claim any Cash or Securities within one hundred and eighty (180) days from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under the Plan. Entities that fail to claim Cash or Securities under the Plan shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors, the Post-Effective-Date Debtors, or against any Holder of an Allowed Claim to whom distributions are made by the Post-Effective-Date Debtors, Plan Administrator or Distribution Agent.

## 9.     Withholding Taxes

In connection with the Plan, to the extent applicable, the Post-Effective-Date Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. The Post-Effective-Date Debtors and Plan Administrator shall be entitled to deduct any U.S. or non-U.S. federal, state or local withholding taxes from any payments made with respect to Allowed Claims, as appropriate. A Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan shall not receive any distribution under the Plan unless such Holder has provided to the Plan Administrator such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Post-Effective-Date Debtors to comply with applicable tax reporting and withholding laws (including an IRS Form W-9 or (if the holder is a non-U.S. Person) an appropriate IRS Form W-8 (unless such Person is exempt from information reporting requirements under the Tax Code)) and so notifies the Plan Administrator. If such Holder does not provide such taxpayer identification number and such other information within the time and in the manner reasonably required by the Plan Administrator, such Holder will forfeit its interest in any Distribution and shall not receive any Distribution under the Plan. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. In connection with any distribution under the Plan, the Post-Effective-Date Debtors and Plan Administrator may take whatever actions are necessary to comply with applicable U.S. federal, state, local and non-U.S. tax withholding obligations.

Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

## 10.     Setoffs

The Post-Effective-Date Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that any Debtor or the Estate may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Post-Effective-Date Debtors of any such claims, rights and Causes of Action that any Debtor or the Post-Effective-Date Debtors possesses against such Holder. Any Holder of an Allowed Claim subject to such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

11.     **Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to the Plan Administrator or the Distribution Agent: (x) evidence reasonably satisfactory to the Plan Administrator or the Distribution Agent of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by the Plan Administrator or the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Allowed Equity Interest. Upon compliance with the foregoing as determined by the Debtors by a Holder of a Claim or Equity Interest evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to the Post-Effective-Date Debtors, the Plan Administrator and the Distribution Agent.

I.     **PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

1.     **Disputed Claims**

The Plan Administrator may, in his, her or its discretion, file with the Bankruptcy Court an objection to the allowance of any Disputed Claim prior to the Claim Objection Deadline, or any other appropriate motion or adversary proceeding with respect thereto. All such objections shall be litigated to Final Order, provided, however, that the Plan Administrator may compromise, settle, withdraw or resolve any objections to Claims without further order of the Bankruptcy Court. Unless otherwise provided in the Confirmation Order, the Plan Administrator is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

2.     **Procedures Regarding Disputed Claims**

No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a Final Order or by stipulation between the Debtors and the Holder of the Claim. No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

3.     **Allowance and Estimation of Claims**

Following the date on which a Disputed Claim becomes an Allowed Claim after the Distribution Date, the Plan Administrator shall pay directly to the Holder of such Allowed Claim the amount provided for under the Plan, as applicable, and in accordance therewith.

_Allowance of Claims:_ Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Debtors and Post-Effective-Date Debtors will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any Claim or Equity Interest immediately before the Effective Date, except with respect to any Claim or Equity Interest deemed Allowed under the Plan or by orders of the Bankruptcy Court. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a

Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

*Prosecution of Objections to Claims:* From and after the Effective Date, the Plan Administrator will have the authority to File objections to Claims and settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in an Unimpaired Class or otherwise. From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court. The Plan Administrator will have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

*Estimation:* The Plan Administrator may, at any time and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously Filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

## J.    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### 1.    Conditions Precedent

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions below:

a.    The Plan and Plan Supplement and all schedules, documents, supplements and exhibits to the Plan will have been filed by the Debtors and the Plan shall not have any material amendments or modifications from the form attached to the Global Settlement without the consent of NGP, Clark, and Linville, which such consent may not be unreasonably withheld.

b.    The Confirmation Order shall have been entered and shall be in full force and effect, and shall not have been reversed, stayed, modified or vacated on appeal.

c.    The Global Settlement Approval Order shall have been entered and shall be in full force and effect, and shall not have been reversed, stayed, modified or vacated on appeal.

d.    With respect to all other documents and agreements necessary to implement the Plan: (1) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents and agreements shall have been tendered for delivery to the required parties and have been approved by any required parties and, to the extent required, filed with and approved by the applicable authorities in the relevant jurisdiction; and (3) such documents and agreements shall have been effected or executed.

e.    The Escrow Funds have been distributed to the Debtors in accordance with the Global Settlement Approval Order.

