## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING, LLC, *et al.*,[1] | Case No. 23-10699 (CTG) |
| Debtors. | (Jointly Administered) |

**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF LIQUIDATION OF AGSPRING, LLC AND ITS AFFILIATED DEBTORS**

---

Laura Davis Jones (DE Bar No. 2436)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com

Samuel R. Maizel (*pro hac vice*)
Tania M. Moyron (*pro hac vice*)
**DENTONS US LLP**
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email:  samuel.maizel@dentons.com
            tania.moyron@dentons.com

*Co-Counsel to Debtors and Debtors in Possession*

Dated: December  6, 2024

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Agspring, LLC (7735); Agspring Idaho 1 LLC (1720); Agspring Idaho LLC (8754); FO-ND LLC, dba Firebrand Artisan Mills (1520); Agspring Logistics LLC, dba Agforce (6067); and Agspring Idaho 2 LLC (9262).  The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ v

PRELIMINARY STATEMENT ........................................................................................ 9

STATEMENT OF FACTS ................................................................................................. 11

ARGUMENT ..................................................................................................................... 11

I.     THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS SET FORTH IN § 1129 ...................................................................................................... 11

     A.    THE PLAN COMPLIES WITH THE APPLICABLE PROVISIONS OF § 1129(A)(1) ......................................................................................... 11

          1.    The Plan Complies with the Requirements of § 1122 ................................. 12

          2.    The Plan Complies with the Requirements of § 1123(a) .............................. 13

               i.    Section 1123(a)(1): Designation of Classes of Claims and Interests ........................................................................................... 13

               ii.    Section 1123(a)(2): Classes That Are Not Impaired by the Plan ......... 14

               iii.    Section 1123(a)(3): Treatment of Classes That Are Impaired by the Plan ......................................................................................... 14

               iv.    Section 1123(a)(4): Equal Treatment Within Each Class .................... 14

               v.    Section 1123(a)(5): Adequate Means for Implementation .................. 15

               vi.    Section 1123(a)(6): Prohibitions on Issuance of Non-Voting Securities ..................................................................................... 15

               vii.  Section 1123(a)(7): Provisions Regarding Directors and Officers ...................................................................................... 15

          3.    The Plan Complies with the Requirements of § 1123(b). ........................... 16

          4.    The Plan Complies with the Requirements of § 1123(d) and Bankruptcy Rule 3016(a) .......................................................................... 16

     B.    THE DEBTORS HAVE COMPLIED WITH § 1129(A)(2). .............................. 17

          1.    The Debtors Have Complied With § 1125. ................................................. 18

          2.    The Debtors Have Complied With § 1126. ................................................. 19

     C.    SECTION 1129(A)(3): THE PLAN HAS BEEN PROPOSED IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW ........................ 20

     D.    SECTION 1129(A)(4): THE PLAN PROVIDES THAT PROFESSIONAL FEES AND EXPENSES ARE SUBJECT TO COURT APPROVAL ................. 21

     E.    SECTION 1129(A)(5): THE DEBTORS HAVE DISCLOSED ALL NECESSARY INFORMATION REGARDING DIRECTORS AND OFFICERS. ................................................................................................... 21

F.     SECTION 1129(A)(6): THE PLAN DOES NOT CONTAIN RATE CHANGES SUBJECT TO THE JURISDICTION OF ANY GOVERNMENTAL REGULATORY COMMISSION.....................................22

G.    SECTION 1129(A)(7): THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.....................................................................................22

H.    SECTION 1129(A)(8): NOT ALL IMPAIRED CLASSES HAVE ACCEPTED THE PLAN. ..................................................................24

I.     SECTION 1129(A)(9): THE PLAN PROVIDES FOR PAYMENT IN FULL OF ALL ALLOWED ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS, PRIORITY TAX CLAIMS, AND PROFESSIONAL FEE CLAIMS.....................................................................................25

J.     SECTION 1129(A)(10): AT LEAST ONE IMPAIRED CLASS OF CLAIMS HAS ACCEPTED THE PLAN. ............................................27

K.    SECTION 1129(A)(11): THE PLAN IS FEASIBLE. ........................................27

L.     SECTION 1129(A)(12): ALL STATUTORY FEES HAVE BEEN OR WILL BE PAID.....................................................................................28

M.   SECTIONS 1129(A)(13) THROUGH 1129(A)(16) DO NOT APPLY TO THE PLAN.....................................................................................28

N.    THE PLAN SATISFIES THE "CRAM DOWN" REQUIREMENTS OF § 1129(B). .................................................................................29

       1.    The Plan Does Not Discriminate Unfairly...................................29

       2.    The Plan Is Fair and Equitable.................................................31

O.    SECTION 1129(C): THE PLAN IS THE ONLY PLAN FILED IN THE CHAPTER 11 CASES.....................................................................32

P.     SECTION 1129(D): THE PRINCIPAL PURPOSE OF THE PLAN IS NOT TO AVOID TAXES OR SECTION 5 OF THE SECURITIES ACT. ........32

Q.    SECTION 1129(E): THE DEBTORS ARE NOT A SMALL BUSINESS. .........32

R.     EXECUTORY CONTRACTS .............................................................32

S.     THE PLAN RELEASES, EXCULPATIONS, AND INJUNCTIONS ARE APPROPRIATE AND CONSISTENT WITH ESTABLISHED PRECEDENT. ...................................................................................33

       1.    Debtor/Estate Release (Plan § IV.F.). .........................................34

       2.    Third Party Release (Plan § IV.G.1). ...........................................38

       3.    Exculpation (Plan § IV.G.3). ....................................................39

       4.    Injunction (Plan § IV.G.4). ......................................................39

T.     MODIFICATIONS OF THE PLAN DO NOT ADVERSELY CHANGE THE TREATMENT OF ANY CREDITOR OR EQUITY INTEREST HOLDER.....................................................................................40

U.    WAIVER OF BANKRUPTCY RULES REGARDING STAY OF
       CONFIRMATION ORDER................................................................................40

CONCLUSION.............................................................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Court N.Y., N.Y. (In re Chateaugay Corp.)*,
  89 F.3d 942 (2d Cir. 1996) ................................................................4

*In re Armstrong World Indus., Inc.*,
  432 F.3d 507 (3d Cir. 2005) ...........................................................21

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999) ................................................................ 14, 23

*In re Barney & Carey Co.*,
  170 B.R. 17 (Bankr. D. Mass 1994)..................................................21

*In re Burns & Roe Enters., Inc.*,
  Case No. 08-4191 (GEB), 2009 WL 438694 (D.N.J. Feb. 23, 2009)....................32

*In re Buttonwood Partners, Ltd.*,
  111 B.R. 57 (Bankr. S.D.N.Y. 1990) ................................................22

*In re Dura Auto. Sys., Inc.*,
  379 B.R. 257 (Bankr. D. Del. 2007) .................................................21

*In re Exide Tech.*,
  303 B.R. 47 (Bankr. D. Del. 2003) ..................................................30

*Garvin v. Cook Invs., NW, SPNWY, LLC*, 922 F.3d 1031 (9th Cir. 2019)..................12

*In re Global Safety Textiles Holdings LLC*,
  Case No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009)...................32

*In re Indianapolis Downs*,
  *LLC*, 486 B.R. 286 (Bankr. D. Del. 2013)....................................... 27, 30

*In re Jersey City Med. Ctr.*,
  817 F.2d 1055 (3d Cir. 1987)...........................................................4

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986) ......................................... 3, 9, 21

*In re Lernout & Hauspie Speech Prods., N.V.*,
  301 B.R. 651 (D. Del. 2003)...........................................................21

*Lisanti Foods, Inc. v. Lubetkin (In re Lisanti Foods, Inc.)*,
  329 B.R. 491 (D.N.J. 2005) ...........................................................................12

*In re Master Mortg. Inv. Fund, Inc.*,
  168 B.R. 930 (Bankr. W.D. Mo. 1994) ...........................................................27

*In re NII Holdings, Inc.*,
  288 B.R. 356 (Bankr. D. Del. 2002) ...............................................................12