### 2.    Waiver of Conditions

The conditions to Confirmation and Consummation of the Plan set forth in this Article may be waived by the Debtors solely if they have the prior consent of NGP, Clark and Linville and, as applicable pursuant to the DIP Orders, the Prepetition Term Loan Secured Parties, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

### 3.    Substantial Consummation

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

### 4.    Effect of Non-Occurrence of Conditions

If the Confirmation or Consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will:  (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (c) constitute an Allowance of any Claim or Equity Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## K.    BINDING NATURE OF PLAN

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS AND SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

## L.    RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Post-Effective-Date Debtors, and the Plan as legally permissible, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date; provided, however, that, from and after the Effective Date, the Plan Administrator shall pay professionals in the ordinary course of business for any work expressly authorized by the Plan Administrator after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtors are party or with respect to which the Debtors may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Plan Administrator after the Effective Date, provided that the Post-Effective-Date Debtors and Plan Administrator shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      resolve any Case, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.      hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10.     issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.     enforce the terms and condition of the Plan, the Confirmation Order, the Global Settlement, and the Global Settlement Approval Order;

12.     resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, and other provisions contained in Article IV.F and G hereof and enter such orders or take such other actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

13.     approve any settlements or compromises entered into by the Plan Administrator pursuant to the Plan;

14.     enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

15.     resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

16.    enter an order or orders concluding or closing the Chapter 11 Cases.

## M.    MISCELLANEOUS PROVISIONS

### 1.    Payment of Statutory Fees

All fees pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("U.S. Trustee Fees") due and payable before the Effective Date shall be paid in full in Cash by the Debtors on the Effective Date.  On or after the Effective Date, all U.S. Trustee Fees shall be paid in full in Cash by the Debtors or Post-Effective-Date Debtors, as applicable, when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, each of the Post-Effective-Date Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each of the Debtors or Post-Effective-Date Debtors, as applicable, shall remain obligated to pay U.S. Trustee Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's (or Post-Effective-Date Debtor's, as applicable) case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. For the avoidance of doubt, in the Plan Administrator's discretion, the Plan Administrator may request the Court at any particular time to close one specific Chapter 11 Case, more than one at a time, or all of the Chapter 11 Cases other than one Debtor's Chapter 11 Case, in compliance with Local Rule 3022-1.  Notwithstanding anything to the contrary in the Plan, (i) U.S. Trustee Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to U.S. Trustee Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Combined Plan and Disclosure Statement.

### 2.    Modification of the Plan

Effective as of the date hereof: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  Notwithstanding the foregoing or anything herein to the contrary the Debtors shall not make or seek to make any material amendments or modifications to the Plan or Confirmation Order without the consent of NGP, Clark and Linville, which such consent may not be unreasonably withheld.  A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of such Claim or Equity Interest of such Holder.

### 3.    Revocation of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if confirmation or Consummation of the Plan does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or

- 49 -

(c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

### 4. Entire Agreement

Except as otherwise addressed in any prior order of the Bankruptcy Court in the Chapter 11 Cases or described herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 5. Successors and Assigns

The Plan shall be binding upon and inure to the benefit of the Debtors, the Post-Effective-Date Debtors and their respective successors and assigns.  The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

### 6. Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Plan is Consummated.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors have any liability thereunder.  Except as explicitly provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors or the Estates under any executory or non-executory contract or unexpired or expired lease.  Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors under any executory or non-executory contract or unexpired or expired lease.

### 7. Further Assurances

The Debtors and all Holders of Claims receiving distributions hereunder shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### 8. Nonseverability

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it

may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the Debtors' consent, and (3) nonseverable and mutually dependent.

### 9.    Service of Documents

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email transmission, when received, addressed as follows:

> Agspring, LLC
> c/o Bruce Chapin
> 5101 College Boulevard
> Leawood, KS  66211
> Email: bchapin@agspring.com
>
> with copies to:
> Dentons US LLP
> 601 S. Fuguero Street
> Suite 2500
> Los Angeles, CA 90017-5704
> Email: tania.moyron@dentons.com
>
> Plan Administrator
> Kyle Sturgeon
> Meru, LLC
> 1372 Peachtree Road NE
> Atlanta, GA 30309
> (404) 452-5802
> Email: kyle@wearemeru.com

### 10.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.

### 11.    Exhibits / Plan Supplement

All exhibits to the Plan, and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference and be fully enforceable as if stated in full herein.