*In re PPI Enters. (U.S.), Inc.*,
  228 B.R. 339 (Bankr. D. Del. 1998) ...............................................................12

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000) ...........................................................................12

*In re Rubicon U.S. REIT, Inc.*,
  434 B.R. 168 (Bankr. D. Del. 2010) ...............................................................21

*Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*,
  872 F.2d 36 (3d Cir. 1989) .............................................................................24

*In re Smallhold, Inc.*,
  Case No. 24-10267 (CTG), 2024 WL 4296938 (Sept. 25, 2024)................. 30, 31

*In re Texaco, Inc.*,
  84 B.R. 893 (Bankr. S.D.N.Y. 1988) ................................................................4

*In re Toy & Sports Warehouse, Inc.*,
  37 B.R. 141 (Bankr. S.D.N.Y. 1984) ................................................................4

*In re Tribune Co.*,
  464 B.R. 126 (Bankr. D. Del. 2011) ...............................................................27

*U.S. Bank Nat'l Ass'n v. Wilmington Trust Co., Spansion, Inc. (In re Spansion, Inc.)*,
  426 B.R. 114 (Bankr. D. Del. 2010) ......................................................... 26, 29

*In re Wash. Mut., Inc.*,
  442 B.R. 314 (Bankr. D. Del. 2011) ......................................................... 27, 30

*In re WorldCom, Inc.*,
  Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. Oct. 31, 2003) ......................................................................................................9

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ........................................................... 27, 28

**Rules and Statutes**

Fed. R. Bankr. P. 2002(b)................................................................................................10

Fed. R. Bankr. P. 3016(a).................................................................................................8

Fed. R. Bankr. P. 3017(d)-(f)..........................................................................................10

Fed. R. Bankr. P. 3019......................................................................................................32

Fed. R. Bankr. P. 3020(e).................................................................................................33

Fed. R. Bankr. P. 9019..............................................................................................26, 29

11 U.S.C. § 101 *et seq.*....................................................................................................1

11 U.S.C. § 105(a)...............................................................................................................1

11 U.S.C. § 1121.................................................................................................................1

11 U.S.C. § 1122........................................................................................................*passim*

11 U.S.C. § 1123.............................................................................1, 3, 4, 9, 26, 29, 32

11 U.S.C. § 1125.............................................................................................1, 9, 10, 11

11 U.S.C. § 1126......................................................................................................1, 9, 11

11 U.S.C. § 1127.................................................................................................................1

11 U.S.C. § 1129......................................................................................................1, 3, 23

11 U.S.C. § 1129(a)......................................................................................................9, 20

11 U.S.C. § 1129(a)(9)...........................................................................................16, 17, 18

11 U.S.C. § 1129(a)(11).................................................................................................18, 19

11 U.S.C. § 1129(a)(14).....................................................................................................20

11 U.S.C. § 1129(a)(15).....................................................................................................20

11 U.S.C. § 1129(a)(16).....................................................................................................20

11 U.S.C. § 1129(b)(1).......................................................................................................20

11 U.S.C. § 1129(b)(2)(B)(ii)......................................................................................22, 23

11 U.S.C. § 1129(b)(2)(C)(ii).............................................................................................23

28 U.S.C. § 1930 ...................................................................................................... 20

**Other Authorities**

7 *Collier on Bankruptcy,* ¶ 1129.02[2] (16th ed. 2018) ............................................ 9

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 .......................... 9

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 ............................. 9

Agspring, LLC ("Agspring") and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this memorandum of law (the "Memorandum") in support of confirmation of the *Second Amended Combined Disclosure Statement and Joint Plan of Liquidation of Agspring, LLC and its Affiliated Debtors* [D.I. 305] (as the same may be further amended, supplemented, or modified, the "Combined Disclosure Statement and Plan" or "Plan")[2] pursuant to § 1129 of Title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code").[3]  In support of confirmation of the Plan, the Debtors rely upon the (i) *Declaration of Kyle Sturgeon in Support of Confirmation of the Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Agspring, LLC and its Affiliated Debtors* (the "Sturgeon Declaration"); and (ii) *Declaration of Tania M. Moyron with Respect to the Tabulation of Votes on the Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Agspring, LLC and its Affiliated Debtors* (the "Voting Declaration," together with the Sturgeon Declaration, the "Declarations"), filed contemporaneously herewith. In further support of confirmation of the Plan, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      As explained in the *Declaration of Kyle Sturgeon in Support of Chapter 11 Petitions* [D.I. 3] (the "First Day Declaration"), Agspring initiated Litigation against NGP X US Holdings LP ("NGP") in 2015 asserting breach of fiduciary duty and fraud claims in connection with a 2015 Sale of the Agspring Companies. NGP thereafter commenced arbitration and successfully obtained a judgment against Agspring for an Advancement of $6,750,000 of defense

---

[2]    Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

[3]    Unless otherwise specifically stated, all references to "§" or "section" herein are to a § of the Bankruptcy Code; all references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); all references to "Local Rule" are to the Local Bankruptcy Rules for the District of Delaware (the "Local Rules").

costs related to the Litigation. (First Day Declaration, ¶ 17.)  Costs of the Advancement continue to increase as NGP subsequently filed a new action in Delaware Superior Court against Agspring based on the Advancement and commenced discovery. (First Day Declaration, ¶ 18.)  Facing these rising costs related to the Advancement, the Debtors decided to file the Chapter 11 Cases on May 31, 2023, to preserve their remaining assets and to effectuate an orderly liquidation.

2.      Throughout these Chapter 11 Cases, the Debtors have engaged in negotiations with NGP to resolve disputes between the parties. After extensive discussions between the Debtors and NGP, the Agspring and the other Agspring Parties[4] agreed to a settlement (the "Global Settlement") with NGP, Bradley K. Clark ("Clark"), and Randal L. Linville ("Linville"), which resolves disputes in multi fora among the parties and paves the way for confirmation of the Debtors' Plan.  As more specifically discussed in the *Debtors' Motion for Entry of an Order (I) Approving a Settlement Agreement Pursuant to Fed. R. Bankr. P. 9019 and (II) Granting Related Relief* [D.I. 293], the Global Settlement resolves NGP's unsecured claim of over $9 million, disputes over an escrow fund, and pending litigation between the parties. The Debtors are seeking approval of the Global Settlement in conjunction with the confirmation hearing.

3.      The Plan generates more value for general unsecured creditors than if these Chapter 11 Cases were converted to chapter 7 as unsecured creditors would not receive any distribution under chapter 7. The Plan further contemplates the appointment of a Plan Administrator who will administer Cash and make the applicable Distributions to creditors and other parties and liquidate or otherwise dispose of the remaining assets of the Estates, to the extent such assets were not previously monetized to Cash or otherwise transferred or disposed of by the Debtors prior to the Effective Date.  The Plan Administrator will also facilitate the orderly wind down of the Debtors'

---

[4]    Agspring, Holdco, LVS, HVS, and TOBI are collectively referred to herein as the "Agspring Parties."

remaining business and assets, including, as applicable, the pursuit of any remaining causes of action and distribution of any proceeds therefrom according to the Plan.

4.     Furthermore, as more fully set forth below and in the Voting Declaration, Class 4 (which is an impaired class and only includes NGP), supports the Plan. Accordingly, and for the reasons set forth below, the Debtors respectfully request the entry of the proposed order confirming the Plan (the "Confirmation Order").

## STATEMENT OF FACTS

5.     The facts relevant to confirmation of the Plan are set forth in the Plan, the Declarations, and any evidence presented or testimony that may be adduced at the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), all of which are incorporated herein by this reference.

## ARGUMENT

### I.      THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS SET FORTH IN § 1129.

6.     Section 1129 sets forth the requirements that must be satisfied for a plan to be confirmed. Through evidence to be presented at the Confirmation Hearing, as set forth in the Declarations, and as demonstrated herein, the Debtors will establish, by a preponderance of the evidence, that the Plan satisfies all confirmation requirements.