12.     **Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

13.     **Tax Reporting and Compliance**

The Debtors are authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors are for all taxable periods ending after the Petition Date through, and including, the Effective Date.

14.     **Controlling Document**

In the event of an inconsistency between the Plan, on the one hand, and the Plan Supplement, any other of the Plan Documents, or any other instrument or document created or executed pursuant to the Plan, on the other hand, or between the Plan and the Disclosure Statement, the Plan shall control. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern. For the avoidance of doubt, nothing in the Plan or the Confirmation Order shall be construed to amend, modify, or abrogate any prior order of the Bankruptcy Court in the Chapter 11 Cases. To the extent there is any inconsistency between the Plan and the Global Settlement, the Global Settlement and the Global Settlement Approval Order shall control over the Plan, the Confirmation Order, the Plan Supplement, and any other document connected or related thereto.

## N.     CONFIRMATION PROCEDURES

1.     **Confirmation Hearing**

**The Confirmation Hearing has been scheduled to commence on December 11, 2024 at 2:00 p.m. (prevailing Eastern time).** The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest. Notwithstanding the foregoing or anything herein to the contrary, the Debtors shall not make or seek to make any material amendments or modifications to the Plan or Confirmation Order without the consent of NGP, Clark and Linville, which such consent may not be unreasonably withheld.

2.     **Filing Objections to the Plan**

**The deadline for objecting to Confirmation of the Plan is July 8, 2024 at 4:00 p.m. (prevailing Eastern time).** Subject to order of the Bankruptcy Court, any objection to confirmation of the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the applicable Debtor, the name of the objecting party and the amount and nature of the Claim of such Entity or the amount of Equity Interests held by such Entity; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan; and (v)

be filed with the Bankruptcy Court and served by no later than the deadline to Confirmation set by the Bankruptcy Court on the Notice Parties, which service may be by way of the CM/ECF system, with courtesy copies by email.

> CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

## O.   STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtors believe that: (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtors have complied or will comply with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. Specifically, the Debtors believe that the Plan satisfies or will satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code;

- The Debtors have complied and will comply with the applicable provisions of the Bankruptcy Code;

- The Plan has been proposed in good faith and not by any means forbidden by law;

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been or will be disclosed to the Bankruptcy Court, and any such payment: (a) made before the confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable if it is to be fixed after confirmation of the Plan;

- The Debtors will disclose the identity, compensation, and affiliations of the person proposed to serve, after confirmation of the Plan, as the Plan Administrator. The appointment to such office by such person, will be consistent with the interests of creditors and with public policy;

- Either each Holder of an Impaired Claim against the Debtors or Equity Interest in the Debtor will (A) have accepted the Plan or will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code, or (B) if section 1111(b)(2) applies to such Claim, receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such Holder's interest in the estate's interest in the property that secures such claims;

- Each Class of Claims that is entitled to vote on the Plan will either have accepted the Plan or will not be Impaired under the Plan, or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code;

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Expense Claims and Priority Claims will be paid in full in Cash on the Effective Date, or as soon thereafter as is reasonably practicable;

- At least one Class of Impaired Claims will accept the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class; and

- The Debtors have paid or will pay all fees payable under section 1930 of title 28, and the Plan provides for the payment of all such fees.

**1.    Best Interests of Creditors Test/Liquidation Analysis**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the bankruptcy court find, as a condition to confirmation of a chapter 11 plan, that each holder of a claim or equity interest in each impaired class: (i) has accepted the plan; or (ii) among other things, will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such Person would receive if each of the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

The Plan satisfies the best interest of creditors test.  The Plan provides a greater recovery to the Holders of Allowed General Unsecured Claims than such Holders would receive under a liquidation under Chapter 7, primarily because the Plan provides for the agreed treatment of the Class 4 NGP Unsecured Claims based on the terms of the Global Settlement and the Class 5 Fund (to be funded by the Prepetition Term Loan Lenders for the benefit of Holders of General Unsecured Claims other than the Prepetition Lenders Deficiency Claims), and avoids additional administrative expenses and commissions associated with the appointment of a Chapter 7 trustee, while increasing the efficiency of administering the Debtors' remaining assets for the benefit of creditors.   Based on various assumptions, the Debtors estimate that the holders of General Unsecured Claims (excluding the Prepetition Lenders Deficiency Claims) will likely receive a recovery of approximately 47%.