#### A.     THE PLAN COMPLIES WITH THE APPLICABLE PROVISIONS OF § 1129(A)(1).

7.     Pursuant to § 1129(a)(1), a plan may be confirmed only if it "complies with applicable provisions of [the Bankruptcy Code]." It is well-established that the requirement in § 1129(a)(1) primarily focuses on compliance with § 1122 (governing classification of claims and interests) and § 1123 (governing necessary and permissible provisions). *See In re Johns-Manville Corp.,* 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986) (stating that "[o]bjections to confirmation raised

under § 1129(a)(1) generally involve the failure of a plan to conform to the requirements of § 1122(a) or § 1123)"), *af'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987); *In re Texaco, Inc*., 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with § 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization.") (citing *In re Toy & Sports Warehouse, Inc*., 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988). As demonstrated below, the Plan fully complies with all of the applicable provisions of the Bankruptcy Code, as required by § 1129(a)(1), including, without limitation, §§ 1122 and 1123.

### 1.   The Plan Complies with the Requirements of § 1122.

8.      Pursuant to § 1122, claims or interests within a given class must be "substantially similar" to the other claims or interests in that class. Section 1122, however, does not require that all substantially similar claims or equity interest must be classified together. Instead, courts have recognized that similar claims may be classified separately, provided that there is a basis for doing so. *See, e.g., Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Court N.Y., N.Y. (In re Chateaugay Corp.),* 89 F.3d 942, 949 (2d Cir. 1996). Courts are also afforded broad discretion in approving a plan proponent's classification structure and should consider the specific facts of each case when making a determination regarding classification. *See, e.g., In re Jersey City Med. Ctr.,* 817 F.2d 1055, 1060–61 (3d Cir. 1987) (observing that "Congress intended to afford bankruptcy judges broad discretion [under § 1122] to decide the propriety of plans in light of the facts of each case").

9.      Section IV.B of the Plan provides for the separate classification of Claims and Interests into seven distinct Classes based upon (a) their secured status, if applicable, (b) their legal priority against the Debtors' assets, and (c) other relevant factors:[5]

| CLASS | CLAIM / EQUITY INTEREST |
|-------|-------------------------|
| 1 | Other Priority Claims |
| 2 | Other Secured Claims |
| 3 | Prepetition Term Loan Secured Claims |
| 4 | NGP Unsecured Claims |
| 5 | General Unsecured Claims |
| 6 | Intercompany Claims |
| 7 | Equity Interests in Debtors |

*See* Plan at § IV.B; Sturgeon Declaration, ¶ 5.

10.     The Plan's classification scheme complies with § 1122 because each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class. Accordingly, the legal rights of each of the holders of Claims or Interests within a particular Class are substantially similar to other holders of Claims or Interests within that Class, and the Plan satisfies the requirements of § 1122.

## 2.      The Plan Complies with the Requirements of § 1123(a).

11.     As applicable, § 1123(a) sets forth seven (7) requirements for every chapter 11 plan.[6] The Plan complies with each such requirement.

### i.      *Section 1123(a)(1): Designation of Classes of Claims and Interests*

12.     Section 1123(a)(1) requires that a chapter 11 plan designate classes of claims and equity interests subject to § 1122, other than the kinds specified in § 507(a)(2) (administrative

---

[5]   In accordance with § 1123(a)(1), Administrative Expense Claims and Priority Tax Claims have not been classified. *See* Plan § IV.A.

[6]   Section 1123(a)(8) is only applicable to individual debtor cases and, therefore, not addressed herein.

expenses claims), § 507(a)(3) (claims arising during the "gap" period in an involuntary case), and

§ 507(a)(8) (unsecured tax claims). As discussed above, and subject to § 1122, Section IV.B of the

Plan designates six Classes of Claims and one Class of Interests, not including the Claims of the

kinds specified in §§ 507(a)(2), (3), and (8). Thus, the Plan satisfies the requirements of §

1123(a)(2).

### ii.      *Section 1123(a)(2): Classes That Are Not Impaired by the Plan*

13.      Section 1123(a)(2) requires that a chapter 11 plan specify which classes of claims

or equity interests are unimpaired under such plan. The Plan specifies that Class 1 (Other Priority

Claims) and Class 2 (Other Secured Claims) are Unimpaired. *See* Plan at § IV.B. Thus, the Plan

satisfies the requirement of § 1123(a)(2).

### iii.      *Section 1123(a)(3): Treatment of Classes That Are Impaired by the Plan*

14.      Section 1123(a)(3) requires that a chapter 11 plan specify how the classes of claims

or equity interests that are impaired under such plan will be treated. The Plan designates Class 3

(Prepetition Term Loan Secured Claims), Class 4 (NGP Unsecured Claims), Class 5 (General

Unsecured Claims), Class 6 (Intercompany Claims) and Class 7 (Equity Interests in the Debtors)

as Impaired and specifies the treatment of Claims and Interests in such Classes. *See* Plan at § IV.B.

Thus, the Plan satisfies the requirement of § 1123(a)(3).

### iv.      *Section 1123(a)(4): Equal Treatment Within Each Class*

15.      Section 1123(a)(4) requires that a chapter 11 plan provide the same treatment for

each claim or equity interest within a particular class, unless the holder of a claim or interest agrees

to receive less favorable treatment. Pursuant to the Plan, the treatment of each Claim against or

Interest in the Debtors in each respective Class is the same as the treatment of each other Claim or

Interest in such Class, unless the holder has agreed to receive less favorable treatment. *See* Plan at § IV.B.6. Thus, the Plan satisfies the requirement of § 1123(a)(4).

> ### *v.  Section 1123(a)(5): Adequate Means for Implementation*

16.  Section 1123(a)(5) requires that a chapter 11 plan provide "adequate means for the plan's implementation" and provide certain non-exclusive examples. Section IV.D of the Plan provides a detailed description of, and framework for, the transactions, actions, and events that are contemplated by the Plan. More specifically, the Plan provides adequate means for its implementation through, among other things, (i) procedures for voting on and confirming the Plan, (ii) the vesting of all of the Debtors' Distributable Assets and property in the Liquidating Debtors; (iii) the appointment of the Plan Administrator; and (iv) the making of Distributions by the Plan Administrator in accordance with the terms and conditions of the Plan. Thus, the Plan satisfies the requirements of § 1123(a)(5).

> ### *vi.  Section 1123(a)(6): Prohibitions on Issuance of Non-Voting Securities*

17.  Section 1123(a)(6) requires that a plan provide that the debtor's corporate constituent documents prohibit the issuance of nonvoting equity securities. Here, the Plan provides that upon the Effective Date, the Debtors' formation documents shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities under § 1123(a)(6). *See* Plan at § IV.D.1. Thus, the Plan satisfies the requirements of § 1123(a)(6).

> ### *vii.  Section 1123(a)(7): Provisions Regarding Directors and Officers*

18.  Section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." The Plan provides that the Debtors, with the consent of the Prepetition

Term Loan Lenders, will appoint the Plan Administrator. *See* Plan at § IV.D.4. On June 28, 2024, the Debtors filed the Plan Supplement [D.I. 240], appointing Kyle Sturgeon as the Plan Administrator. Thus, the Plan satisfies the requirements of § 1123(a)(7).

### 3. The Plan Complies with the Requirements of § 1123(b).

19. Section 1123(b) identifies various discretionary provisions that may be included in a chapter 11 plan. The Plan contains certain of these provisions specifically contemplated by § 1123(b), including provisions regarding: (a) impairment and unimpairment of Classes of Claims and Interests (Plan at § IV.B.6) as contemplated by § 1123(b)(1); (b) the assumption or rejection of executory contracts and unexpired leases (Plan at § IV.E.1) as contemplated by § 1123(b)(2); and (c) modification of rights of holders of secured claims (Plan at § IV.B.6(c)) as contemplated by § 1123(b)(5).

20. Moreover, the Plan contains other provisions that fall within the catch-all discretionary provision in § 1123(b)(6), which permits a plan to include other provisions not inconsistent with the applicable provisions of the Bankruptcy Code. *See, e.g.,* Plan at § IV.L (providing for the Court's retention of jurisdiction on certain specified matters); and Plan at § IV.H (setting forth provisions regarding distributions under the Plan).[7] Thus, the Plan complies with § 1123(b).