Such recoveries to general unsecured creditors under the Plan are expected to be more than such creditors' recovery in a Chapter 7 liquidation.  If the Chapter 11 Cases were converted to Chapter 7 cases, creditors would not receive the benefit of the Plan Funding and the Debtors' estates would incur the costs of payment of a statutorily allowed sliding-scale commission to the Chapter 7 trustee, as well as the additional costs of replacement counsel and other professionals retained by the trustee to get up to speed and assist with the liquidation.[12] Such amounts, together with other wind-down costs, would exceed the amount of fees and expenses that will be incurred by the Plan Administrator and his, her or its professionals and agents in completing the liquidation of the remaining assets and otherwise winding up the affairs of the Debtors. Additionally, the Debtors' estates would likely suffer additional delays, as a Chapter 7 trustee and his/her counsel need time to develop a necessary learning curve in order to complete the administration of the Estates.  The Debtors' Estates would continue to be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for professionals) which will constitute Allowed Claims in any Chapter 7 cases.  In short, the primary consequence of liquidating the Debtors under Chapter 7 of the Bankruptcy Code would be to lose the Plan Funding, incur

---

[12]   The Chapter 7 trustee would likely engage his or her own advisors and professionals that would add more professional fees and expenses that would have to be paid prior to any distributions to holders of Allowed General Unsecured Claims.

additional administrative expenses and other costs, and reduce the amounts payable to holders of General Unsecured Claims.

To assist the Bankruptcy Court in making the findings required under section 1129(a)(7) of the Bankruptcy Code, the Debtors, with assistance from their professionals, prepared a Liquidation / Plan Recovery Analysis, a copy of which is attached hereto as **Exhibit B**. The Liquidation / Plan Recovery Analysis incorporates certain assumptions relating to the risks and costs associated with a liquidation process and the estimated proceeds that may be realized as a result of a liquidation as compared to the projected recoveries under the Plan.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

## 2.    Feasibility

Under Section 1129(a)(11) of the Bankruptcy Code, the Debtors must show that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Plan). The Plan clearly complies with this requirement because all of the Debtors' remaining assets will be liquidated or otherwise disposed of and the proceeds thereof will be distributed to creditors pursuant to the terms of the Plan and, provided the Plan is confirmed and consummated, the Estates will no longer exist to be subject to future reorganization or liquidation.

On the Effective Date, because of the Plan Funding, the Debtors believe they will have sufficient funds to satisfy Claims pursuant to the treatment set forth in the Plan as well as to implement the Plan. Specifically, the Debtors project that they will have approximately $1,427,352 million in cash in the aggregate as of the Effective Date. *See* **Exhibit B** (Liquidation / Plan Recovery Analysis).

Accordingly, the Debtors believe that the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code and will present additional supporting evidence prior to or at the Confirmation Hearing, if and to the extent necessary.

## 3.    Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the Chapter 11 Cases, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (B) reinstates the maturity of such claim or interest as such maturity existed before such default; (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan and are not insiders. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. Section 1126(d) of the Bankruptcy Code, except as otherwise provided in section 1126(e) of the Bankruptcy Code, defines acceptance of a plan by a class of impaired equity interests as acceptance by holders of at least two-thirds in amount of equity interests in that class actually voting to accept or to reject the plan.

Classes 1 and 2 are not Impaired under the Plan, and, as a result, the Holders of such Claims are deemed to have accepted the Plan. Claims in Class 6 and Equity Interests in Class 7 are Impaired under the Plan but deemed to reject the Plan. The Holders of Claims in Classes 3, 4 and 5 are Impaired and entitled to vote on the Plan.

Pursuant to section 1129 of the Bankruptcy Code, the Holders of Claims in Classes 3, 4 and 5 must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to such Classes, and without considering whether the Plan "discriminates unfairly" with respect to such Classes, as both standards are described herein. As stated above, Classes 3, 4 and 5 will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims in each such Class (other than any Claims designated under section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.

### 4.      Confirmation Without Acceptance by Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if less than all impaired classes entitled to vote on the plan have accepted it, *provided* that the plan has been accepted by at least one impaired class of claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired Class's rejection or deemed rejection of the Plan, the Plan will be confirmed, at the Debtors' request, in a procedure commonly known as "cram down," so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims or Equity Interests that is impaired under, and has not accepted, the Plan.