### 4. The Plan Complies with the Requirements of § 1123(d) and Bankruptcy Rule 3016(a).

21. The Plan complies with § 1123(d),[8] which provides that if a plan proposes to cure a default, "the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law." The Plan does not provide otherwise. Sturgeon Declaration, ¶ 13.

---

[7] The Plan's release and exculpation provisions are discussed in Section III, *infra*.

[8] Because the Debtors are not individuals, § 1123(c) is inapplicable to the Plan.

Moreover, the Plan complies with Bankruptcy Rule 3016(a) because it is dated June 3, 2024 and identifies the Debtors as the Plan Proponents.

22.    Accordingly, the Plan complies with the requirements of §§ 1122 and 1123, as well as with other applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. Thus, the Plan satisfies the requirements of § 1129(a)(1).

### B.    THE DEBTORS HAVE COMPLIED WITH § 1129(A)(2).

23.    Section 1129(a)(2) requires that a plan proponent "compl[y] with the applicable provisions of the [Bankruptcy Code]." Whereas § 1129(a)(1) focuses on the form and content of a plan itself, § 1129(a)(2) is concerned with the activities of the plan proponent.[9] That is, the inquiry under § 1129(a)(2) focuses on whether the plan proponent has complied with the disclosure and solicitation requirements of §§ 1125 and 1126. *See* S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *see also In re WorldCom, Inc*., Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 1401, at *137 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that "[t]he legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code."); *In re Johns-Manville*, 68 B.R. at 630 ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Bankruptcy Code."). Here, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without

---

[9]    7 *Collier on Bankruptcy,* ¶ 1129.02[2] (16th ed. 2018).

limitation, §§ 1125 and 1126 and the applicable Bankruptcy Rules regarding plan disclosures and solicitation.

## 1.    The Debtors Have Complied With § 1125.

24.    Section 1125(b) prohibits the solicitation of acceptance or rejections of a plan from holders of claims or equity interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information."

25.    On June 4, 2024, the Court entered an order granting interim approval of the adequacy of the Disclosures in the Plan and approving the procedures for the transmittal of the Plan and other solicitation materials [Docket No. 230] (the "Disclosure Statement Order"). Beginning on June 7, 2024, the Debtors transmitted Solicitation Packages (as defined in the Solicitation Procedures Motion) to those holders of claims entitled to vote on the Combined Plan and Disclosure Statement as of the Voting Record Date (June 3, 2024). *See* Sturgeon Declaration, ¶ 16; Voting Declaration, ¶ 8. Specifically, the Debtors caused copies of the Solicitation Packages to be served, via U.S. First Class Mail, on holders of Claims in Classes 3, 4, and 5. Voting Declaration, ¶ 8. Additionally, the Debtors served holders of Claims and Interests in Classes 6 and 7 with the Notice of Non-Voting Status Due to No Recovery and the Combined Hearing Notice. Certificate of Service [D.I. 307]. Holders of Class 1 and Class 2 Claims were served with the Notice of Non-Voting Status Due to Non-Impairment. *Id.*

26.    Because the holders of Claims and Interests in each Class received the same materials in accordance with the terms of the Disclosure Statement Order, the Debtors have complied with § 1125(c). Furthermore, the Sturgeon Declaration and the Voting Declaration demonstrate that the Debtors served the solicitation materials in accordance with the requirements

of Bankruptcy Rules 2002(b) and 3017(d)-(f), as well as the Disclosure Statement Order. As such, the Debtors have complied with § 1125.

### 2.    The Debtors Have Complied With § 1126.

27.    Section 1126 specifies the requirements for acceptance of a plan and generally provides that holders of claims or equity interests are entitled to vote on such plan; however, an unimpaired class is conclusively deemed to accept the plan,[10] and a class that will not receive or retain any property under the plan is deemed to reject the plan.[11]

28.    The Debtors have complied with the requirements of § 1126. Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are unimpaired under the Plan and, pursuant to § 1126(f), these Classes are conclusively deemed to accept the Plan and have not been solicited to vote on the Plan. Sturgeon Declaration, ¶ 17. Holders of Claims in Class 6 (Intercompany Claims) and Interests in Class 7 (Interests) are not entitled to receive or retain any property under the Plan, and, pursuant to § 1126(g), Class 6 and Class 7 are deemed to reject the Plan and have not been solicited to vote on the Plan. Sturgeon Declaration, ¶ 17. Class 3 (Prepetition Term Loan Secured Claims), Class 4 (NGP Unsecured Claims), and Class 5 (General Unsecured Claims) are impaired under the Plan, and holders of Class 3, 4, and 5 Claims are entitled to receive property under the Plan. *See* Plan at § IV.B.6. Accordingly, holders of Class 3, 4, and 5 Claims have been solicited to accept or reject the Plan. Sturgeon Declaration, ¶ 17.

29.    In this regard, the Debtors' solicitation of votes with respect to the Plan was undertaken in conformity with §§ 1125 and 1126 and the Disclosure Statement Order. The

---

[10]    Section 1126(f) provides that "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required."

[11]    Section 1126(g) provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests."

Debtors, therefore, have complied with the applicable provisions of the Bankruptcy Code and have satisfied the requirements of § 1129(a)(2).

> ### C.   SECTION 1129(A)(3): THE PLAN HAS BEEN PROPOSED IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW.

30.   Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." Good faith is generally interpreted to mean that there is a reasonable likelihood that the "plan will fairly achieve a result consistent with the objective and purposes of the Bankruptcy Code." *In re PWS Holding Corp.,* 228 F.3d 224, 242 (3d Cir. 2000). Good faith is to be viewed in light of the particular facts and circumstances of the case. *See, e.g., In re NII Holdings, Inc.,* 288 B.R. 356, 362 (Bankr. D. Del. 2002); *In re PPI Enters. (U.S.), Inc.,* 228 B.R. 339 (Bankr. D. Del. 1998).

31.   The Debtors have proposed the Plan in good faith. Throughout these Chapter 11 Cases, the Debtors have worked to build consensus among the various creditor constituencies. The Plan and the process leading up to its formulation are the result of extensive arm's length negotiations among the Debtors, the Prepetition Term Loan Lenders, the other Agspring Parties, NGP and other parties in interest. In this regard, the Plan has been proposed by the Debtors for legitimate and honest purposes and is in the best interests of the Debtors' stakeholders. Sturgeon Declaration, ¶ 18.

32.   The second prong of § 1129(a)(3) is also satisfied, as § 1129(a)(3) forbids confirmation of a plan that is proposed in an unlawful manner. *See, e.g., Garvin v. Cook Invs., NW, SPNWY, LLC,* 922 F.3d 1031 (9th Cir. 2019) (Section 1129(a)(3) directs courts to look only to the proposal of a plan, not the terms of the plan.). Here, the Debtor has complied with all applicable laws in proposing the Plan. Accordingly, the requirements of § 1129(a)(3) have been satisfied.

D.    **SECTION 1129(A)(4): THE PLAN PROVIDES THAT PROFESSIONAL FEES AND EXPENSES ARE SUBJECT TO COURT APPROVAL.**

33.    Section 1129(a)(4) requires that any payments by a debtor "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," either be approved by the court as reasonable or subject to the approval of the court as reasonable. Section 1129(a)(4) has been construed to require that all payments on account of professional fees and expenses from estate assets be subject to the Bankruptcy Court's review and approval. *See, e.g., Lisanti Foods, Inc. v. Lubetkin (In re Lisanti Foods, Inc.),* 329 B.R. 491, 503 (D.N.J. 2005); *Resorts Int'l, Inc.,* 145 B.R. 412, 476 (Bankr. D.N.J. 1990).

34.    In accordance with § 1129(a)(4), no payment will be made from assets of the Estates on account of Professional Fee Claims other than payments that are authorized by order of the Bankruptcy Court. Pursuant to § IV.A.1 of the Plan, all applications for payment of Professional Fee Claims must be filed with the Bankruptcy Court within sixty (60) days after the Effective Date. Such Professional Fee Claims are only payable to the extent approved by the Bankruptcy Court. Accordingly, the requirement of § 1129(a)(4) has been satisfied.