### 5.      No Unfair Discrimination

The unfair discrimination test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number

of factors in determining whether a plan discriminates unfairly and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

Under the Plan, creditors who are of equal priority, including general unsecured creditors, are placed in the same applicable Class, and the members thereof are provided the same treatment. Thus, the unfair discrimination test is satisfied in these cases.

### 6.    Fair and Equitable Test

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class.  As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class:

The condition that a plan be "fair and equitable" to a non-accepting Class of Secured Claims includes the requirements that: (a) the Holders of such Secured Claims retain the liens securing such Claims to the extent of the Allowed amount of the Claims, whether the property subject to the liens is retained by the Debtors or transferred to another entity under the Plan; and (b) each Holder of a Secured Claim in the Class receives deferred Cash payments totaling at least the Allowed amount of such Claim with a present value, as of the Effective Date of the Plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

The condition that a plan be "fair and equitable" with respect to a non-accepting Class of unsecured Claims includes the requirement that either: (a) the plan provides that each Holder of a Claim of such Class receive or retain on account of such Claim property of a value, as of the Effective Date of the plan, equal to the allowed amount of such Claim; or (b) the Holder of any Claim or Equity Interest that is junior to the Claims of such Class will not receive or retain under the plan on account of such junior Claim or Equity Interest any property.

The condition that a plan be "fair and equitable" to a non-accepting Class of Equity Interests includes the requirements that either: (a) the plan provides that each Holder of an Equity Interest in that Class receives or retains under the plan, on account of that Equity Interest, property of a value, as of the Effective Date of the plan, equal to the greater of (i) the allowed amount of any fixed liquidation preference to which such Holder is entitled, (ii) any fixed redemption price to which such Holder is entitled, or (iii) the value of such interest; or (b) if the Class does not receive such an amount as required under (a), no Class of Equity Interests junior to the non-accepting Class may receive a distribution under the plan.

To the extent that any class of Claims or Class of Equity Interests either reject the Plan or are deemed to have rejected the Plan, the Debtors intend to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

Notwithstanding the rejection of any Class that votes to reject the Plan, the Debtors do not believe that the Plan discriminates unfairly against any Impaired Class of Claims or Equity Interests.  The Debtors believe that the Plan and the treatment of all Classes of Claims and Equity Interests under the Plan satisfy the foregoing requirements for non-consensual confirmation of the Plan.

## P.    CONSUMMATION OF THE PLAN

The Plan will be consummated on the Effective Date.  For a more detailed discussion of the conditions precedent to the consummation of the Plan and the impact of failure to meet such conditions, see Article IV.J of the Plan.

## ARTICLE V.
## RISK FACTORS

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT. ALTHOUGH THESE RISK FACTORS ARE MANY, THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTORS' ASSETS OR THE PLAN AND ITS IMPLEMENTATION.

## A.    CERTAIN BANKRUPTCY LAW CONSIDERATIONS

### 1.    Parties in Interest May Object to the Debtors' Classification of Claims and Equity Interests.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 2.    The Conditions Precedent to the Effective Date of the Plan May Not Occur.

As more fully set forth in Article IV.J of the Plan, the Effective Date of the Plan is subject to certain conditions precedent including the funding by the Prepetition Term Loan Lenders of the Plan Funding. If such conditions precedent are not waived or not met, the Effective Date will not take place.

### 3.    The Debtors May Fail to Satisfy the Vote Requirement.

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Debtors may seek to accomplish an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims or Equity Interests as those proposed in the Plan.

### 4.    The Debtors May Not Be Able to Secure Confirmation of the Plan.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, findings by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting Holders of Claims within a particular class

under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.  A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules.  Even if the Bankruptcy Court determined that the Disclosure Statement, the balloting procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes, or the Plan contains other terms disapproved of by the Bankruptcy Court.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for confirmation.  Any such modifications could result in less favorable treatment of any non-accepting Class, as well as any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan.  Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.  Section 1127 of the Bankruptcy permits the Debtors to modify the Plan at any time before confirmation, but not if such modified Plan fails to meet the requirements for confirmation.  The Debtors may modify the Plan at any time after confirmation of the Plan and before substantial consummation of the Plan if circumstances warrant such modification and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, but not if such modified Plan fails to meet the requirements for confirmation.  The Debtors will comply with the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code with respect to the modified Plan.  Any Holder of a Claim that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

### 5.      Non-Consensual Confirmation of the Plan May Be Necessary.

In the event that any impaired class of claims or equity interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponents' request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class) and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes.  The Debtors believe that the Plan satisfies these requirements, and the Debtors intend to request such non-consensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code.  Nevertheless, in the event that a Voting Class does not accept the Plan, there can be no assurance that the Bankruptcy Court will reach this conclusion.