E.    **SECTION 1129(A)(5): THE DEBTORS HAVE DISCLOSED ALL NECESSARY INFORMATION REGARDING DIRECTORS AND OFFICERS.**

35.    Section 1129(a)(5) requires that (i) the plan proponents disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor, the identity of any insider to be employed or retained by the reorganized debtor, and the nature of any compensation proposed to be paid to such insider, and (ii) that appointment or continuance of such individual in such office be consistent with the interest of creditors, equity holders, and public policy. Because the Plan provides for the liquidation and distribution of the Debtors' remaining assets by the Plan Administrator, the requirements imposed by § 1129(a)(5) are largely inapplicable. Based upon the

foregoing, the Debtors have satisfied the requirements of § 1129(a)(5) to the extent applicable to the Plan.

F.     **SECTION 1129(A)(6): THE PLAN DOES NOT CONTAIN RATE CHANGES SUBJECT TO THE JURISDICTION OF ANY GOVERNMENTAL REGULATORY COMMISSION.**

36.     Section 1129(a)(6) requires that any governmental regulatory commission having jurisdiction over the rates charged by the post-confirmation debtor in the operation of its business approve any rate change provided for in a plan. Here, there is not any governmental regulatory commission having jurisdiction over the pricing of the services offered by the Debtors in the marketplace. Further, this Plan does not propose any pricing or rate change, consequently § 1129(a)(6) does not apply to the Plan. Sturgeon Declaration, at ¶ 21.

G.     **SECTION 1129(A)(7): THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.**

37.     Section 1129(a)(7), often referred to the as the "best interest of the creditors test," requires that holders of impaired claims or interest which do not vote to accept the chapter 11 plan it issue "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date." The test focuses on individual creditors' claims rather than classes of claims. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999).

38.     The best interest test applies to the holders of Claims and Interest in Classes 3, 4, and 5, all of which are impaired under the Plan. Consequently, each of those holders must either vote to accept the plan or must otherwise receive the requisite level of recovery under the Plan in order to satisfy the best interest of creditors test.

39.     The Debtors believe that the best interest test is satisfied as to each holder of an Impaired Claim or Interest, and no party in interest has argued otherwise or provided any evidence to the contrary. As an initial matter, the Plan is a plan of liquidation. As such, it is difficult to conceive how creditors in these Chapter 11 Cases would do better in a chapter 7, where there would be a negative impact on the ultimate proceeds available for distribution to creditors, including, without limitation, as a result of (i) the increased costs of liquidation under chapter 7, which would include, *inter alia*, the fees payable to a chapter 7 trustee and the fees that would be payable to additional attorneys and other professionals that such a trustee may engage, all of whom would need to get up to speed on the Debtors' affairs and the status of these Chapter 11 Cases, and (ii) the establishment of a new claims bar date, diluting any potential recoveries of holders of Class 5 Claims (General Unsecured Claims). Moreover, the addition of a chapter 7 trustee at this late stage in the Chapter 11 Cases would likely provide no benefit, as substantially all of the Debtors' assets will be liquidated during these Chapter 11 Cases and the Plan provides for the vesting of all of the assets of the Debtors in the Liquidating Debtors for liquidation and distribution by the Plan Administrator in a cost efficient manner. Furthermore, given the magnitude of administrative claims, certain priority and general unsecured creditors are expected to receive no recovery if the Chapter 11 Cases were converted to chapter 7 cases. *See* Plan Supplement [Docket No. 240] at Exhibit A (Liquidation Analysis).

40.     Section IV.B.6 of the Plan as well as the Liquidation Analysis, attached to the Plan Supplement [Docket No. 240] as Exhibit A, further supports the satisfaction of the best interest of creditors test. Impaired Classes entitled to receive a distribution under the Plan, Classes 3 and 5, will receive greater recoveries under the Plan than in a hypothetical chapter 7 liquidation. *See* Plan Supplement [Docket No. 240] at Exhibit A. NGP's Claim (Class 4) is also satisfied under the terms of the Global Settlement, which provides for a release of claims against NGP and resolves disputes

concerning the Escrow Fund. Holders of Claims and Interests in Class 6 (Intercompany Claims) and 7 (Interests) will not receive a distribution in either a chapter 7 liquidation or under the Plan. *Id.* As a result, the Plan satisfies the requirements of § 1129(a)(7).

**H.    SECTION 1129(A)(8): NOT ALL IMPAIRED CLASSES HAVE ACCEPTED THE PLAN.**

41.    Section 1129(a)(8) requires either that each class of claims and interests under a plan must either (a) accept the plan, or (b) be rendered unimpaired under the plan.

42.    All unimpaired Classes of Claims under the Plan (i.e., Classes 1 and 2) are conclusively deemed to have accepted the Plan, pursuant to § 1126(f). *See* Section I(B)(2), *supra*. As set forth in the Voting Declaration, the following chart provides a summary of votes cast by holders of Class 3 (Prepetition Term Loan Secured Claims), Class 4 (NGP Unsecured Claims), and Class 5 (General Unsecured Claims), the only Classes entitled to vote on the Plan:

| VOTING CLASS | TOTAL BALLOTS COUNTED | | | | Class Voting Result |
|---|---|---|---|---|---|
| | ACCEPT | | REJECT | | |
| | AMOUNT | NUMBER | AMOUNT | NUMBER | |
| **Class 3** Prepetition Term Loan Secured Claims | $74,132,840.23 **100.00%** | 2 **100.00%** | $0.00 **0.00%** | 0 **0.00%** | Accept |
| **Class 4** NGP Unsecured Claims | $9,710,901.62 **100.00%** | 1 **100.00%** | 0 **0.00%** | 0 **0.00%** | Accept |
| **Class 5** General Unsecured Claims | N/A | 0 | N/A | 0 | Reject[12] |

Voting Declaration, at Exhibit A.

---

[12] The Debtors did not receive any Class 5 Ballots.

43.     As set forth in more detail below, the Holders of impaired Claims and Interests in Class 6 and Class 7 will not receive or retain any property under the Plan and, as such, such holders are deemed to reject the Plan, consistent with § 1126(g). *See* Section I(B)(2), *supra.* Also, no members of Class 5 voted on the Plan and, therefore, such holders are considered to reject the Plan. Thus, Classes 5, 6 and 7 are considered Rejecting Classes in this case.    Accordingly, the requirements of § 1129(a)(8) are not met with respect to the Rejecting Classes. The Plan, nonetheless, can be confirmed because the Rejecting Classes can be crammed-down pursuant to § 1129(b). *See* Section I(N), *infra.*

**I.     SECTION 1129(A)(9): THE PLAN PROVIDES FOR PAYMENT IN FULL OF ALL ALLOWED ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS, PRIORITY TAX CLAIMS, AND PROFESSIONAL FEE CLAIMS.**

44.     Section 1129(a)(9) requires that entities holding allowed claims entitled to priority under § 507(a)(1)-(8) receive specified cash payments under a plan. Unless the holder of a particular claim agrees to a different treatment with respect to such claim, § 1129(a)(9) requires a plan to provide as follows:

> (A) with respect to a claim of the kind specified in section 507(a)(2) or 507(a)(3) of [the Bankruptcy Code], on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;
>
> (B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of [the Bankruptcy Code], each holder of claim of such class will receive—
>
>      (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
>      (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;
>
> (C) with respect to a claim of a kind specified in section 507(a)(8) of [the Bankruptcy Code], the holder of such claim will receive on account of such claim regular installment payments in cash—

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

11 U.S.C. § 1129(a)(9).

45. The Plan satisfies each of the requirements of § 1129(a)(9). First, consistent with § 1129(a)(9)(A), the Plan provides for all Allowed Administrative Expense Claims (*i.e.,* § 507(a)(2) claims) to be paid on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim. *See* Plan at § IV.A.1.