### 6.      The Debtors May Object to the Amount or Classification of a Claim.

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim (excluding any Claims of NGP, other than Claims arising under the Global Settlement or Global Settlement Approval Order) under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is or may become subject to an objection, counterclaim or other suit by the Debtors.  Any Holder of a Claim that is or may become subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

7.      **The Chapter 11 Cases May Be Converted to Cases under Chapter 7 of the Bankruptcy Code**

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code.  In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.  The Debtors believe that liquidation under chapter 7 would result in materially smaller distributions being made to creditors than those provided for in the Plan because of (a) the lack of the Plan Funding, (b) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (c) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation.

8.      **Releases, Injunctions, and Exculpations Provisions May Not Be Approved**

Articles IV.F and G hereof provide for certain releases, injunctions, and exculpations, including a release of liens and third-party releases that may otherwise be asserted against the Debtors or Released Parties, as applicable.  The releases, injunctions, and exculpations provided in the Plan are subject to objection by parties in interest and may not be approved.  If the releases are not approved, certain Released Parties may withdraw their support for the Plan.

**B.      DISCLAIMERS**

1.      **The Information Contained Herein is for Soliciting Votes Only.**

The information contained in this Combined Plan and Disclosure Statement is for purposes of soliciting votes on the Plan and may not be relied upon for any other purposes.

2.      **No Legal or Tax Advice is Provided to You by This Combined Plan and Disclosure Statement.**

**This Combined Plan and Disclosure Statement is not legal or tax advice to You**.  The contents of this Combined Plan and Disclosure Statement should not be construed as legal, business or tax advice, and are not personal to any person or entity.  Each Holder of a Claim should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim.  This Combined Plan and Disclosure Statement may not be relied upon for any purpose other than as a disclosure of certain information to determine how to vote on the Plan or object to confirmation of the Plan.

3.      **No Admissions Are Made by This Combined Plan and Disclosure Statement.**

The information and statements contained in this Combined Plan and Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtors) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, Holders of Allowed Claims or Equity Interests, or any other parties in interest.

4.      **No Reliance Should be Placed on Any Failure to Identify Litigation Claims or Projected Objections.**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement.  The Debtors may seek to investigate, file, and prosecute litigation rights and Claims against any third parties and may object to Claims after the Confirmation Date or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such litigation claims or objections to Claims.

5.    **Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Recover Transfers and Assets.**

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any claims or rights of the Debtors (or any party in interest, as the case may be) to object to that Holder's Allowed Claim regardless of whether any Claims or Causes of Action of the Debtors or Estates are specifically or generally identified herein.

6.    **The Information Used Herein was Provided by the Debtors and was Relied Upon by the Debtors' Advisors.**

Counsel to and other advisors retained by the Debtors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement.  Although counsel to and other advisors retained by the Debtors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

7.    **The Potential Exists for Inaccuracies and the Debtors Have No Duty to Update.**

The statements contained in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date.  The Debtors have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan.  Further, although the Debtors may subsequently update the information in this Combined Plan and Disclosure Statement, the Debtors has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

8.    **No Representations Made Outside the Disclosure Statement Are Authorized.**

No representations concerning or relating to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Combined Plan and Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in or included with this Combined Plan and Disclosure Statement should not be relied upon by you in arriving at your decision.

**ARTICLE VI.**
**ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

A.    **LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

If no chapter 11 plan can be confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code in which case, a trustee would be elected or appointed to liquidate the Debtors' assets.  The Debtors believe that liquidation under chapter 7 would result in (i) smaller distributions being made to creditors than those provided for in the Plan because of, in the chapter 7 scenario, the lack of the Plan Funding and the lack of consideration and concessions to be provided by the Prepetition Term Loan Lenders under the Plan, and the additional administrative expenses involved in the appointment of a chapter 7 trustee and attorneys and other professionals to assist such trustee, and (ii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation.