46. Second, with respect to § 1129(a)(9)(B), all Allowed Other Priority Claims will be paid on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 1 Claim is an Allowed Class 1 Claim on the Effective Date, or (ii) the date on which such Class 1 Claim becomes an Allowed Class 1 Claim. *See* Plan at § IV.B.6(a).

47. Third, with respect to § 1129(a)(9)(C), all Allowed Priority Tax Claims shall be paid the full unpaid amount of such Allowed Priority Tax Claim as follows: (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or the date on

which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Debtors shall have agreed upon in writing. *See* Plan at § IV.A.2.

48.    With respect to § 1129(a)(9)(D), the Debtors do not believe they have any governmental secured claims, but in the event that there are, the Plan proposes to pay any such creditor faster than the five years permitted under § 1129(a)(9)(D). *See* Plan at § IV.B.6(b).

49.    Accordingly, the Plan meets the requirements of § 1129(a)(9).

**J.    SECTION 1129(A)(10): AT LEAST ONE IMPAIRED CLASS OF CLAIMS HAS ACCEPTED THE PLAN.**

50.    Section 1129(a)(10) requires that, if a class of claims is impaired under a plan, at least one class of impaired claims must have voted to accept the plan, as determined without including any acceptance of the plan by an insider. As set forth in the Voting Declaration, NGP, the sole holder of Claims in Class 4, an impaired class, as determined without including any acceptance by an insider in such Class, has voted to accept the Plan. Voting Declaration, at Exhibit A. Accordingly, the Plan meets the requirements of § 1129(a)(10).

**K.    SECTION 1129(A)(11): THE PLAN IS FEASIBLE.**

51.    Section 1129(a)(11) requires the Court to determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or such other successor to the debtor under the plan, unless liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11). The Plan provides for the vesting of all of the Debtors' remaining assets into the Liquidating Debtors and the Estates.  Plan at § IV.D.  The Plan further provides that the Plan Administrator shall attempt to liquidate, diligently and for the highest value reasonably possible, the remaining Distributable Assets on behalf of the Estates. *Id*. The Debtors have analyzed the ability for the Plan Administrator to meet its obligations under the Plan. Sturgeon

Declaration, ¶ 27. Based upon the Debtors' analysis, the Liquidating Debtors will have sufficient assets for the Plan Administrator to accomplish its tasks under the Plan. *See id*.

52.     The Plan also provides for an Administrative / Priority / Other Distributions Reserve which will be established and administered by the Plan Administrator on or as soon as reasonably practicable after the Effective Date, in an aggregate amount determined by the Debtors subject to consultation with the Prepetition Term Loan Lenders, to be needed to pay all Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Cash payments in satisfaction of Other Secured Claims, and any other amounts required to be funded under the Plan, including any U.S. Trustee fees accrued or anticipated to be owed in the future until the Chapter 11 Cases are closed.  Plan at § II.5. Debtors, in consultation with the Prepetition Term Loan Lenders, have analyzed the filed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Cash payments in satisfaction of Other Secured Claims, and any other amounts required to be funded under the Plan and have estimated the reserves necessary to satisfy such claims. Sturgeon Declaration, ¶ 28.

53.     Accordingly, the Plan is feasible and meets the requirements of § 1129(a)(11).

**L.     SECTION 1129(A)(12): ALL STATUTORY FEES HAVE BEEN OR WILL BE PAID.**

54.     Section 1129(a)(12) requires that fees payable under 28 U.S.C. § 1930 have been paid or will be paid on the effective date of the plan. The Plan provides that all fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date. *See* Plan at § IV.M.1. Accordingly, the Plan complies with the requirements of § 1129(a)(12).

**M.     SECTIONS 1129(A)(13) THROUGH 1129(A)(16) DO NOT APPLY TO THE PLAN.**

55.     Sections 1129(a)(14)-(16) are inapplicable to the Debtors and the Plan, as the Debtors (i) have no domestic support obligations (*see* 11 U.S.C. § 1129(a)(14)); (ii) are not

individuals (*see* 11 U.S.C. § 1129(a)(15)); and (iii) are not non-profit corporations (*see* 11 U.S.C. § 1129(a)(16)).

### N.    THE PLAN SATISFIES THE "CRAM DOWN" REQUIREMENTS OF § 1129(B).

56.    Section 1129(b) provides a mechanism for confirmation of a chapter 11 plan in circumstances where not all impaired classes of claims and equity interest vote to accept that plan. This mechanism is known colloquially as "cram down."

57.    More specifically, § 1129(b)(1) provides:

> [I]f all the applicable requirements of [§ 1129(a) of the Bankruptcy Code] other than [the requirement contained in § 1129(a)(8) that a plan must be accepted by all impaired classes] are met with respect to a plan, the court, on the request of the proponent of the plan, shall confirm the plan, notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly and is fair and equable with respect to each class of claims or interest that is impaired under, and has not accepted, the plan.

11 U.S.C. §1129(b)(1).

58.    Thus, under § 1129(b), the Bankruptcy Court may cram down a plan so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the impaired classes that did not vote to accept the plan. *See, e.g., In re Armstrong World Indus., Inc.,* 432 F.3d 507, 512 (3d Cir. 2005); *In re Dura Auto. Sys., Inc.,* 379 B.R. 257, 271–72 (Bankr. D. Del. 2007); *In re Lernout & Hauspie Speech Prods., N.V.,* 301 B.R. 651, 660 (D. Del. 2003).

59.    Here, Classes 5, 6 and 7 did not accept the Plan. Accordingly, the Debtors invoke § 1129(b) to cram down the Plan with respect to Classes 5, 6 and 7.

### 1.    The Plan Does Not Discriminate Unfairly.

60.    The unfair discrimination standard of § 1129(b) requires that a chapter 11 plan does not unfairly discriminate against a dissenting class with respect to the value it will receive under a plan when compared to the value given to all other similarly-situated classes. *See, e.g., In re Barney*

*& Carey Co.,* 170 B.R. 17, 25 (Bankr. D. Mass 1994). Generally, a plan unfairly discriminates in violation of § 1129(b) only if similar classes are treated differently without a reasonable basis for the disparate treatment. *See, e.g., In re Rubicon U.S. REIT, Inc.,* 434 B.R. 168, 175 (Bankr. D. Del. 2010) (noting that courts generally look to whether "[v]alid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan"); *Lernout & Hauspie,* 301 B.R. at 660 ("The hallmarks of the various [unfair discrimination] tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination"). Accordingly, as between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests, or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment. *See, e.g., In re Johns-Manville Corp.,* 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds,* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd, In re Johns-Manville Corp., 843 F.2d 636* (2d Cir. 1988); *In re Buttonwood Partners, Ltd.,* 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990).

61.    Here, the Plan does not discriminate unfairly with respect to Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), and Class 7 (Interests). A threshold inquiry to assessing whether a proposed plan unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to the class allegedly receiving more favorable treatment. The holders of Claims in Class 5 (General Unsecured Claims) and Class 6 (Intercompany Claims) are distinct from each other.

62.    Furthermore, there is only one Class of Interests (Class 7) and there is no unfair discrimination because there are no other, similarly-situated Interests receiving different treatment

under the Plan. Because holders of Interests in Class 7 are deemed to reject the Combined Plan and Disclosure Statement, the Debtors will seek confirmation of the Combined Plan and Disclosure Statement from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in § 1129(b). The Debtors believe that such requirements are satisfied, as no holder of a Claim or Interest junior to those in the Impaired Classes is entitled to receive any property under the Combined Plan and Disclosure Statement. Accordingly, the Plan does not "discriminate unfairly" with respect to any Impaired Classes of Claims or interest under the Plan that did not accept the Plan.