**B.     FILING OF AN ALTERNATIVE CHAPTER PLAN**

        If the Plan is not confirmed, the Debtors or any other party in interest could attempt to formulate a different plan.  However, because of the Plan Funding and the consideration and concessions to be provided by the Prepetition Term Loan Lenders under the Plan, the Debtors believe that the current proposed Plan will allow all parties in interest to realize the highest recoveries under the circumstances.

**ARTICLE VII.**
**SUMMARY OF CERTAIN U.S. FEDERAL INCOME**
**TAX CONSEQUENCES OF THE PLAN**

        THE FOLLOWING IS INTENDED TO BE ONLY A BRIEF SUMMARY OF SELECTED FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF TAX ADVICE FROM, A TAX PROFESSIONAL.  THE SELECTED FEDERAL TAX CONSEQUENCES THAT ARE DESCRIBED HEREIN AND OTHER FEDERAL, STATE AND LOCAL TAX CONSEQUENCES THAT ARE NOT ADDRESSED HEREIN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  SUCH TAX CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED CLAIM. ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM IS STRONGLY ADVISED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN.  THE BELOW SUMMARY OF TAX CONSEQUENCES IS NOT INTENDED TO BE AND IS NOT TAX ADVICE.

        THE DEBTORS DO NOT INTEND TO REQUEST A TAX RULING FROM THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WITH RESPECT TO ANY OF THE TAX CONSEQUENCES OF THE PLAN.  CONSEQUENTLY, THE INTERNAL REVENUE SERVICE OR ANOTHER TAXING AUTHORITY MAY DISAGREE WITH AND MAY CONTEST ONE OR MORE OF THE TAX CONSEQUENCES DESCRIBED HEREIN TO THE DEBTORS AND HOLDERS OF CLAIMS.

**A.     FEDERAL INCOME TAX CONSEQUENCES TO CERTAIN CREDITORS**

        **1.     In General**

        Generally, a holder of a Claim should in most, but not all, circumstances recognize gain or loss equal to the difference between the "amount realized" by such holder in exchange for its Claim and such holder's adjusted tax basis in the Claim.  The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a holder's Claim.  The tax basis of a holder in a Claim will generally be equal to the holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the holder's hands, any gain or loss realized will generally be characterized as capital gain or loss and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

        A creditor who received Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest.  A creditor who did not previously include in income accrued but unpaid interest attributable to its

- 62 -

Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim. A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the holders of certain Claims, including Claims in Class 4 and Class 5, will likely receive only a partial distribution on account of their Allowed Claims. Whether the applicable holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the holder and its Claims. Creditors should consult their own tax advisors.

### 2. Non-United States Persons

A holder of a Claim that is a Non-U.S. Person generally will not be subject to U.S. federal income tax with respect to property (including money) received in exchange for such Claim pursuant to the Plan, unless (i) such holder is engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (ii) if such holder is an individual, such holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

## B. INFORMATION REPORTING AND BACKUP WITHHOLDING

Distributions pursuant to the Plan will be subject to any applicable federal income tax reporting and withholding. The IRC imposes "backup withholding" on certain "reportable" payments to certain taxpayers, including payments of interest. Under the IRC's backup withholding rules, a holder of a Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan, unless the holder (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional federal income tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of income tax. A holder of a Claim may be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

## ARTICLE VIII.
## RECOMMENDATION

In the opinion of the Debtors, the Plan is preferable to the alternatives described in this Combined Plan and Disclosure Statement because generally (except as otherwise agreed to by the creditor) the Plan  provides for a larger distribution to the Debtors' creditors than would otherwise likely result in a liquidation under chapter 7 of the Bankruptcy Code.  In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims than that which is proposed under the Plan.  Accordingly, the Debtors recommend that all creditors who are entitled to vote on the Plan vote to accept the Plan.

*[Remainder of Page Intentionally Blank]*

Dated:  December 3, 2024

Respectfully submitted,

*/s/ Kyle Sturgeon*
Kyle Sturgeon, Chief Restructuring Officer
of Agspring, LLC and Its Affiliated Debtors

**[Signature page to Combined Plan and Disclosure Statement]**

**EXHIBIT A**

**ORGANIZATIONAL CHART**

## EXHIBIT B

**LIQUIDATION / PLAN RECOVERY ANALYSIS**

**[TO BE FILED AS PART OF PLAN SUPPLEMENT]**