### 2. <u>The Plan Is Fair and Equitable</u>.

63.     For a plan to be "fair and equitable" with respect to an impaired class of unsecured claims or interests that rejects a plan (or is deemed to reject a plan), the plan must follow the "absolute priority" rule and, if the impaired rejecting class consists of unsecured clams, satisfy one of the requirements of § 1129(b)(2)(B), or, if the impaired rejecting class consists of interest, satisfy one of the requirements of § 1129(b)(2)(C). *See* 11 U.S.C. § 1129(b)(2)(B)(ii); 11 U.S.C. § 1129(b)(2)(C)(ii); *see also LaSalle,* 526 U.S. at 441-42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'"). Generally, this requires that (a) no class of claims recover more than the amount of their allowed claims, and (b) the impaired rejecting class of claims or interests either be paid in full or that any class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest. *See id.*

64.     The Plan satisfies the requirements of §§ 1129(b)(2)(B) and 1129(b)(2)(C) for the Rejecting Classes because (a) there are no Claims or Interests junior to the Claims and Interests in Classes 5, 6, and 7 which will receive any distribution under the Plan; and (b) no Classes will receive more than full payment on account of their Claims. *See* Sturgeon Declaration, at ¶ 32. Accordingly, the requirements of § 1129(b) are satisfied with respect to the Rejecting Classes.

**O.     SECTION 1129(C): THE PLAN IS THE ONLY PLAN FILED IN THE CHAPTER 11 CASES.**

65.     Section 1129(c) provides that, with a limited exception, a Bankruptcy Court may only confirm one plan. The Plan is the only plan that has been filed in the Chapter 11 Cases and is the only plan that satisfies the requirements of subsections (a) and (b) of § 1129. Accordingly, the requirements of § 1129(c) are satisfied.

**P.     SECTION 1129(D): THE PRINCIPAL PURPOSE OF THE PLAN IS NOT TO AVOID TAXES OR SECTION 5 OF THE SECURITIES ACT.**

66.     Section 1129(d) provides that on request of a party in interest that is a governmental unit, which holds the burden of proof on this issue, the Bankruptcy Court may not confirms a plan if the principle purpose of the plan is the avoidance of taxes or the application of section 5 of the Securities Act. The Plan was not proposed to avoid taxes or section 5 of the Securities Act, and no governmental unit has argued otherwise. *See* Sturgeon Declaration, ¶ 34. Accordingly, the Plan satisfies the requirements of § 1129(d).

**Q.     SECTION 1129(E): THE DEBTORS ARE NOT A SMALL BUSINESS.**

67.     Section 1129(e) is inapplicable to the Plan because the Chapter 11 Cases are not small business chapter 11 cases. *See* Sturgeon Declaration, ¶ 35.

**R.     EXECUTORY CONTRACTS**

68.     Section 1123(b)(2) allows a chapter 11 plan to provide for the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases. Section IV.E

32

of the Plan provides that, on the Effective Date, all executory contracts and unexpired leases except with respect to those (i) that have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto, (ii) previously assumed or rejected by order of the Bankruptcy Court, (iii) that are the subject of a pending motion to assume or reject, (iv) are identified on a schedule of assumed contracts in the Plan Supplement or (v) are explicitly assumed pursuant to the terms of the Plan, shall be deemed rejected, pursuant to the Confirmation Order, as of the Effective Date. *See* Plan at § IV.E.1.

69.     Assumption or rejection of an executory contract or unexpired lease of a debtor is subject to judicial review under the business judgment standard. *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.,* 872 F.2d 36, 39–40 (3d Cir. 1989). This standard is satisfied when a debtor determines that assumption or rejection will benefit the estate. *See, e.g., id.* The Debtors have reviewed and analyzed their portfolio of executory contracts and unexpired leases. Given the Debtors' limited operational activity and that all of their remaining assets will be vested in the Liquidating Debtors under the Plan for liquidation by the Plan Administrator, the Debtors have concluded that all the Debtors' executory contracts and unexpired leases, to the extent not already rejected or assumed and assigned, should be rejected. Sturgeon Declaration, ¶ 36; *see also* Second Plan Supplement [D.I. 304]. The Debtors have thus exercised their sound business judgment in their decision to reject all remaining executory contracts and unexpired leases. Accordingly, the proposed rejection of executory contracts should be approved in connection with confirmation.

### S.     THE PLAN RELEASES, EXCULPATIONS, AND INJUNCTIONS ARE APPROPRIATE AND CONSISTENT WITH ESTABLISHED PRECEDENT.

70.     The Releases, Exculpation, and Injunction are proper because, among other things, they are the product of arms' length negotiations and have been critical to obtaining the support of the various constituencies for the Combined Disclosure Statement and Plan. Such provisions are

fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their creditors. Neither the Releases, the Exculpation, nor the Injunction is inconsistent with the Bankruptcy Code and, as a result, the requirements of § 1123(b) have been satisfied.

71.     The principal terms of the Releases, Exculpation, and Injunction, as well as the basis for approval of these Plan provisions, are described below. The Debtors submit that, based upon the circumstances and record of the Chapter 11 Cases, and the paramount interest of creditors and other parties-in-interest, the Releases, the Exculpation, and the Injunction should be approved.

### 1.    Debtor/Estate Release (Plan § IV.F).

72.     Pursuant to the Plan and the Confirmation Order, the Debtors (on their own behalf and as a representative of their respective Estates) will release certain entities from claims, Causes of Action, and other liabilities as and to the extent set forth in the Plan, but excluding acts of willful misconduct, actual fraud, bad faith, or gross negligence.

73.     Each of the parties to be released by the Debtors are stakeholders or critical participants in the Chapter 11 Cases and the Plan process. Specifically, the Released Parties are, solely in their capacity as such:

> (a) the Debtors, (b) Holdco, (c) the Prepetition Term Loan Lenders, (d) the Prepetition Agent, and (e) the Related Persons of the parties covered by (a) through (d); provided, however, in no event shall any of the following be Released Parties under the Plan: (i) NGP, (ii) Clark, (iii) Linville, and (iv) any of the Big River Entities.  For the avoidance of doubt, (i) NGP, (ii) Clark, and (iii) Linville shall only receive the releases described in the Global Settlement.

Plan at § II.100.

74.     Section IV.F of the Plan represents a valid settlement (as and to the extent provided for in the Plan) pursuant to § 1123(b)(3)(A) and Bankruptcy Rule 9019 of whatever claims any Debtor may have against the Released Parties. The Debtors have proposed these releases based on their sound business judgment. See *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co., Spansion, Inc.*

*(In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) ("[A] debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."). Indeed, the Debtors believe that, under the circumstances, retaining claims against the Released Parties for future pursuit would not be in the best interest of the Debtors' various stakeholders, the Debtors are not aware any such claims exist, and the costs involved would likely outweigh any potential benefit to the Estates from pursuing such claims.

75.     Moreover, the efforts of the Released Parties were integral to the development of the Plan, and the timely and efficient resolution of these Chapter 11 Cases. Importantly,  there are no objections to the Releases at all.

76.     Bankruptcy courts typically consider the following *Master Mortgage* factors to determine whether a release by a debtor should be approved: (a) whether there is an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (b) whether the non-debtor has made a substantial contribution; (c) the essential nature of the release to the extent that, without the release, there is little likelihood of success; (d) an agreement by a substantial majority of creditors to support the release, specifically if the impacted class or classes "overwhelmingly" vote to accept the plan; and (e) whether there is a provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the release. *See In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (*citing In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)). Importantly, a court need not find that all of these factors apply to approve a debtor's release of claims. *See, e.g., In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr.

D. Del. 2011). Rather, such factors are "helpful in weighing the equities of the particular case after a fact-specific review." *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013).

77.     *First,* there is an identity of interest between the Debtors and the Released Parties because such parties all "share the common goal" of confirming and implementing the Plan. *See In re Tribune Co.*, 464 B.R. 126, 187 (Bankr. D. Del. 2011) (finding an identity of interest existed between the debtors and the released parties because they "share[d] the common goal of confirming" the plan). Each of the Released Parties, as a critical participant in the Plan process, shares a common goal with the Debtors in seeing the Plan succeed, and ensuring that the Chapter 11 Cases can be wound down in a timely and efficient manner. Like the Debtors, these parties seek to confirm the Plan and implement the transactions contemplated thereunder. *See Zenith Elecs.*, 241 B.R. at 110 (concluding that certain releases who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed").

78.     *Second,* the Released Parties are providing necessary contributions in exchange for the Debtor Releases, including by contributing value necessary to consummate the Plan, agreeing to compromise or otherwise waive substantive rights to effectuate a settlement, and providing other material support to the Debtors' overall chapter 11 efforts, including the Debtors' Plan efforts. Among other things, Holdco and the released officers and directors have continued to operate and manage the Debtors' business and financial affairs throughout the Chapter 11 Cases, helped to develop and implement the Debtors' chapter 11 strategy, and otherwise navigated the Debtors through the chapter 11 process. Additionally, the Prepetition Term Loan Lenders and Prepetition Agent have funded the chapter 11 Plan by committing to provide Plan Funding.  Accordingly, the value contributed by the Released Parties is more than sufficient to support the Debtor Release.

79.     *Third,* the Debtor Release is an essential component of the Plan and constitutes a sound exercise of the Debtors' business judgment. The Debtor Release is a material inducement to the concessions and contributions received by the Debtors and their Estates under the Plan, including the support of the Prepetition Term Loan Lenders and Prepetition Agent, who funded the chapter 11 Plan process.  Without their support the Debtors would not be able to confirm the Plan. Critically, if the Plan is not approved, distributions to the Debtors' creditors will be significantly delayed for an indefinite period. Accordingly, the Debtor Release is essential to Plan consummation and to preserving and maximizing the value of the Debtors' Estates for the benefit of stakeholders.

80.     *Fourth,* as evidenced by the Voting Report and noted above, all of the Debtors' stakeholders that submitted Ballots support the Plan – NGP is the only non-insider impaired creditor of the Debtors and NGP voted to accept the Plan. No creditor voted to reject the Plan or has filed an objection to the Plan on any basis, including to the Debtor Releases. This degree of consensus evidences the Debtors' stakeholders' acknowledgment of the propriety of the Debtor Release and the Plan.

81.     *Fifth,* the Debtors project substantial recoveries to the holders of General Unsecured Claims who the Debtors estimate will receive recoveries of 47% on their Claims.  Also, while NGP's estimated recovery under the Plan is a release from the Agspring Parties under the terms of the Global Settlement, the Debtors' Liquidation Analysis shows that NGP would not receive any recovery in a chapter 7 case.

82.     The Debtor Release represents a valid settlement (as and to the extent provided for in the Combined Plan and Disclosure Statement) of any claims the Debtors and their Estates may have against the Released Parties, pursuant to § 1123(b)(3)(A) and Bankruptcy Rule 9019. The

Debtors, in consultation with the Prepetition Term Loan Lenders and other constituencies, have proposed the Debtor Release based on their sound business judgment. *See In re Spansion, Inc.*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) ("[A] debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate"). For these reasons, the Debtor Release is justified, in the best interests of the Debtors and their Estates, and an integral part of the Plan, and, therefore, should be approved.

## 2. Third Party Release (Plan § IV.G.1).

83.     Section IV.G.1 of the Plan also provides for consensual releases by the Releasing Parties. Such consensual releases are fully consistent with governing law. As the Court has recognized, "[c]ourts in this jurisdiction have consistently held that a plan may provide for a release of third party claims against a non-debtor upon consent of the party affected." *In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013); *see also In re Exide Tech.*, 303 B.R. 47, 74 (Bankr. D. Del. 2003) ("The 'Releases by Holders of Claims' provision applies to release both prepetition and postpetition claims against the Releases, but it binds only those creditors and equity holders who accept the terms of the Plan. Because it is consensual, there is no need to consider the Zenith factors."); *In re Wash. Mut., Inc.*, 442 B.R. 314, 350 (Bankr. D. Del. 2011).

84.     The Court also recently addressed what constitutes consent to a release of claims against non-debtor third parties and found that consent requires an affirmative indication that the creditor consented to the release. *See In re Smallhold, Inc.*, Case No. 24-10267 (CTG), at *26, 2024 WL 4296938 (Sept. 25, 2024). Specifically, in *Smallhold*, the Court found that non-voting creditors and creditors who did not vote on the debtor's plan, and therefore did not opt out of the plan's third party releases, could not consent to such releases. *Id.* at **31-32. On the other hand,

creditors who voted the plan, but failed to opt out of the plan's third-party releases by checking the appropriate box on a ballot, consented to such releases. *Id*. at \*\*33-35.

85.     Here, the Plan provides that Claims against Released Parties are released and waived by "(i) the Holders of all Claims who vote to accept the Plan and do not opt out of granting the releases set forth in the Plan and (ii) each of the other Released Parties (but excluding the Related Persons of the Released Parties) . . . ." *See* Plan § IV.G.1.

86.     Each of the Holders of Claims who voted on the Plan opted-out and will not be providing a Third Party Release.  *See* Voting Declaration, Exhibit C.   Also, consistent with the *Smallhold* decision, Holders of Claims which did not vote on the Plan and non-voting claimants (Classes 1, 2, 6 and 7) will not be deemed to have consented to the Third Party Release. Accordingly, the Court should approve the Third Party Release provision in the Plan.

### 3.     Exculpation (Plan § IV.G.3).

87.     The Exculpation is narrowly tailored to protect Estate fiduciaries for their actions taken in furtherance of the Chapter 11 Cases. The Exculpated Parties have participated in the Chapter 11 Cases in good faith, and the Exculpation is necessary to protect those Estate fiduciaries who have contributed to the Debtors' plan efforts from collateral attacks related to their good-faith acts or omissions. Further, the scope of the Exculpation is targeted, and has no effect on liability that is determined to have constituted actual fraud, gross negligence or willful misconduct. Accordingly, the Court should approve the Exculpation.

### 4.     Injunction (Plan § IV.G.4).

88.     Section IV.G.4 of the Plan generally provides that all Entities holding Claims or Interests are permanently enjoined from commencing or continuing in any manner, action or proceeding relating to any Claim or Interest that has been released or exculpated pursuant to the Plan or from in any way attempting to enforce, collect, or recover anything on account of such

Claims or Interests. *See* Plan § IV.G.4. The injunction is necessary to preserve and enforce the releases and Exculpation, and is appropriately tailored to achieve that purpose. Accordingly, the Court should approve the injunction as set forth in the Plan.

### T.   MODIFICATIONS OF THE PLAN DO NOT ADVERSELY CHANGE THE TREATMENT OF ANY CREDITOR OR EQUITY INTEREST HOLDER.

89.     Section 1127(a) provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of §§ 1122 and 1123. Further, when the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan. Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder. *See, e.g., In re Global Safety Textiles Holdings LLC*, Case No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or re-solicitation); *In re Burns & Roe Enters., Inc.*, Case No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

90.     Any proposed modifications to the Plan incorporated in the proposed Confirmation Order will not adversely change the treatment of any Claim against the Debtors and should be approved.

### U.   WAIVER OF BANKRUPTCY RULES REGARDING STAY OF CONFIRMATION ORDER

91.     The Debtors respectfully request that, pursuant to Bankruptcy Rule 3020(e), the Court waive the 14-day stay of the Confirmation Order. Such a waiver is appropriate in these circumstances to allow the Plan Administrator to commence fulfilling its duties as quickly as

practicable, to promote prompt distributions under the Plan for the benefit of creditors, and because a significant number of implementation activities are capable of being undertaken in short order. Accordingly, the Debtors respectfully submit that good cause exists to support the waiver of the stay imposed by Bankruptcy Rule 3020(e).

## <u>CONCLUSION</u>

**WHEREFORE**, based on the foregoing the Debtors respectfully request the entry of an order, substantially in the form in the form of the proposed Confirmation Order, (i) confirming the Plan, and (ii) granting such other and further relief as may be just and proper under the circumstances.

*[Signature page to follow]*

Dated: December 6, 2024

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
          mcaloway@pszjlaw.com

-and -

**DENTONS US LLP**

Samuel R. Maizel
Tania M. Moyron
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Email:  samuel.maizel@dentons.com
           tania.moyron@dentons.com

*Counsel for Debtors and Debtors in Possession*